IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA


**FELICIA MARTIN**[1]                                            \*
2637 Mid Way Branch Dr
Apt 103                                                          \*
Odenton, Maryland 21113
                                                                 \*
     Plaintiff,
                                                                 \*
**THE DISTRICT OF COLUMBIA GOVERNMENT**                          \*
Serve:  Honorable Vincent Gray                                   \*
District of Columbia Government
1350 Pennsylvania Avenue N.W.                                    \*
Washington, D.C. 20004
                                                                 \*
Also Serve:
Office of the Attorney General                                   \*   Case No._____
For the District of Columbia
444 4th Street N.W.                                              \*
6th Floor South
Washington, D.C. 20001                                           \*

And                                                              \*

**THE ALCOHOLIC BEVERAGE REGULATION**                            \*
**ADMINISTRATION (ABRA)**
Serve: Martha Jenkins, Esq.                                      \*
2000 14th Street, NW, Suite 400S
Washington, DC 20009                                             \*

And                                                              \*

**FREDERICK PETER MOOSALLY, III**                                \*
In his official and individual capacity
4630 48th Street, NW                                             \*
Washington, DC 20016
                                                                 \*
And
                                                                 \*

                                                                 \*

---

[1] Formally Known As Felicia Dantzler

1

**CHARLES BRODSKY**                                  *
His Individual and Professional Capacity
1753 Lanier Place, NW                               *
Washington, DC 20009
                                                    *

And                                                 *

**JIM GRAHAM**                                      *
His Individual and Professional Capacity
John A. Wilson Building                             *
1350 Pennsylvania Avenue NW, Suite 105
Washington, DC 20004                                *

And                                                 *

**JOHNNIE E. JACKSON, JR.**                         *
In His Individual and Professional Capacity
1102 Bohac Lane                                     *
Accokeek, Maryland 20607
                                                    *

And                                                 *

**CRAIG SELBY STEWART**                             *
In His Individual and Professional Capacity
11624 Monaghan Place, #203                          *
Waldorf, Maryland 20602
                                                    *

And                                                 *

**MARIA DELANEY**                                   *
In her Official and Individual Capacity
42 Warnock Way                                      *
Pawleys Island, South Carolina 29585                *

        Defendants.                                 *

    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## COMPLAINT AND JURY DEMAND

**NOW COMES**, plaintiff Felicia Martin, formerly Felicia Dantzler, by and through her undersigned attorneys George A. Rose, Esquire and Rose Law Firm, LLC, and sues the aforementioned defendants and in support of her cause of action state:

2

# I. PRELIMINARY STATEMENT

1.     This action for declaratory, injunctive, monetary and other appropriate relief is brought by plaintiff to redress intentional violations by defendant of rights secured to her by the laws of the United States and the statutory and common law of the District of Columbia.  This action arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sections 2000e et seq., ("Title VII"), the Civil Rights Act of 1866 as amended, 42 U.S.C.§ 1981, ("Section 1981"), 42, U.S.C. § 1983, Title I of the Americans with Disabilities Act, as amended, 42 U.S.C.A §§ 12101 et seq. ("ADA"), and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §626, et seq., 42 U.S.C. § 1985, and 42 U.S.C. § 1986.

## II. PARTIES

2.     Plaintiff (hereinafter "Plaintiff" or "Mrs. Martin") is at all times material here a forty-five (45) year old African American female citizen of the United States and the State of Maryland.  At all times relevant herein Plaintiff has been employed by the Alcoholic Beverage Regulation Administration ("ABRA") as an investigator in the Enforcement Division.  Plaintiff's primary duties and responsibilities includes those assigned to a Grade 12, Step 3 investigator of the Compliance Division, including inspecting licensees[2] in the District of Columbia, serving subpoenas, conducting covert investigations with other government agencies, and testifying before governmental agencies, including the ABC Board, and the Federal Bureau of Investigations (FBI).

3.     Defendant District of Columbia Government (hereinafter "Defendant DC" or "DC") is a municipal corporation and is responsible for the supervision and operation of its

---

[2] Businesses regulated by ABRA.

subordinate agencies, including ABRA. On information and belief, Defendant DC has its offices located at 441 4th Street, N.W., Washington, DC and employs more than 15 people.

4.      Defendant The Alcoholic Beverage Regulation Administration (hereinafter "Defendant ABRA" or "ABRA" is an independent agency of DC that issues and renews licenses that enable qualified businesses to sell and serve alcoholic beverages in the District of Columbia.

5.      Defendant, Frederick Peter Moosally, III, (hereinafter "Defendant Moosally" or Mr. Moosally") at all times relevant herein is a Caucasian male and resides in the District of Columbia. Mr. Moosally was confirmed by the Council of the District of Columbia as the permanent ABRA Director in July 2009 after being selected by the ABC Board as Interim Director in January 2009. Mr. Moosally previously served as the ABRA's General Counsel for over seven years. Defendant Moosally is being sued in his official and individual capacities.

6.      Defendant, Charles "Chuck" Brodsky, (hereinafter "Defendant Brodsky" or Mr. Brodsky") at all times relevant herein is a Caucasian male and resides in the District of Columbia. Mr. Brodsky is the former Chairman of ABRA and oversees all personnel at ABRA. Defendant Brodsky is being sued in his official and individual capacities.

7.      Defendant, Jim Graham, (hereinafter "Defendant Graham" or "Mr. Graham") at all times relevant herein is a Caucasian male who resides in the District of Columbia. Mr. Graham is now Chairperson of the Committee on Public Works and Transportation with responsibility for oversight of alcohol regulation. Defendant Graham is being sued in his official and individual capacities.

8.      Defendant, Johnnie E. Jackson, Jr., (hereinafter "Defendant Jackson" or "Mr. Jackson") at all times relevant herein is an African American male, who resides in St. Mary's

4

County, Maryland. Mr. Jackson is the Chief of Enforcement of ABRA. Defendant Jackson is being sued in his official and individual capacities.

9. Defendant Craig Selby Stewart, (hereinafter "Defendant Stewart" or "Mr. Stewart") at all times relevant herein is an African American male, who resides in St Mary's County, Maryland. Defendant Stewart was Plaintiff's direct supervisor. Defendant Stewart is being sued in his official and individual capacities.

10. Defendant Maria Delaney, (hereinafter "Defendant Delaney" or "Mrs. Delaney"), at all times material to this complaint was the Director of ABRA. She is a Caucasian female who resides in South Carolina. Mrs. Delaney is being sued in her official and individual capacities.

11. Defendant DC, Defendant ABRA, Defendant Moosally, Defendant Brodsky, Defendant Graham, Defendant Jackson, Defendant Stewart, and Defendant Delaney are hereinafter referred to collectively as "Defendants". Defendants at all times material to this complaint were required to follow all established statutes, regulations, and constitutional law, as well as local ordinances pertaining to Plaintiff's employment with Defendant ABRA.

### III. JURISDICTION

12. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, 42 U.S.C. § 12117, and 29 U.S.C. § 1132(e), all of which provide for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to secure equitable and other relief.

13. The court has supplemental jurisdiction under 28 U.S.C. §1367 over plaintiff's claims under the statutory and common laws of the District of Columbia because plaintiff's claims are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy under article 3 of the U.S. Constitution.

14.     On August 2, 2010, Plaintiff placed the DC on notice regarding her claims pursuant to DC Tort Claims Section 12-309, DC Official Code (2001) via certified mail return receipt requested.  Plaintiff also placed DC on notice about her ADA claims as required by law.

## IV. VENUE

15.     Venue is proper in this district under 28 U.S.C. *§1391(a)(2),* and *§1391(b)(2)* because Defendants are located in this district and the events or omissions giving rise to this claim occurred in this district.  Also, venue is proper in this district under 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practices were committed in this district, the employment records relevant to the alleged unlawful employment practices are maintained and administered in this district, and Defendant DC has its principal office in this district.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

16.     Plaintiff timely filed charges of discrimination against ABRA and DC with the Equal Employment Opportunity Commission (EEOC).  Plaintiff files this complaint within (ninety) 90 days after receiving a notice of the right to sue from the EEOC.  (Attached hereto as "Exhibit A" and "Exhibit B") Plaintiff has therefore exhausted her administrative remedies and has complied with all conditions precedent to maintaining this action.

## VI. FACTUAL ALLEGATIONS

### a.  Denial of Promotion as Supervisor Investigator

17.     Plaintiff has been employed by ABRA from February 21, 2007 to the present as an Investigator.

18.     On or around September 22, 2008, Plaintiff applied to become a Supervisor in the Enforcement Division.

19.     Plaintiff was highly qualified for the Supervisory position.  Prior to joining ABRA, Plaintiff was a Police Officer with the District of Columbia Metropolitan Police Department ("MPD") for fifteen (15) years.  Plaintiff attended MPD Academy and graduated in April 1991.  During her fifteen (15) year tenure with MPD Plaintiff held several positions as a Field Training Officer ("FTO") for seven (7) of the fifteen (15) years and was Acting Police Sergeant for four (4) years.  Additionally, prior to her tenure with the Defendant ABRA, Plaintiff co-owned an International House of Pancakes ("IHOP") in Atlantic City, New Jersey for over two (2) years.  Plaintiff was also a Departmental Manager with Filene Basement for over a year.

20.     Plaintiff's work performance was exceptional, if not satisfactory and consistent with the legitimate expectations of Defendant ABRA.  Plaintiff always received favorable performance reviews and was the only employee who met the ABRA's standard of enforcement in terms of cases and citations.  In fiscal year 2007, Plaintiff generated the highest revenue as an investigator for Defendant ABRA.  On June 8, 2008 Plaintiff was one of only two investigators to be promoted to a Grade 12 at ABRA.

21.     About a month or so after applying for the supervisor position, Plaintiff was advised by a coworker, Investigator Demetrius Nickens, that he was advised by Investigator Donnell Butler that Plaintiff would not be eligible for the position and that the other investigators had already started interviewing.

22.     As a result, Plaintiff inquired of Defendant Jackson about what Investigator Nickens had heard from Investigator Butler.  Defendant Jackson confirmed that Plaintiff was not eligible and apologized that Plaintiff had received the information from other investigators.  Defendant Jackson stated that because Plaintiff had not been in Plaintiff's current grade for ninety (90) days, Plaintiff was ineligible to apply for the supervisor position.  Later that morning

Defendant Delaney concurred with what Defendant Jackson stated and apologized to the Plaintiff for the manner in which Plaintiff heard about Plaintiff's ineligibility for the position.

23.     Subsequently, interviews of only male candidates were conducted and Investigator Gregory D. Price, a less qualified and less experienced investigator than Plaintiff was selected as the new Supervisory Investigator. Mr. Price is an African American male. Upon information and belief Mr. Price was in the United States Marine Corp, worked briefly as a New Jersey State Trooper, worked for the Office of Attorney General of DC for three (3) years and worked briefly for Wal-Mart prior to his tenure with the Defendant ABRA. Additionally, upon information and belief, Mr. Price had no supervisory experience and had only been with the agency for six (6) months prior to his promotion as a Supervisor. Furthermore, upon information and belief, Mr. Price was terminated from the State of New Jersey as a trooper and terminated from the DC Office of Attorney General prior to his tenure with Defendant ABRA. Additionally, less than six (6) months after Mr. Price's promotion to Supervisor Investigator he was terminated by Defendant ABRA for sexual misconduct on the job.

24.     In November 2009, Plaintiff became aware that Mrs. Delaney and Mr. Jackson's explanation about Plaintiff's ineligibly for the supervisor investigator position was a pretext for discrimination. Specifically, Plaintiff discovered that the promoted investigator, Mr. Price, had only been employed for six months and his pay grade was a nine (9). Moreover, Plaintiff was informed by Defendant Stewart, that Mrs. Delaney and Mr. Jackson offered Mr. Stewart the said supervisor position in 2008, but Mr. Stewart declined the position because of Mr. Stewart's family obligations. Plaintiff also discovered that Mr. Jackson and Defendant ABRA only interviewed male applicants for the position, all of whom were also less qualified than the Plaintiff.

25.     In September 2008, Defendant ABRA posted two (2) Supervisory positions on the District of Columbia human resource website.  Plaintiff subsequently submitted an application for one of the positions.  However, Plaintiff was never contacted or interviewed for the position.

### b. Denial of Acting Supervisor Positions

26.     Defendant Jackson periodically inquired, via e-mail, whether any investigators were interested in serving as a relief Supervisory Investigator.  Plaintiff responded to all of these e-mails but was never selected.

27.     On June 10, 2009, Plaintiff informed Defendant Jackson that Plaintiff was interested in a Relief Supervisory Investigator position.  However, although Plaintiff was more than qualified, Mr. Jackson and Defendant ABRA chose Defendant Stewart, who had just returned to ABRA, as the Acting Supervisory Investigator.  Defendant Stewart is an African American male under 40 years of age, with military and law enforcement background.  Upon information and belief Defendant Stewart did not have any management experience whatsoever which differentiated his qualifications from Plaintiff.

### c. Denial of Volunteer Opportunities

28.     Plaintiff applied for numerous volunteer opportunities for which Plaintiff was qualified, eligible, and suited.  Notwithstanding Plaintiff credentials, and being more qualified than the individuals selected for the volunteer opportunities, the Mr. Jackson and Defendant ABRA failed to select Plaintiff for the volunteer positions.

29.     On September 11, 2008, Plaintiff applied for an Inaugural Liaison position.  However, Defendant ABRA selected an African American male, Dwayne Shoemaker, for the Inaugural Liaison position.  Mr. Shoemaker was less qualified than Plaintiff.  Specifically, Mr.

Shoemaker had no law enforcement background, had never worked for a government agency, and had only been with ABRA for less than seven (7) months.

30.     On September 28, 2008, Plaintiff applied for Training, Fleet and Special Events Coordinator position.  The Training Coordinator was given to Investigator Susan Mitchell, a Caucasian a female under the age of 40.  Investigator Mitchell has a Master's Degree, however, prior to her tenure with the Defendant ABRA, she had no law enforcement training, had no experience with interviewing and interrogating witnesses, training law enforcement personnel, or handling evidence.  Moreover, Investigator Mitchell had only been reemployed with the agency for less than five (5) months.  Plaintiff has over fourteen (14) years, interviewing and interrogating witnesses and suspects, has appeared and testify in numerous criminal and traffic trials, and has experience previously training law and enforcement personnel.

31.     Plaintiff was not selected for the Fleet Coordinator position, for which Plaintiff had also applied.  Investigator Donnell Butler a 62 year old African American male who was less qualified that Plaintiff was selected.  Investigator Butler had been employed by the Defendant ABRA for nine (9) years at the time of the position being posted.  Investigator Butler had previously been employed for the State of Pennsylvania Department of Corrections for a number of years and upon information and belief was a polygraphs specialist.  Investigator Butler had received poor performance reviews and had not received a promotion for over seven (7) of his then nine (9) years at ABRA.  Plaintiff had over fourteen (14) years experience interviewing and interrogating witnesses and suspects, had appeared and testify in numerous criminal and traffic trials, has experience previously training law enforcement personnel, and had handled numerous motor vehicle accidents to include property damage and personal injury.  Furthermore, as a MPD officer, Plaintiff was responsible for daily maintenance of Plaintiff's fleet.  This included,

checking for damages and fluid levels. Also as an Acting Station Sergeant for MPD, Plaintiff was responsible for securing the fleet that was not being utilized.

32.     Plaintiff was not selected for the Special Events Coordinator for which Plaintiff had also applied. Investigator Ileana Corrales who is a Spanish female under 40 years old was chosen. Investigator Corrales was only with ABRA for seven (7) months. Investigator Corrales had no experience whatsoever in the law enforcement field. Investigator Corrales has a Bachelors Degree in Criminal Justice and upon information and belief had a very limited work history. Plaintiff has had over twenty (20) years coordinating and/or participating in special events. i.e. clothing and toy drives, funeral, blood drives, birthday parties, and the like. Plaintiff had also been employed longer than Corrales.

### d. Denial of Training Request

33.     Plaintiff always expressed an interest in training and becoming a manager. The Plaintiff requested management training and was advised by Defendant Jackson that Plaintiff would never receive training.

34.     The Plaintiff applied for the Supervisory Investigator position in September and November 2008, and applied for an Acting Supervisory Investigator position in June 2009.

35.     In August 2009, Plaintiff had a meeting with Defendant Jackson during which an upcoming training class was discussed. During the meeting, Defendant Jackson stated, "I have another class for you to take." When Plaintiff asked Defendant Jackson which class he was referring to, Defendant Jackson stated that he would advise Plaintiff at a later time. In the meeting, Plaintiff requested that Defendant Jackson send Plaintiff to management classes. Defendant Jackson told Plaintiff sarcastically, "Oh no no no no, you won't ever get that, you need to learn how to get along with people."

36.     Sometime in November 2009, during Plaintiff's performance review, Plaintiff again repeated her request for management training to Plaintiff's supervisor Defendant Stewart.

37.     In March 2010, seven months after Plaintiff was denied the employment opportunity or benefit to attend management classes by Defendant Jackson, Plaintiff was advised by Defendant Stewart that Plaintiff had to be "chosen" by management to attend management classes.   Later the same day, Defendant Stewart changed course and advised Plaintiff that Plaintiff could take management training classes if Plaintiff wanted too.

### e. Denial of Overtime

38.     Around July 2009, then acting Supervisory Investigator Jermaine Matthews informed Plaintiff that although Plaintiff had worked an approved overtime detail on Sale to Minor ("STM"), Plaintiff would not be paid because there were too many people working. Plaintiff's overtime STM detail was approved by Supervisory Investigator Matthews prior to Plaintiff working the overtime detail.

39.     Plaintiff has always followed procedure as it relates to requesting advance overtime and actual overtime.   Plaintiff has never been reprimanded nor disciplined for not following said procedures.

### f. Workers Compensation Claim

40.     In November 7, 2008, Plaintiff informed her then Supervisor, Jermaine Matthews, that Plaintiff's hand went numb while typing and that Plaintiff believed that Plaintiff had suffered a work-related injury.   Soon thereafter, Plaintiff filed a workplace injury complaint with Camille Robinson, ABRA's Administrative Officer and Human Resources contact.

### g. Removal From Inaugural Committee

41.     Shortly before the 2008 presidential election, the United States Secret Service ("USSS") asked Defendant ABRA to take part in enforcement activities at various Inaugural festivities.  Defendant Jackson set up an Inaugural Committee in which Plaintiff and other investigators were chosen to participate.  Each participant was required by the USSS to receive a background check.

42.     On November 14, 2008, Supervisory Investigator Matthews advised Plaintiff that Plaintiff would need to come to the office that day to have Plaintiff's photograph taken by the USSS for Plaintiff's Inaugural credentials.  Plaintiff told Supervisory Investigator Matthews that Plaintiff was already scheduled that day to be treated by Plaintiff's doctor for Plaintiff's work related injury.

43.     Supervisory Investigator Matthews stated that he was unsure whether an alternate day had been scheduled for the photographs; he said he would contact Plaintiff to advise Plaintiff whether Plaintiff might come in the office on Monday, November 17, 2008, to have Plaintiff's photo taken.

44.     Plaintiff replied that although she was not scheduled to work on Monday, but was willing to come in for the photo.  However, Supervisory Investigator Matthews never followed up with Plaintiff on this issue.

45.     During a November 18, 2008 monthly Enforcement Division meeting, Plaintiff learned that Plaintiff had been removed from the Inaugural committee by Defendant Jackson.

46.     With the Enforcement staff present, Defendant Jackson stated that because Plaintiff had not appeared to have Plaintiff's photograph taken, the USSS had requested that Plaintiff be removed from the committee.  Consequently, on November 19, 2008, Plaintiff sent

Defendant Jackson an email expressing Plaintiff's frustration about being dismissed from the committee.

47.     On November 20, 2008, Defendant Jackson reiterated in a response to Plaintiff that Plaintiff had been removed based on the fact that Plaintiff failed to adhere to the strict guidelines of the USSS.

48.     However, Camille Robinson—hired at ABRA in October 2008—was permitted to attend the Inaugural activities along with investigators who had begun the credentialing process months before.  Mrs. Robinson, who is not a member of the Enforcement division, and has no enforcement powers, was hired one (1) month before Plaintiff was removed from the Inaugural committee.

49.     In direct contradiction of the statements made by Defendant Jackson, Mrs. Robinson had her background check completed and photos taken after the strict USSS deadline, and subsequently replaced Plaintiff as a member of the committee.

**h. Reduction in Work**

50.     On January 8, 2009, Plaintiff sent Mr. Matthews an email informing him that Plaintiff had not received any new cases since reporting Plaintiff's work related injury.

51.      Mr. Matthews immediately summoned Plaintiff to the office to meet with him and Defendant Jackson.  Defendant Jackson stated in the meeting that Defendant Jackson was not retaliating against Plaintiff and the Agency had simply not received many cases.

52.     Plaintiff brought to Defendant Jackson's attention that Investigator Nickens had recently received seven (7) new cases in one week.

53.     Defendant Jackson stated that he gives Investigator Nickens the "BS" cases with no substance.  Defendant Jackson then alleged that Investigator Nickens had actually attempted to steal a case from Plaintiff.

54.     Subsequently, Plaintiff discovered that prior to Plaintiff's meeting with Defendant Jackson and Mr. Matthews, in January 2009, Defendant Jackson informed ABRA Investigator Demetrius Nickens that Mr. Nickens needed to take over all of Plaintiff cases.

55.     Defendant Jackson stated that if Plaintiff could not type, then Plaintiff could not be assigned any investigations.

### I. Denial of Request to Change Schedule and Intrusion into Plaintiff's Family Responsibilities

60.     In April of 2008, Plaintiff discovered that her minor child was being physically and mentally abused by his custodial father.  After becoming aware of the situation, Plaintiff took immediate steps to regain custody and control of her minor son.

61.     Plaintiff soon thereafter, filed legal papers for emergency custody with the Prince Georges County Circuit Court.  Custody was henceforth granted to Plaintiff and the minor child was immediately placed back in Plaintiff's care.

62.     Subsequently Plaintiff requested that the Defendant ABRA among other things allow Plaintiff to alter Plaintiff's shift to make the transition for the minor child and Plaintiff easier.  Defendant ABRA did not respond to said request.  However, upon information and belief ABRA permitted Defendant Stewart to alter his schedule to coach his son's football team.

63.     In July 2008, Defendant ABRA's supervisor, Charles Woolridge, resigned his position.  Plaintiff subsequently volunteered to be Acting Supervisor.

64.     In response, Defendant Jackson stated that Defendant Jackson would "wait and see".  Defendant Jackson then questioned Plaintiff regarding the situation with Plaintiff's son and

Plaintiff's family responsibilities.   Consequently, Plaintiff was not selected for the Acting Supervisor position.

65.      In October 2008, Plaintiff had Plaintiff's preliminary evaluation with Defendant Jackson.  During the meeting, Defendant Jackson began to conduct an impromptu interview of Plaintiff for the Supervisor position for which she had previously applied.

66.      During this interview Defendant Jackson again questioned Plaintiff regarding Plaintiff's family situation and responsibilities.

67.      Furthermore, during said impromptu interview, Defendant Jackson questioned Plaintiff regarding her ability to lie to employees on his behalf, should she be chosen for the Supervisor position.

68.      Plaintiff informed Defendant Jackson that she would not lie for him under any circumstances.

### j. Discriminatory Hiring Practices

69.      From December 2006 to the present, Defendant Jackson hired 15 Males and 9 Females.  This constitutes 62.5% males and 37.5% females.

70.      Currently the Enforcement Division has 17 investigators of which 64.70% are male and 35.30% are female.

71.      In September 2009, Defendant ABRA posted four (4) Investigator positions for which Defendant Jackson hired 4 males.

72.       Defendant Jackson hired a male auditor on September 14, 2009.   Upon information and belief, qualified females applied for the auditor position, however, Mr. Jackson chose to hire a male for the auditor position.

### k. The EEO Complaint

73.     On or about November 20, 2009, Plaintiff filed a Complaint of Discrimination with ABRA Internal EEO Officer, Laverne Fletcher.

74.     Although EEO officer Fletcher promised Plaintiff confidentiality, shortly after Plaintiff reported the discrimination, most investigators assigned to enforcement became aware that Plaintiff had filed a complaint against Defendant Jackson.

75.     Ms. Fletcher failed to conduct any investigation whatsoever; in fact Ms. Fletcher claimed that the EEOC Officer's position was a "collateral duty", and that she had other priorities.   In the interim, Defendant ABRA and its agent's discriminatory actions against Plaintiff escalated.

76.     After not receiving any update from Officer Fletcher, Plaintiff requested an immediate right to proceed to the Office of Human Rights (OHR).

77.     After Plaintiff received the right to proceed to OHR, Plaintiff did in fact file an official Complaint in December of 2009 and said complaint was docketed in February 2010. Plaintiff also complained about a hostile work environment and filed charge of discrimination with the EEOC.

78.     After Plaintiff filed her charge of discrimination with the OHR and the EEOC, Defendant ABRA and its agents began retaliating against Plaintiff.   Specifically, Defendant Jackson and Stewart prevented Plaintiff from performing Plaintiff's job by removing most of Plaintiff's responsibilities.  Mr. Jackson and Mr. Stewart:

  a.     No longer permitted Plaintiff to investigate matters within her jurisdiction,
  b.     Interfered and interrupted Plaintiff's work;
  c.     Informed new investigators not to deal with Plaintiff under any circumstances.
  d.     Reduced Plaintiff's caseload;
  e.     Limited the type of cases, Plaintiff received;
  f.     Unfairly and unduly criticized Plaintiff's work product;

g.    Made negative and untruthful remarks in Plaintiff's performance reviews;
h.    Berated Plaintiff in front of other employees;
i.    Denied Plaintiff overtime work and pay;
j.    Denied Plaintiff employment benefits and opportunities; and,
k.    Made up performance complaints against the Plaintiff.

79.    In November 2009, during a meeting with Defendant Stewart, he stated, "I am not involved with the complaint between you and Chief Jackson." Defendant Stewart had actual knowledge that a complaint was lodged against Mr. Jackson and ABRA.  Thereafter, Defendant Stewart– along with the Mr. Jackson – engaged in a campaign to retaliate against the Plaintiff.

### l. Berating, Badgering, and False Accusations Against Mrs. Martin

80.    On May 25, 2010, Plaintiff and a co-worker were involved in a two-car collision. Acting Supervisor Vincent Parker made notifications to Mr. Jackson and Mr. Stewart about the accident.  Mr. Parker relayed information to the Defendant Jackson and Defendant Stewart that three investigators were riding in the same automobile.

81.    Defendant Stewart telephonically contacted Plaintiff while she was still on the scene of the accident and began yelling and badgering the Plaintiff.  Defendant Stewart's voice was so loud the co-worker (Investigator Nickens) could hear Mr. Stewart through the phone.

82.    Subsequently, the Plaintiff sent an e-mail to the Defendant Moosally, voicing Plaintiff's dissatisfaction with the behavior of Defendant Stewart and putting the Defendant ABRA's management team on notice that Defendant Stewart's behavior was unacceptable.

83.    At no time during the events described above, did Mr. Jackson, Mr. Stewart, or Mr. Moosally offer Plaintiff or her passenger medical care.  They were more concerned with the allegation that the Plaintiff had three (3) employees in the vehicle, than the welfare and safety of Plaintiff or her co-worker.

84.     Defendant Jackson had implemented a rule in April of 2009 that only two (2) investigators could be in a vehicle at a time.  Because of discriminatory animus, Mr. Parker erroneously informed Defendant Jackson and Mr. Stewart that Plaintiff had violated this policy, implying that the Plaintiff was insubordinate, for which Plaintiff could have been terminated.

85.     On Information and belief Mr. Parker and other male employees were permitted to travel with more than two (2) employees in a vehicle and the two-person policy was not enforced against them.

86.     On May 26, 2010, the Plaintiff -- along with her co-workers – were called to an impromptu meeting by Defendant Stewart at which time Defendant Stewart berated the Plaintiff in front of her co-workers, Tyrone Lawson, Earl Jones, Vincent Parker and Donnell Butler for sending the e-mail to the Defendant Moosally regarding the Defendant's Stewart's response to the May 25, 2010 accident.  Again, on May 27, 2010, the Plaintiff sent an e-mail to Defendant Moosally alerting him to Mr. Stewart's hostile behavior.

87.     On August 13, 2010, Mr. Stewart accused Plaintiff of doing the work of other investigators.  Even though Mr. Stewart was off duty, he contacted the Plaintiff to say that Plaintiff is to refrain from doing the work of others.  Mr. Stewart accused Plaintiff of doing fieldwork for Investigator Lawrence Holland on two occasions.  Mr. Stewart further alleged that Plaintiff took receipt of Regulatory Inspections (RI's) from Investigator Susan Mitchell and performed work for Investigator Susan Mitchell.

88.     During the conversation, the Plaintiff discussed the fact that other team members were permitted to help other investigators with unfettered authority.  Furthermore, in an e-mail, Plaintiff reiterated that her caseload had been reduced and she was looking for work, as the reason why the Plaintiff accepted the RIs from Investigator Susan Mitchell.

89.     On July 19, 2010, the Plaintiff filed a retaliation complaint with the OHR against the ABRA, citing incidents that involved the Defendant Stewart and the Defendant Jackson.

90.     On July 20, 2010, the following day, Defendant Stewart communicated with MPD Detective David Carter, after which Detective Carter allegedly filed a complaint with Defendant Stewart against the Plaintiff.

91.     Plaintiff was not notified of the alleged complaint filed by Detective Carter until August 19, 2010, which was thirty (30) days later.  On the morning of August 19, 2010, Defendant Stewart asked Plaintiff to come to his office, at which time he stated that two (2) complaints were filed against Plaintiff.

92.     Defendant Stewart alleged that the first complaint was filed by Metropolitan Police Department (MPD) Detective David Carter and the second complaint was filed by an unidentified employee from the establishment of Roses Lounge.

93.     Defendant Stewart stated that he wanted to discuss the complaints before the end of the day and notified the Plaintiff of her right to contact a Union Representative.  At approximately 2:30 p.m., in a meeting room inside of ABRA, Plaintiff, Mr. Steven Allen of District Council 20 AFSCME, and the Defendant Stewart met to discuss the two complaints.

94.     Plaintiff asked Defendant Stewart about the nature of the complaints and Defendant Stewart refused to divulge the contents of the complaints.  Defendant Stewart started reading from what he claimed was Detective Carter's e-mailed complaint, however; when asked that he provide Mr. Allen and Plaintiff with a copy of the e-mail complaint so that they could follow along, Defendant Stewart refused.

95.     According to Defendant Stewart, Detective Carter stated that on June 24, 2010, while working Sale to Minor (STM) with Plaintiff, Detective Carter found Plaintiff's conduct to

be unprofessional.  Defendant Stewart stated that Detective Carter filed this complaint on July 20, 2010.  Defendant Stewart said that Detective Carter alleged that the other investigator working with Plaintiff was Lawrence Holland.

96.     Plaintiff categorically denied the allegations of being unprofessional and also denied that she was working with Investigator Holland on the day in question.

97.     Defendant Stewart then commented about Plaintiff doing what Plaintiff wanted to do.  Plaintiff again categorically denied Defendant Stewart's allegations.

98.     Plaintiff pointed out to Defendant Stewart that Plaintiff believed that she was being retaliated against based on the EEO/EEOC Complaints and the subsequent e-mail that Plaintiff sent to Defendant Stewart on Saturday, August 14, 2010.  In the e-mail Plaintiff confirmed a telephone conversation that Plaintiff had with Defendant Stewart regarding doing other investigators work.  Plaintiff stated in this email, amongst other things, that Plaintiff would not tolerate Defendant Stewart's discriminatory and retaliatory practices against Plaintiff.

99.     Plaintiff again reiterated the fact that it was obvious as stated in Plaintiff prior e-mail's that Defendant Stewart was deliberately attempting to create circumstances, which Plaintiff suspected would support ABRA's position in its attempt to discharge Plaintiff in retaliation of Plaintiff filing an EEO Complaint.

100.    The second complaint Defendant Stewart put forward against Plaintiff was allegedly from a Clyde Roberts, husband of the owner of Roses Lounge.

101.    Defendant Stewart alleged that Defendant Stewart was informed that, while Plaintiff was conducting a Regulatory Inspection (RI) at Roses Lounge on June 29, 2010, Mr. Roberts found Plaintiff's conduct to be unprofessional and further alleged that Plaintiff placed Mr. Roberts in so much fear that he was unable to sleep.  Defendant Stewart stated that Mr.

21

Roberts commented on plaintiff's investigative styles as well as Plaintiff's interaction with the

Roses Lounge's security.  Defendant Stewart stated Mr. Roberts filed a complaint on June 30,

2010, however Defendant Stewart did not interview Mr. Roberts until August 11, 2010.

102.    Plaintiff again renewed her request to receive a copy of the complaint, and

Defendant Stewart refuse and failed to provide a copy.

103.    Plaintiff denied the allegation and informed Defendant Stewart that Plaintiff

surmised that Defendant Stewart contacted establishments that were listed on Plaintiff's daily run

sheets so that Defendant Stewart could attempt to locate someone to file a complaint against

Plaintiff.   Mrs. Martin voiced her dissatisfaction and again restated Plaintiff's belief that

Defendant Stewart was retaliating against Plaintiff for filing an EEO complaint.

104.    Defendant Stewart then alleged that he didn't have anything to do with Mrs.

Martin's EEO Complaint.  The meeting concluded and Defendant Stewart continued to accost

the Plaintiff.  When asked what action would be taken, Defendant Stewart stated that he would

recommend disciplinary action but he was unsure regarding what the punishment would be.

105.    Subsequently, on August 20, 2010, Plaintiff conducted an investigation along

with Steven Allen about Defendant Stewart's allegations pertaining to MPD Detective Carter.

On August 20, 2010, at approximately 8:00 a.m., Plaintiff spoke with MPD Detective David

Carter telephonically to confirm that he filed a complaint of unprofessionalism and unwillingness

to work with another governmental agency, as previously alleged by Defendant Stewart.  When

asked if Detective Carter had filed a complaint against Plaintiff with ABRA, Detective Cater

denied that he did.

106.    However, Detective Carter stated that he was approached by Defendant Stewart

and asked to write a statement about Plaintiff regarding what happened on June 24, 2010, Sale to

Minor (STM) program. Detective Carter stated that he was confused as to why he was being asked to prepare a statement and when he inquired of Mr. Stewart about the reason for the requested statement, Defendant Stewart did not give a clear answer. Reluctantly, Detective Cater stated he tendered a statement stating that Detective Carter arrived at ABRA, discovered that ABRA Investigators were already in the field, and subsequently, met with Plaintiff in the field.

### m. Retaliatory Increase in Duties

107.    In the summer of 2009, during a monthly meeting Defendant Jackson requested, by the show of hands, which investigators would like to volunteer for the role of Field Training Investigators, (FTI) in anticipation of the hiring of five (5) new investigators. The Plaintiff promptly volunteered.

108.    During a November 2009 monthly meeting, Defendant Jackson and Defendant Stewart requested to meet with the FTIs. The Plaintiff was unaware that the FTIs selections had been made. The Plaintiff asked Defendant Jackson how many and which investigators were selected. In response, Defendant Jackson snickered and Defendant Stewart responded, "put it like this, those selected know who they are."

109.    The Plaintiff later discovered that investigators Jermaine Matthews, Erin Mathieson, Jabril Shakoor, Ileana Corrales, Vincent Parker, Donnell Butler, and Regina Hollis were selected as the FTIs.

110.    Although Plaintiff was not selected as a FTI, after Defendant Jackson and Defendant Stewart became aware of Plaintiff's EEO Complaint, Defendant Stewart increased the workload of the Plaintiff by assigning the Plaintiff to train the new investigators on 72 separate occasions – in addition to Plaintiff's regular duties.

111.   Plaintiff work team had two (2) FTIs (Vincent Parker and Donnell Butler) and the other work team had five (5) FTIs (Erin Mathieson, Jabril Shakoor, Jermaine Matthews, Regina Hollis, and Ileana Corrales).   The Plaintiff's work team had four (4) new investigators that required training, while the second work team had one new investigator that required training. Defendant Stewart assigned the Plaintiff to train the new investigators on Plaintiff work team, bypassing the FTIs, and often required Plaintiff to train two (2) investigators at once, a burdensome task.   This act caused the Plaintiff to set aside Plaintiff's regular duties, which the Defendant later used as a basis to allege that the Plaintiff was not performing the work assigned to Plaintiff in a timely manner.

### n. Denial of Request for Reasonable Accommodation

112.   In November 2008, Plaintiff was diagnosed with Carpel Tunnel as a result of performing her duties in the ordinary course.   The injury was timely reported to the Defendant ABRA who accepted the injury as a worker's compensation work related injury.

113.   In March 2009, Plaintiff was placed on Workers Compensation leave, because the Defendant's Doctor's had scheduled an operation to alleviate the pain Plaintiff suffered as a result of her injuries.

114.   From March 20, 2009 through June 7, 2009, Plaintiff remained out from work recuperating from her surgery.

115.   The Plaintiff was cleared to return to her duties on June 8, 2009, as the doctor opined that she had made a full recuperation.

116.   Soon thereafter, Plaintiff symptoms returned and she sought medical assistance once again.

117.  ABRA retained the services of another doctor, who stated that Plaintiff condition worsened.  The Doctor opined that the procedure utilized by the last doctor in the first surgery was outdated and proven to be ineffective.

118.  As a result of the Plaintiff's premature return to work and failure of ABRA's Doctor to properly treat Plaintiff's hand injury, the Plaintiff became permanently injured, which injury affected one or more of Plaintiff's major life's activities.  The injury also prevented the Plaintiff from sleeping, typing, and grabbing objects, which are major life activities and affected other major life activities, such as cleaning a home, shopping for food and personal needs, and taking care of Plaintiff's self.

119.  The new doctor requested that the Plaintiff be placed on light duty with respect to typing.  Plaintiff is required to type in the course of her employment, because she is responsible for her work product such as Investigative Reports, Protest Reports, and Citations Reports.

120. Plaintiff is qualified to perform the duties of an Investigator and had requested a reasonable accommodation from the Defendant for the hand injury and disability.  Plaintiff sent numerous requests to the Defendant's purported Human Resources Officer, who failed to timely address Plaintiff's request for an accommodation.

121.  Plaintiff's requested accommodation was that Defendant ABRA buys a voice recognition software so that Plaintiff could speak and the computer would type.  The software accommodation would not have placed a financial burden on Defendant ABRA and in fact was less than $200.00 at the time.

122.  DC and ABRA is able to provide accommodation without a financial hardship being suffered by the Employer; however, DC and ABRA has refused to provide a reasonable accommodation and instead requires the Plaintiff to work in a full unrestricted duty status.

123.    The Defendants recognizes Plaintiff's disability, treats plaintiff as having a disability and/or has a record of her disability.

124.    Plaintiff asked for a reasonable accommodation, such as the voice recognition software so that Plaintiff can perform the duties of her job as an Investigator, and the assignments and positions existing within the enforcement division that are within the Plaintiff's physical abilities and that she is qualified to perform; however, DC and ABRA failed to provide Plaintiff the reasonable accommodation.

## VII. COUNT ONE
## DISPARATE TREATMENT ON THE BASIS OF SEX OR GENDER
## IN VIOLATION OF TITLE VII
## (AGAINST ABRA AND DC)

125.    Plaintiff incorporates all paragraphs as though fully set forth herein and further alleges that at all times relevant hereto the Plaintiff suffered disparate treatment discrimination because of her sex or gender as a female.

126.    ABRA and DC intentionally, with malice and reckless indifference to federal, state, and local laws prohibiting gender discrimination in employment, treated the Plaintiff adversely, while similarly situated male employees were treated more favorably in the terms and conditions of employment including promotion, training, work assignments, volunteer opportunities, overtime pay, and other work benefits.

127.    The gender discrimination suffered by the Plaintiff adversely affected the terms, conditions, and privileges of her employment.

128.    Defendant ABRA and Defendant DC had actual and/or constructive knowledge about the gender discrimination and disparate treatment and not only failed to take prompt and adequate remedial action, but participated in the gender discriminatory conduct and disparate treatment of the Plaintiff.

129.   As a direct and proximate result of this gender discrimination and disparate treatment, the Plaintiff has suffered the loss of promotion to supervisory investigator, loss of management training, loss of volunteer opportunities, loss of income and benefits, and has suffered injury to her reputation, injury to her career, pain, mental anguish, and humiliation; and, faces irreparable harm and future losses.

## VIII. COUNT TWO
## DISPARATE IMPACT IN VIOLATION OF TITLE VII
### (AGAINST ABRA AND DC GOVERNMENT)

130.   Plaintiff incorporates all paragraphs as though fully set forth herein and further alleges that at all times relevant hereto the Plaintiff suffered disparate impact discrimination because of her sex or gender as a female.

131.   ABRA and DC used the following discriminatory employment practices in violation of Title VII: selection for promotion, training, volunteering opportunities, overtime work and pay, work assignments, and hiring.  Although these practices appear to be neutral, they serve to discriminate against a disproportionate number of persons of Plaintiff's sex.

132.   ABRA and DC also use the absence of appropriate personnel and administrative policies and procedures for selection for promotion, training, volunteer opportunities, overtime work and pay, work assignments and hiring, as an employment practices.  These practices serve to disparately impact Plaintiff and other female employees in violation of Title VII.

## IX. COUNT THREE
## RETALIATION IN VIOLATION OF TITLE VII
### (AGAINST DEFENDANT ABRA AND DEFENDANT DC)

133.   Plaintiff incorporates all paragraphs as though fully set forth herein and further alleges that at all times relevant hereto the Plaintiff was retaliated against in violation of the provisions of Title VII for engaging in the protected activity of reporting discriminatory conduct

of Defendant Jackson and Defendant ABRA, and filing and participating in the investigation of the internal and external EEO complaint.

134.   ABARA and DC intentionally, with malice and reckless indifference to federal, state, and local laws prohibiting retaliation against employees who complain against discrimination in employment, retaliated against the Plaintiff for filing internal and external EEO/EEOC complaints and for pursuing gender discrimination and retaliation claims against Defendant ABRA And Defendant DC.

135.   The retaliatory conduct the Plaintiff was subjected to, detail in the foregoing paragraphs, constituted adverse employment actions, against Plaintiff, and was causally linked to Plaintiff filing and participating in the EEOC investigation and pursuing gender discrimination and retaliation complaints against Defendants.

136.   The retaliatory actions taken against the Plaintiff constituted adverse employment actions and altered the terms, conditions and privilege of her employment with  ABRA inter alia, the following manner:

    a.   Denial of promotion, management training, and volunteer opportunities.
    b.   Denial of overtime pay.
    c.   Unduly burdensome work assignments.
    d.   Constant verbal abuse, insults, personal attacks, and public embarrassment.

137.   Defendant ABRA and Defendant DC were fully aware of the retaliatory acts against the Plaintiff detailed in the foregoing paragraphs, and were deliberately indifferent by disregarding the known or obvious conduct toward the Plaintiff, and actually participated in the retaliation against the Plaintiff.

138.   As a direct and proximate result of the discriminatory retaliation, the Plaintiff has suffered the loss of promotion to supervisor investigator, loss of management training, loss of volunteer opportunities, loss of income and benefits, and has suffered injury to her reputation,

injury to her career, pain, mental anguish, and humiliation; and, faces irreparable harm and future losses.

## X. COUNT FOUR
### FAMILY RESPONSIBILITY DISCRIMINATION IN VIOLATION OF DC HUMAN RIGHTS ACT
### (AGAINST DEFENDANT JACKSON, DEFENDANT DC, AND DEFENDANT ABRA)

139.   Plaintiff incorporates all paragraphs as though fully set forth herein and further alleges that at all times relevant hereto the Plaintiff suffered discrimination based on Plaintiff's family responsibilities in violation of DC Human Rights Act.

140.   Defendant Jackson inappropriately questioned Plaintiff regarding her family responsibilities and then failed to select her for a Supervisor position for which she was qualified.  Defendant Jackson asked Plaintiff questions that were not bona-fide occupational questions and which were not asked of male applicants during their respective interviews.

141.   Defendant Jackson use information about Plaintiff's family responsibilities as the basis to deny Plaintiff a promotion to supervisory investigator.

142.   The unlawful family responsibilities discriminatory employment practices engaged in by the Mr. Jackson, ABRA and DC were in violation of DC Human Rights Act and were intentional, willful and in reckless disregard of Plaintiff protected rights.

143.   As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant ABRA And Defendant DC, Plaintiff sustained permanent and irreparable harm, resulting in the loss of earnings, plus the value of certain benefits, entitling her to compensation plus additional damages for loss of future earning power, back pay and front pay and any interest due thereon.

## XI. COUNT FIVE
## RETALIATION IN VIOLATION OF DC HUMAN RIGHTS ACT
### (AGAINST DEFENDANTS)

145.    Plaintiff incorporates all paragraphs as though fully set forth herein and further alleges that at all relevant time hereto Plaintiff suffered retaliation in violation of DC Human Right Act.

146.    The DC Human Rights Act (DCHRA) prohibits employers from treating employees differently in the terms and conditions of employment, including hiring, firing, promotion, training, or issuing assignments, because of age, race, sex, and disability; as well as retaliating against employees for opposing employment discrimination, filing a charge of employment discrimination, or cooperating with an investigation of employment discrimination.

147.    The Defendants are employers as intended by the DCHRA and are required to comply with the mandates of the DC Human Rights Act.

148.    Plaintiff is a covered employee and individual under the DCHRA and she filed timely a charge of, sex and disability discrimination with the DC Office of Human Rights (OHR), and with the EEOC.

149.    The Defendants' treated Plaintiff differently and took adverse action against the Plaintiff by denying the Plaintiff promotions, management training, volunteer positions, overtime pay, reasonable accommodation, work assignments and other employment benefits because Plaintiff engaged in protected activities, in violation of the District of Columbia Human Rights Act, D.C. Code 2-1401.01 *et seq.*

150.    As a direct and the proximate result of the Defendants' acts and/or omissions the Plaintiff sustained economic injuries, humiliation, embarrassment, unnecessary pain, and a

permanent hand injury for which the Defendant has not but is required by law to provided a remedy.

## XII. COUNT SIX
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
## (AGAINST DEFENDANTS)

151.    Plaintiff incorporates all preceding and following paragraphs hereto and as though fully set forth herein.

152.    Plaintiff is a disabled person as intended by the ADA, in that Plaintiff has a physical impairment that substantially limits one or more of Plaintiff's major life activities, including writing, typing, holding objects, taking care of personal needs, cleaning her home, shopping, taking out trash and sleeping.  Defendant also regards Plaintiff as having such an impairment, as set forth under 42 U.S.C. § 12102(2)(A),(C).

153.    Defendant violated the ADA by intentionally discriminating against plaintiff on the basis of her disability.  Defendant's discriminatory acts include denial of promotion, denial of volunteer opportunities, denial of management training, and denial of work assignments.

154.    Plaintiff is otherwise qualified to perform the essential functions of an Investigator, with or without reasonable accommodations by the Defendants.

155.    Plaintiff's requested that Defendants purchase a voice recognition software so that Plaintiff could speak and the computer would type.  The software accommodation would not have placed a financial burden on Defendants.

156.    Defendants discriminated against plaintiff by failing to provide Plaintiff with voice recognition technology to allow Plaintiff to type Plaintiff's work product.  Plaintiff required the  reasonable accommodations of a voice recognition software to perform her job.

157.   As a direct and the proximate result of the Defendants' acts and/or omissions the Plaintiff sustained economic injuries, humiliation, embarrassment, unnecessary pain, and a permanent hands injury for which the Defendant has not but is required by law to provided a remedy.

## XIII. COUNT SEVEN
## WORKERS COMPENSATION RETALIATION
## IN VIOLATION OF D.C. CODE § 32-1542.
## (AGAINST DEFENDANTS)

158.   Plaintiff incorporates all preceding and following paragraphs hereto and as though fully set forth herein.

159.   By and through its conduct, Defendant discriminated against Plaintiff in reprisal for a worker's compensation claim in violation of D.C. Code § 32-1542 et seq.

160.   As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by the Defendants, Plaintiff sustained permanent and irreparable harm, resulting in the loss  of earnings, plus the value of certain benefits, entitling her to compensation plus additional damages for loss of future earning power, back pay and front pay and any interest due thereon.

## XIV. COUNT EIGHT
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE DC HUMAN RIGHTS ACT
## (AGAINST DEFENDANTS)

161.   Plaintiff incorporates all preceding and following paragraphs hereto and as though fully set forth herein.

162.   Plaintiff is a disabled person as intended by the DC Human Rights Act; in that, she has a physical or mental impairment that substantially limits one or more major life activities of such individual, or was regarded as having such impairment, as set forth under the DC Human Rights Act.

163.    Plaintiff is otherwise qualified to perform the essential functions of an Investigator, with or without reasonable accommodations by the employer; and she has suffered an otherwise adverse employment decision as a result of discrimination.

164.    Defendant is a covered entity under the America Disabilities Act and the DC Human Rights Act.

165.    Defendant's knowingly, intentionally, recklessly or negligently discriminates against the Plaintiff because of her disability and/or handicap. In that, it has failed to provide reasonable accommodation to qualified persons suffering a disability that affects one or more of life's major actualities who are capable of performing the duties and/or work for the District with or without reasonable accommodations, when such reasonable accommodations will not provide a financial hardship on the District.

166.    As a direct and the proximate result of the Defendants' acts and/or omissions the Plaintiff sustained economic injuries, humiliation, embarrassment, unnecessary pain, and a permanent hand injury for which the Defendant has not but is required by law to provided a remedy.

## XV. COUNT NINE
## NEGLIGENT HIRING AND RETENTION
### (AGAINST DC, ABRA, BRODSKY, GRAHAM, AND MOOSALLEY)

167.    Plaintiff incorporates all preceding and following paragraphs hereto and as though fully set forth herein.

168.    An employer has an obligation to its employees and others who will come in contact with them to provide a safe and productive working environment.

169.    On or around December 23, 2009, DC, ABRA, and Mr. Moosally were placed on notice regarding the deprivation of Plaintiff's rights

170.    On April 12, 2010, Defendant Brodsky and Mr. Graham were put on notice of the conduct of its agents against Plaintiff and other personnel at ABRA.

171.    Plaintiff alleges and therefore avers that ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham has policies (or lack thereof), practices and customs to: a) engage in employment discrimination, because of sex, age and disability; b) retaliate against employees, including the Plaintiff, when the employee engaged in Title VII protected conduct, such as opposing illegal employment discrimination, filing a charge of employment discrimination with the OHR, and filing a lawsuit under Title VII and/or DC Human Rights Act (DCHRA); c) acquiesces to command and supervisory personnel's conduct, such as but not limited to Mr. Jackson, Mr. Stewart, Mr. Brodsky, Mr. Moosally and Mr. Graham, that aids and abets the Employers aforementioned policy, practice and customs to engage in employment discrimination and retaliation.

172.    ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham had a duty to use reasonable care in selecting and retaining employees who were competent and fit to perform the duties of a Supervisor.

173.    Upon information and belief, ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham had actual knowledge of Defendant Stewart's propensity to discriminate against similarly situated employees and ignored facts so indicating.

174.    Upon information and belief, ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham had actual knowledge of Jackson's propensity to discriminate against similarly situated employees, as Defendant Jackson has had other complaints of a similar nature filed against him.

175.    A reasonable and prudent employer would not have ignored such indications of Defendant's Jackson and Stewart's unfitness for such duties.

34

176.    ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham knew or should have known that Defendant's Jackson and Stewart would use discriminatory means against the Plaintiff and similarly situated employees.

177.    Plaintiff was in a protected class and it would be foreseeable based on the conduct described above that such actions would occur against the Plaintiff and similarly situated employees.

178.    Therefore, ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham owed such a duty to Plaintiff, and such duty was breached.

179.    As a result of ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham's negligent hiring and retaining Defendant Jackson and Mr. Stewart in the positions of Chief of Enforcement and Supervisory Investigator, respectively, Plaintiff suffered injuries as alleged.

180.    WHEREFORE, Plaintiff, prays judgment against ABRA, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham, in the amount of $1,000,000.00 (One Million Dollars), punitive damages of $2,000,000.00, plus her attorneys fees, cost of suit incurred, back pay, front pay, restoration of leave, appointment to supervisor and for other and such further relief as may be deemed just and appropriate.

## XVI. COUNT TEN
## VIOLATIONS OF DC WHISTLEBLOWER'S ACT
## (AGAINST DEFENDANTS)

181.    Plaintiff incorporates all preceding and following paragraphs hereto and as though fully set forth herein.

182.    Defendant Delaney, former director of Defendant ABRA, encouraged the Plaintiff to apply for the Supervisory Investigator position.  Subsequently Defendant Delaney became aware that Plaintiff was cooperating with an investigation of ABRA by The Office of Inspector

General (OIG). Additionally, Plaintiff began to call into question the inconsistent treatment of licensees (i.e. preferential treatment given to certain establishments) by ABRA management.

183.    Plaintiff requested to speak with the ABC Board in regards to these preferential treatment practices by ABRA. As a result, Mrs. Delaney became infuriated, and later advised Plaintiff that the Board members refused to speak with Plaintiff.

184.    Subsequently, Plaintiff emailed the Board members in regards to meeting with them about the aforementioned issue. Plaintiff also advised the members that according to Mrs. Delaney, the Board members refused to meet with ABRA staff in regards to any issues.

185.    After said email was sent, Defendant Delaney and Defendant Moosally (then General Counsel) requested Plaintiff's attendance at an impromptu meeting. During the meeting, Defendant Delaney reprimanded Plaintiff for emailing the Board. Plaintiff responded that Plaintiff was dissatisfied with the treatment of licensees and the disparaging treatment of employees.

186.    After the meeting Defendant Delaney and Defendant Moosally informed other investigators not to associate with Plaintiff. Defendants further interrupted and interfered with the administration of Plaintiff's duties as an Investigator, ostracized her, and disparaged her reputation in the community and amongst her peers.

187.    Plaintiff engaged in protected activities under the District of Columbia Whistleblower Protection Act, as amended, D.C. Code § 1615.54 *et seq*, including protected disclosures defined by the Act and its 2009 Amendment.

188.    The Whistleblower Protection Act, as amended, prohibits personnel actions from being taken against Plaintiff because she has made protected disclosures. The Act guarantees

that Plaintiff is free to disclose information regarding Defendants' illegal and/or unethical activities, or that threatens public funds, public health, and safety, without fear of retaliation.

189.   Plaintiff made protected disclosures when, among other occasions, she testified before the D.C Office of Inspector General (OIG), regarding unlawful and/or unethical activities of ABRA and its employees, including with respect to, corruption, fraud, waste and abuse, employees consuming alcoholic beverages on the job, inside influence, cronyism, abuse of authority and discriminatory treatment of licensees.

190.   Plaintiff reasonably believed that her statements, *inter alia*, to the OIG, demonstrated and/or were examples of "gross mismanagement" or gross misuse or waste of public resources and funds, or abuse of authority in connection with the administration of justice. Plaintiff also believed that the misuse or abuse was in connection with the administration of a public program or the execution of a public contract and/or in violation of federal, state, or local law, rule, or regulation.

191.   The Defendants' took "prohibited personnel actions", as defined in the Whistleblower Act, as amended, at § 1-614.52(a) (5), and otherwise retaliated against Plaintiff because of her protected activity.  These actions included recommended, threatened and actual, disciplinary action, reprimand, negative decisions, involuntary transfers, denial of promotion, denial of training, reassignment, ostracizing, and retaliation in the manner described above.

192.   Plaintiff's protected activities contributed to the Defendants' retaliatory acts described above, in violation of the Whistleblower Act § 1-615.54 et seq.

193.   Plaintiff's exercise of her whistleblower rights was a substantial or motivating factor in the adverse actions taken against her by the Defendants.  Defendants would have not

37

taken these adverse actions against the Plaintiff had she not engaged in activity protected under the D.C. Whistleblower Act.

194.    As a direct and proximate cause of the Defendants' actions, Plaintiff has lost wages and benefits, suffered emotional distress, embarrassment, anxiety, fatigue, mental distress, humiliation, illness and damage to her professional and personal reputation.

195.    WHEREFORE, Plaintiff, prays judgment against all Defendant's, in the amount of $1,000,000.00 (One Million Dollars), punitive damages of $5,000,000.00, plus her attorneys fees, cost of suit incurred, back pay, front pay, restoration of leave, appointment to supervisor and for other and such further relief as may be deemed just and appropriate.

## XVII. COUNT ELEVEN
## VIOLATION OF 42 USC 1983 FIRST AMENDMENT RETALIATION
## FREE SPEECH / PETITION CLAUSES
## (AGAINST DEFENDANTS)

196.    Plaintiff incorporates all preceding and following paragraphs hereto and as though fully set forth herein.

197.    Plaintiff is a member if a protected class, in that she engaged in first amendment protected free speech and petition clause activity by:

(a) opposing perceived race discrimination in employment, obeying a subpoena;

(b) appearing as a witness to offer testimony:

(c) speaking as a citizen on perceived investigator or ABC Board misconduct;

(d) reporting to police and cooperating with Police in a criminal matter involving investigator misconduct;

(e) using the labor grievance process under a Collective Bargaining Agreement to challenge governmental action against her;

(f) file sex discrimination and retaliations charges with state and federal agencies duly authorized under law to investigate such charges; and,

(g) file a lawsuit against the District of Columbia and its employees for perceived sex discrimination and retaliation.

198.    Plaintiff, since the aforementioned first amendment protected activities has been subjected to adverse and retaliatory action by the Defendants; as is fully described above, which averments are incorporated here as if repeated verbatim.

199.    The substantial or motivating reason for the Defendants' actions, acts, or omissions, as were afore described, were done to retaliate against the Plaintiff for her protected activities, and/or to chill Plaintiff and other employees from engaging in first amendment rights, and/or to punish Plaintiff for her past first amendment and Title VII and Collective Beginning activities and dissuade her from continuing such activity.

200.    Plaintiff at all times relevant hereto enjoyed under federal law the right to engage in permitted free speech by speaking out as a citizen about misconduct, obey a court notice and provided testimony as a witness; Plaintiff also enjoyed the right under the petition clause to petition the courts, agencies and labor grievance system to grieve perceived wrongful and/or discriminatory action against her because of her sex, first amendment activities, or rights under a Collective Bargaining Agreement.

201.    Plaintiff at all times relevant hereto enjoyed under federal law the liberty right in her good name, and right to obtain property though her employment as an Investigator, such as the property known as wages, overtime pay, and other benefits attendant to the employment; and to equal employment opportunities such as confidentiality in EAP information and workers compensation benefits, records to obtain the benefits, and compliance with subpoenas.

39

202.    The Defendants acted under color of state law and deprive the plaintiff of her rights privileges or immunities secured by the Constitution, Laws or Regulations of the United States, such as but not limited to the First Amendment free speech and petition clause rights' Fourteenth Amendment procedural due process right before life, liberty or property could be taken; to equal protection of law, and the liberty right to reputation as is secured by the First, Ninth and Fourteenth Amendment of the United States Constitution.

203.    As a direct result of the Defendants' intentional, reckless, deliberate, grossly negligent, and purposeful action, acts and omission; which were done in deliberate indifference for the Plaintiff's clearly established rights, and/or reckless disregard for them, the Plaintiff sustained a deprivation of her federally secured rights, privileges, and immunities.

204.    As a direct result of the Defendants' intentional, reckless, deliberate, grossly negligent and purposeful action, acts and omission; which were done in deliberate indifference for the Plaintiff's clearly established rights, and/or reckless disregard for them, the Plaintiff sustained, damages and harm, such as humiliation, embarrassment, mental anguish and wage and benefit loss, which damages and harm with the deprivation entitled Plaintiff to relief under 42 USC 1983, et seq., to include but not limited to actual, compensatory, nominal, special and punitive damages, and equitable and other relief.

### XVIII. COUNT TWELVE
### 42 USC 1983 - MONELL LIABILITY
### (AGAINST DEFENDANTS)

205.    Plaintiff incorporates all paragraphs hereto as if all were repeated verbatim.

206.    For all time relevant to this action, the Defendants' had the responsibility of adopting policies, implementing procedures and practices that would create a nondiscriminatory, none hostile, and harassment/retaliation free work place; which work place is free of sex or

40

gender discrimination.  Defendants had the duty to create a work place that provided equal treatment to its employees, which included the Plaintiff, in the terms and conditions of employment, and to take prompt and appropriate action to prevent conduct that is prohibited by law, rule, regulation, and constitutions of the United States and The District of Columbia.

207.    The Equal Protection Clause to the Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to be free from sexual discrimination on the basis of gender (female) as an Investigator employed by the Defendants, and the right to be free from retaliation for reporting acts of discrimination.

208.    Upon information and belief the Defendant ABRA does not have adequate programs and or policies or supervision to prevent sex discrimination, retaliation and other illegal employment practices.

209.    Defendant ABRA by policy (or lack thereof), practice and custom ignore claims of discriminatory conduct by investigators or supervisors and disparately treat investigators because of sex and/or protected activities; conduce, encourage or acquiesce to retaliation and discriminatory treatment by supervisors and others to retaliate for the protected conduct and/or to chill the exercise of constitutional rights by employees.

210.    Defendant ABRA has adopted or has tolerated an implicit policy or custom permitting supervisors to use the internal disciplinary process; shift and overtime assignment authority, and promotional process to retaliate against and harass those investigators/employees who engage in protected conduct under the laws of the United States and the District of Columbia.

211.    As a direct result of the Defendant ABRA's said policy (or lack thereof), practice and/or customer, Plaintiff was deprived of rights, privileges and immunities as secured under

41

federal law, rule, regulation and constitution, and sustained harm to her person, loss of property, and suffered economic loss or damages.

## XIX. COUNT THIRTEEN
## AGE DISCRIMINATION IN VIOLATION OF ADEA
## (AGAINST DC, ABRA)

212.   Plaintiff incorporates all paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto the Plaintiff suffered age discrimination.

213.   Age was a determining factor in DC and ABRA decision to deny Plaintiff's promotion, request for training, volunteer opportunities, and other employment benefits.

214.   Plaintiff's performed successfully on all her assignments and evaulations, and her overall job performance was consistent with the legitimate expectation of Defendant ABRA.

215.   DC and ABRA knowingly and willfully discriminated against Plaintiff on the basis of her age in violation of the ADEA.

## XX. COUNT FOURTEEN
## VIOLATION OF 42 U.S.C. § 1985
## (AGAINST DEFENDANTS)

216.   Plaintiff incorporates all paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto Defendants conspired for the purposes of depriving Plaintiff of the equal protection of the laws in violation of 42 U.S.C. § 1985.

217.   Defendants have conspired for the purpose of depriving plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws by denying plaintiff promotion to supervisory investigator and acting supervisory investigator, denying Plaintiff management training, denying Plaintiff volunteering opportunities, denying Plaintiff work assignments, denying Plaintiff overtime work and overtime pay, and singling out Plaintiff for unusually burdensome work.

42

218.    Defendants' conduct in this regard was motivated impermissibly by Plaintiff's gender and age, by personal malice against the plaintiff and by improper consideration of Plaintiff's exercise of free speech under the First and Fourteenth Amendment of the U.S. Constitution.

219.    In furtherance of the object of this conspiracy to deprive Plaintiff of the equal protection of the laws and her equal privileges and immunities under the laws, the defendants have done or caused to be done the acts set forth in this complaint which resulted in Plaintiff's not being promoted to supervisory investigator, denial of etc., and denial of remedial rights.

220.    Plaintiff has been injured in her person and property and deprived of exercising her rights and privileges as a citizen by virtue of the conduct of the conspiring defendants. Plaintiff's allegations as to damages in paragraph 217 are incorporated herein by reference.

## XXI. COUNT FIFTEEN
## VIOLATION OF 42 U.S.C. § 1986
## (AGAINST DEFENDANTS)

221.    Plaintiff incorporates all paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto Defendants failed or neglected to prevent conspiracy to deprive Plaintiff of the equal protection of the laws in violation of 42 U.S.C. § 1986.

222.    Defendants had knowledge at all material times that the wrongs conspired to be done as alleged in the second claim for relief were about to be or were in the process of being committed during the period from early 2008 through the date of this complaint.  Defendants have the power to prevent or aid in preventing the commission of these wrongs; yet, they have neglected and refused to do so.  Defendants could have by reasonable diligence prevented the wrongs alleged in paragraph 217 by promoting Plaintiff to supervisory investigator, selecting

Plaintiff for acting supervisory investigator and volunteer positions, approving Plaintiff's overtime pay, approving Plaintiff's request for reasonable accommodation or by granting Plaintiff some other effective remedy to redress the deprivation of her rights.

223.    Plaintiff has been damaged in the manner set forth in paragraph 217 of this complaint which is incorporated herein by reference and is entitled, by virtue of 42 U.S.C. § 1986, to recover from Defendants (and any other defendant whom plaintiff learns has neglected or refused to prevent the wrongful acts alleged) all damages resulting from such wrongful neglect or refusal.

**XXII. COUNT SIXTEEN
VIOLATION OF 42 U.S.C. § 1981**

224.    Plaintiff incorporates all paragraphs hereto, as though fully set forth herein, and further alleges that at all times relevant hereto Defendants failed or neglected to prevent conspiracy to deprive Plaintiff of the equal protection of the laws in violation of 42 U.S.C. § 1986.

225.    The Defendants have deprived plaintiff of her right to make and enforce contracts and to the full and equal benefit of Defendant ABRA and Defendant DC's regulations and all laws and proceedings for the security of Plaintiff's employment because of Plaintiff's gender and age in violation of 42 U.S.C. § 1981.

226.    Plaintiff has been damaged by virtue of Defendants' conduct alleged in the foregoing paragraph in the same manner as alleged in paragraph 32 above, which is incorporated herein by reference, and is entitled to recover these damages from the appropriate Defendants.

44

## XXIII. DAMAGES

227.   As a direct and proximate result of Defendants' conduct, plaintiff suffered the following injuries and damages.

a.   Plaintiff was denied a promotion to Supervisory Investigator and Acting Supervisory Investigator resulting in lost pay and benefits.

b.   Plaintiff was denied management training, resulting in lost pay, lost benefits, and opportunities for career advancements.

c.   Plaintiff was denied career volunteer positions and opportunities, resulting in lost opportunities for career advancement.

d.   Plaintiff suffered mental anguish and emotional distress in the form of depression, stress, anxiety, panic attacks, low self-esteem, inability to sleep, weight gain, inability to socialize with others, lack of enjoyment from activities you used to like, upset stomach, headaches, migraines, skin rashes, indigestion, bowel troubles, anger, frustration, feelings of hopelessness, shortness of breath, hot flashes, poor concentration, difficulty making decisions, repeated and uncontrollable thoughts about the way Plaintiff was treated at work, low energy, and fatigue.

## XXIV. ATTORNEY FEES

228.   Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k) and pursuant to other statutes under which this suit is brought.

## XXV. PRAYER

229.   Plaintiff prays that this Court enter judgment for her and against the Defendants, and that this Court award Plaintiff such relief needed to make the Plaintiff whole and remedy the

violations; hold the Defendants joint and several liable, and to award all legal and equitable relief the law may allow; such as but not limited to:

a) Declaratory and injunctive relief that declare the acts or policy of the Defendants' unconstitutional;

b) Compensatory damages to compensate for the actual harm sustained\

c) Statutory damages such as back pay and interest on back pay;

d) Consequential damages for the natural consequential damages flowing from the harm;

e) Punitive damages, but not against the District of Columbia;

f) Nominal damages;

g) An award of reasonable attorney fees and litigation cost; and,

h) Such other and further relief as may be deemed just and proper.

Signed this 9th Day of ⎽⎽⎽June⎽⎽⎽ , 2011

Respectfully Submitted,

George A. Rose, Esq.
Federal Bar # 26086

THE ROSE LAW FIRM, LLC
200 E. Lexington Street, Suite 800
Baltimore, Maryland 21202
Phone: 410-727-7555 F: 410-727-7585
Email: grose@roselawfirm.net

Counsel for Plaintiff

## JURY TRIAL PRAYER

Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

George A Rose, Esq.