IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| FELICIA MARTIN | * |
| Plaintiff, | * |
| Vs. | * Case No 11-CV-1069 ABJ |
| | * |
| DISTRICT OF COLUMBIA, et al | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DISTRICT DEFENDANTS'
MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT

NOW COMES, Felicia Martin, "Plaintiff", by her attorneys George Rose, Esq., and The

Rose Law Firm LLC, and files this Plaintiff's Responds in Opposition to the District Defendants'

Motion for Partial Dismissal of the Complaint.  In support of Plaintiff's opposition to the District

Defendants' Motion for Partial Dismissal of the Complaint, Plaintiff incorporates by reference

the attached Memorandum of Law and Points of Authorities.  For the reasons set forth in the

Memorandum of Law and Points of Authorities, and for reasons within the descretion to the

Court, the District Defendants' Motion for Partial Dismissal of the Complaint must be denied.


Respectfully Submitted,

/s/ George Rose
_____
GEORGE ROSE, ESQUIRE
TRIAL BAR NO.: 26086

THE ROSE LAW FIRM LLC
200 East Lexington Street, Suite 800
Baltimore, Maryland 21202
410-727-7555
F:  410-727-7585
grose@roselawfirm.net

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | * | |
| FELICIA MARTIN | | |
| | * | |
|     Plaintiff, | | |
| | * | Case No   11-CV-1069 ABJ |
| Vs. | | |
| | * | |
| DISTRICT OF COLUMBIA, et al | | |
| | * | |
|     Defendants. | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>PLAINTIFF'S MEMORANDUM OF LAW AND POINTS OF AUTHORITY IN
SUPPORT OF PLAINTIFF'S OPPOSITION TO DISTRICT
DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF THE COMPLAINT</u>

**I.      STATEMENT OF THE CASE**

       This is an action for declaratory, injunctive, monetary and other appropriate relief brought by plaintiff to redress intentional violations by defendants of rights secured to plaintiff by the laws of the United States and the statutory and common law of the District of Columbia. This action arises under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Sections 2000e et seq., ("Title VII"), the Civil Rights Act of 1866 as amended, 42 U.S.C.§ 1981, ("Section 1981"), 42, U.S.C. § 1983, Title I of the Americans with Disabilities Act, as amended, 42 U.S.C.A §§ 12101 et seq. ("ADA"), and the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §626, et seq., 42 U.S.C. § 1985, and 42 U.S.C. § 1986.

       Mrs. Martin seeks redress against Defendants, the District of Columbia Government (hereinafter "the District"), the Alcoholic Beverage Regulation Administration (hereinafter "ABRA"), Frederick Peter Moosally, III, Charles Brodsky, Johnnie E. Jackson, Jr., Craig Selby Stewart, and Maria Delaney (hereinafter "Individual District Defendants") collectively referred to as "District Defendants". District Defendants discriminated against Mrs. Martin on the basis of gender, age, and disability,

and retaliated against Mrs. Martin for engaging in protected activity, including speech. Furthermore, the District Defendants violated Mrs. Martin's federally protected rights and other rights afforded Plaintiff pursuant to District of Columbia statutes.

## II.   FACTUAL ALLEGATIONS

Plaintiff has been employed by ABRA from February 21, 2007 as an Investigator. Complaint at ¶ 17 Plaintiff's work performance was satisfactory or exceeded expectations. *Id.* at ¶ 19.  On June 8, 2008, Plaintiff was one of two investigators to be promoted to a Grade 12. *Id.* at ¶ 20.

On or around September 22, 2008, Plaintiff applied for a supervisor position. *Id.* at ¶ 18. About a month or so after applying for the supervisor position, Plaintiff learned that Plaintiff was not eligible for the position.  Defendant Jackson and Delaney told Plaintiff that Plaintiff was not eligible because Plaintiff had not been in Plaintiff's current pay grade for ninety (90) days. Subsequently only male candidates were interview for the position, and Gregory D. Price, a less qualified and less experienced investigator than Plaintiff was selected as the new Supervisory Investigator. *Id.* at ¶¶ 21-23.   Additionally, In September 2008, ABRA posted two (2) Supervisory positions on the District of Columbia human resource website.  Plaintiff applied for one of the positions.  However, Plaintiff received no response to the application. *Id.* at ¶ 25.  In November 2009, Plaintiff discovered that Mr. Price had not been in his current pay grade for ninety (90) days before he was promoted to the supervisor position. *Id.* at ¶ 24.

Plaintiff also applied for or requested a number of volunteer opportunities and training for which Plaintiff was qualified, eligible, and suited.  Defendant Jackson periodically inquired, via e-mail, whether any investigators were interested in serving as a relief Supervisory Investigator.  Plaintiff responded to all of these e-mails but was never selected. *Id.* at ¶ 26.

3

Notwithstanding Plaintiff credentials, and being more qualified than the individuals selected for the volunteer opportunities, Mr. Jackson and Defendant ABRA failed to select Plaintiff for the volunteer positions.  *Id.* at ¶ 28.  In September 2008, Plaintiff applied to volunteer in an Inaugural Liaison position and for training, fleet, and special events coordinator positions.  However, District Defendants selected either males or younger employees over Plaintiff.  *Id.* at ¶¶ 29-32. Sometime in November 2008, ABRA setup a presidential Inaugural Committee for which Plaintiff and other investigators were selected.  Plaintiff was subsequently removed from the committee and replaced with Camille Robinson, who was hired one month before Plaintiff was removed from the committee, and had no investigatory powers.  The reason given for Plaintiff's removal was Plaintiff's alleged failure to follow the strict guidelines of the U. S. Secret Service ("USSS").  However, Mrs. Robinson had her background check completed and photos taken after the strict USSS deadline.  *Id.* at ¶¶  46-49.  Plaintiff has also requested training on becoming a manager.  In August and November of 2009 The Plaintiff requested management training and was advised by Defendant Jackson that Plaintiff would never receive training.  *Id.* at ¶¶ 33-36. Additionally, Sometime in July 2009, Plaintiff was denied pay for approved overtime work that Plaintiff performed.  *Id.* at ¶ 38.

In the spring of 2008 Plaintiff, regain custody of her minor child from an abusive family situation.  As a result, Plaintiff informed ABRA of the changes in her family situation and requested that the Defendant ABRA, among other things, allow Plaintiff to alter Plaintiff's shift to make the transition for the minor child and Plaintiff easier.  Defendant ABRA did not respond to Plaintiff's request.  However, upon information and belief ABRA permitted Defendant Stewart to alter his schedule to coach his son's football team.  *Id.* at ¶ 62.

Defendant Jackson also used Plaintiff family circumstance as the basis to denied Plaintiff's request to volunteer for an acting supervisor opening and Plaintiff's application for a supervisory investigator position.  During meetings about the positions, Defendant Jackson questioned Plaintiff about the case involving the custody of her son and her family circumstances, after which Plaintiff's request or application was denied.  *Id.* at ¶¶ 62-65.

On or about November 20, 2009, Plaintiff filed a Complaint of Discrimination with ABRA's Internal EEO Officer, Laverne Fletcher.  *Id.* at ¶ 73.  Upon receiving the right to proceed to OHR, Plaintiff filed an official Complaint in December of 2009.  *Id.* at ¶ 77.  After Plaintiff filed her charge of discrimination with the OHR and the EEOC, Defendant ABRA and its agents, specifically, Defendant Jackson and Stewart started retaliating against Plaintiff, including by:

    a.  Removing most of Plaintiff job responsibilities and powers
    b.  No longer permitted Plaintiff to investigate matters within her jurisdiction,
    c.  Interfered and interrupted Plaintiff's work;
    d.  Informed new investigators not to deal with Plaintiff under any circumstances.
    e.  Reduced Plaintiff's caseload;
    f.  Limited the type of cases, Plaintiff received;
    g.  Unfairly and unduly criticized Plaintiff's work product;
    h.  Made negative and untruthful remarks in Plaintiff's performance reviews;
    i.  Berated Plaintiff in front of other employees;
    j.  Denied Plaintiff overtime work and pay;
    k.  Denied Plaintiff employment benefits and opportunities; and,
    l.  Made up performance complaints against the Plaintiff.
    m.  Denied work opportunities that other investigators were afforded.

*Id.* at ¶¶ 78, 88.

On May 25, 2010, Plaintiff and a co-worker were involved in a two-car collision.  Acting Supervisor Vincent Parker notified Mr. Jackson and Mr. Stewart about the accident.  Because of discriminatory animus, Mr. Parker relayed erroneous information to Defendant Jackson and Defendant Stewart, including that three investigators were riding in the same automobile.  *Id.* at ¶

80.  Defendant Stewart telephonically contacted Plaintiff while she was still on the scene of the accident and began yelling and badgering the Plaintiff.  *Id.* at ¶ 81.  Plaintiff notified Defendant Moosally, about Defendant Stewart's conduct.  *Id.* at ¶ 82.  On May 26, 2010, Defendant Stewart called Plaintiff – and other co-workers – to an impromptu meeting where Defendant Stewart berated the Plaintiff in front of her co-workers about the May 25, 2010 accident.  Again, Plaintiff notified Defendant Moosally about Mr. Stewart's hostile conduct.  *Id.* at ¶ 86.

On July 19, 2010, the Plaintiff filed a retaliation complaint with the OHR against the ABRA, citing incidents that involved Defendant Stewart" and Defendant Jackson's actions against Plaintiff.  *Id.* at ¶ 89.  On July 20, 2010, Defendant Stewart communicated with DC Metropolitian Police Department ("MPD") Detective David Carter, after which Detective Carter allegedly filed a complaint with Defendant Stewart against the Plaintiff.  *Id.* at ¶ 90.  Plaintiff was not notified of the alleged complaint filed by Detective Carter until August 19, 2010.  On the morning of August 19, 2010, Defendant Stewart asked Plaintiff to come to his office, at which time he stated that two (2) complaints were filed against Plaintiff.  *Id.* at ¶ 91.

Defendant Stewart alleged that MPD Detective David Carter filed the first complaint and an unidentified employee from the establishment of Roses Lounge filed the second complaint.  *Id.* at ¶ 92.  Defendant Stewart stated that he wanted to discuss the complaints before the end of the day and notified the Plaintiff of her right to contact a Union Representative.  *Id.* at ¶ 93.  According to Defendant Stewart, Detective Carter stated that on June 24, 2010, while working Sale to Minor (STM) with Plaintiff, Detective Carter found Plaintiff's conduct to be unprofessional.  Defendant Stewart stated that Detective Carter filed his complaint on July 20, 2010.  *Id.* at ¶ 95.  Defendant Stewart stated that he would recommend disciplinary action against Plaintiff but was unsure what the punishment would be.  *Id.* at ¶ 104.  Subsequent investigation

by Plaintiff and Steven Allen indicate that Detective Carter denied filing a complaint against Plaintiff. *Id.* at ¶ 105. Detective Carter stated that he was approached by Defendant Stewart and asked to write a statement about Plaintiff regarding what happened on June 24, 2010, Sale to Minor (STM) program. *Id.* at ¶ 106.

In the summer of 2009, during a monthly meeting Defendant Jackson requested volunteers for the role of Field Training Investigators, (FTI) in anticipation of the hiring of five (5) new investigators. The Plaintiff promptly volunteered. *Id.* at ¶ 107. In a November 2009 monthly meeting, Plaintiff found out that the FTIs were selected and Plaintiff was not one of them. *Id.* at ¶ 108. Although Plaintiff was not selected as a FTI, after Defendant Jackson and Defendant Stewart became aware of Plaintiff's EEO Complaint, Defendant Stewart retaliate by unfairly increasing Plaintiff's work load by assigning Plaintiff to train the new investigators on about 72 separate occasions, in addition to requiring Plaintiff to perform regular duties as an investigator. *Id.* at ¶ 110.

In November 2008, Plaintiff was diagnosed with work related Carpel Tunnel. The injury was timely reported to the Defendant ABRA who accepted the injury as a worker's compensation work related injury. *Id.* at ¶ 112. Subsequent diagnoses indicate that Plaintiff suffered permanent injury or damage, and upon return to work Plaintiff was placed on work restriction or light duty limiting her typing activities. *Id.* at ¶ 119. Plaintiff is required to type in the course of her employment, because she is responsible for her work product such as Investigative Reports, Protest Reports, and Citations Reports. Plaintiff's requested a reasonable accommodation that Defendant ABRA buys voice recognition software so that Plaintiff could speak and the computer would type. The software accommodation would not have placed a financial burden on Defendant ABRA and in fact was less than $200.00 at the time. *Id.* at ¶ 121.

DC and ABRA are able to provide accommodation without a financial hardship being suffered by the Employer; however, DC and ABRA have refused to provide a reasonable accommodation and instead require the Plaintiff to work in a full unrestricted duty status.  *Id.* at ¶ 122.

Sometime after Plaintiff started her employment, Plaintiff volunteered to provide information and testified before the D.C Office of Inspector General (OIG), regarding unlawful and/or unethical activities of ABRA and its employees, including with respect to, corruption, fraud, waste, and abuse, employees consuming alcoholic beverages on the job, inside influence, cronyism, abuse of authority and discriminatory treatment of licensees.  *Id* at ¶ 189.

Plaintiff believed that her statements, *inter alia*, to the OIG, demonstrated and/or were examples of "gross mismanagement" or gross misuse or waste of public resources and funds, or abuse of authority in connection with the administration of justice.  Plaintiff also believed that the misuse or abuse was in connection with the administration of a public program or the execution of a public contract and/or in violation of federal, state, or local law, rule, or regulation.  *Id* at ¶ 190.  As a result of plaintiff's participation in the OIG's investigation, the District Defendants took "prohibited personnel actions", as defined in the Whistleblower Act, as amended, at § 1-614.52(a) (5), and otherwise retaliated against Plaintiff because of her protected activity.  These actions included recommended, threatened and actual, disciplinary action, reprimand, negative decisions, involuntary transfers, denial of promotion, and denial of training, reassignment, ostracizing, and retaliation against the Plaintiff.  *Id* at ¶ 191.

From December 2006 to the present, Defendant Jackson hired 15 Males and 9 Females. This constitutes 62.5% males and 37.5% females.  *Id.* at ¶ 69.  Currently the Enforcement Division has 17 investigators of which 64.70% are male and 35.30% are female.  *Id.* at ¶ 70.  In

September 2009, Defendant ABRA posted four (4) Investigator positions for which Defendant Jackson hired 4 males.  *Id.* at ¶ 71.

## III.    STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b) (6), the plaintiff must "plead [] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007)).  It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Smith-Thompson*, 2009 WL 30696666 at *3 (citing *Swierkiewitz v. Sorema N.A*., 534 U.S. 506, 511-14, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)); <u>Williams-Jones</u>, 2009 WL 2972504 at *3 (citing *Swierkiewitz*., 534 U.S. at 511-14, 122 S.Ct. at 992, 152 L.Ed.2d at 1); Dave, 606 F.Supp.2d at 449 (citing *Swierkiewitz*., 534 U.S. at 511-14, 122 S.Ct. at 992, 152 L.Ed.2d at 1), or "plead law or match facts to every element of a legal theory." *Smith-Thompson*, 2009 WL 30696666 at *3 (citing *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000)); Williams-Jones, 2009 WL 2972504 at *3 (citing Krieger, 211 F.3d at 136); Dave, 606 F.Supp.2d at 49 (citing Krieger, 211 F.3d at 136).

When considering a motion to dismiss, the Court should accept the complaint's factual allegations, including mixed questions of law and fact, as true; and must draw all reasonable inferences in Mrs. Martin's favor.  See *Smith-Thompson*, 2009 WL 30696666 at *3 (citing *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.D. Cir. 2003); *Holy Land Found.  For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.D.C. 2003); Browning, 202 F.3d at 242); Dave, 606 F.Supp.2d at 49 (citing <u>Macharia</u>, 334 F.3d at 64, 67; <u>Holy Land Found.  For Relief & Dev</u>., 333 F.3d at 165; <u>Browning</u>, 202 F.3d at 242) Further, the complaint must allege "any set of facts consistent with the allegations." Smith-Thompson, 2009 WL 30696666 at *3 (citing *Bell Atl.*

*Corp. v. Twombly,* 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.  2d 929 (2007)); Williams-Jones, 2009 WL 2972504 at *3 (citing <u>Twombly</u>, 550 U.S. at 563, 127 U.S. at 1955, 167 L.Ed.2d at 929); Dave, 606 F.Supp.2d at 49 (citing Twombly, 550 U.S. at 563, 127 U.S. at 1955, 167 L.Ed.2d at 929).   These allegations must be "sufficiently detailed." Musgrove *v. District of Columbia,* 602 F.Supp.2d 141, 144 (D.D.C. 2009) (citing <u>Twombly</u>, 550 U.S. at 555, 127 U.S. at 1955, 167 L.Ed.2d at 929).   The allegations must "raise a right to relief above the speculative level." Id.   In evaluating a Rule 12(b)(6) motion, the court must accept as true all the factual allegations contained in the complaint and grant the plaintiff the benefit of all inferences that can be derived from the facts alleged.   Musgrove, 602 F.Supp.2d at 144 (citing <u>Eleson v. United States</u>, 518 F.Supp.2d 279, 282 (D.D.C. 2007)).

Defendants' attempts to extend the holding in <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct.1937 (2009) to this case, but <u>Iqbal</u> has nothing to do with Title VII.   <u>Iqbal</u> did not concern Title VII – <u>Iqbal</u> involved a suit by a Muslim Pakistani pretrial detainee who alleged Attorney General Ashcroft and FBI Director Mueller personally, "willfully and maliciously agreed" to enter a conspiracy against him.   129 S. Ct. at 1941.   The key finding in <u>Iqbal</u> was that the detainee's allegations were not plausible.

However, "when 'matters outside the pleadings are presented to and not excluded by the court' on a motion to dismiss under Rule 12(b) (6), 'the motion must be treated as one for summary judgment [.]'"  <u>Highland Renovation Corp. v. Hanover Ins. Group</u>, 620 F. Supp. 2d 79, 82 (D.D.C. 2009) (quoting Fed.  R. Civ. P. 12(d)).   In particular, "where both parties submit material outside the pleadings and 'the parties are not taken by surprise or deprived of a reasonable opportunity to contest facts averred outside the pleadings and the issues involved are discrete' legal issues, the court may convert the motion to a motion for summary judgment

'without providing notice or the opportunity for discovery to the parties.'" <u>Highland Renovation Corp</u>., 620 F. Supp. 2d at 82 (quoting <u>Tunica-Biloxi Tribe of LA.v. United States</u>, 577 F. Supp. 2d 382, 405 (D.D.C. 2008) and <u>Smith v. United States</u>, 518 F. Supp. 2d 139, 145, 155 (D.D.C.2007)).

Summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that moving party is entitled to judgment as a matter of law. <u>Moore v. Hartman</u>, 571 F.3d 62, 66 (D.C. Cir.2009) (citing Fed.  R. Civ. P. 56 (c) and <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 247 (1986)).  "In considering a motion for summary judgment, [a court is to draw] all 'justifiable inferences' from the evidence ... in favor of the nonmovant." <u>Cruz-Packer v. Dist. of Columbia</u>, 539 F. Supp. 2d 181, 189 (D.D.C. 2008) (quoting Anderson, 477 U.S. at 255); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986). "  The relevant inquiry 'is the threshold inquiry of determining whether there is a need for a trial - - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Single Stick, Inc. v. Johanns</u>, 601 F. Supp. 2d 307, 312 (D.D.C. 2009) (quoting <u>Anderson</u>, 477 U.S. at 250).

A genuine issue is present where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," in contrast to a situation where the evidence is "so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 248, 252.

## IV.     ARGUMENT

## A.     **THE INDIVIDUAL DISTRICT DEFENDANTS** <u>ARE NOT ENTITLED TO QUALIFIED IMMUNITY</u>

Plaintiff's claims against Defendant's Jackson, Stewart, Brodsky, Delaney and Moosally are not barred by qualified immunity.  "Government officials performing discretionary functions

generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  Qualified immunity balances two important interests, the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  That protection is afforded to government officials whether their error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.  All but the plainly incompetent or those who knowingly violate the law may enjoy the protection of qualified immunity.  Because qualified immunity is an immunity from suit rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial.  Accordingly, courts must resolve immunity questions at the earliest possible stage in litigation."  "The United States Supreme Court has set forth a two-step analysis for resolving government officials' qualified immunity claims.  First, the Court decides whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right.  If the plaintiff accomplishes that first task, the Court then decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct.  The sequence of that analysis no longer is mandatory, and now the courts may exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Akers vs. Watts, 740 F. Supp.  2d 83, (D.D.C., 2010)

Applying these legal principles to the facts alleged in the pleadings, the Individual District Defendants actions against Plaintiff violated clearly established statutory or constitutional rights of which a reasonable person would have known.  Plaintiff's complaint set forth facts and allegations averring that Plaintiff suffered adverse employment, including the denial of

supervisory positions, denial of volunteer positions, denial of training opportunities, and other adverse actions affecting the terms, conditions, benefits, and privileges of Plaintiff's employment, because of Plaintiff's gender, age, and disability, and due to retaliation for Plaintiff's protected activity and free speech. The facts allege by the Plaintiff show or make out a violation of a constitutional right and that the constitutional right at issue was clearly established at the time of the individual defendant's misconduct. Individual Defendants' claim of qualified immunity must therefore fail because Plaintiff enjoyed the constitutional right to be free from discrimination due to her gender, age, or disability and retaliation due to her protected activity or free speech.

Furthermore, supervisory liability runs against the individual supervisory officer, and is based on his or her personal responsibility for the constitutional violation or tort rather than the existence of a policy or custom within the department. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Ashcroft *v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The Individual District bears personal responsibility for their acts and decisions, which caused or contributed to a constitutional violation or tort against Plaintiff.

1.    **Plaintiff Pleaded Viable Claims Against the Individual District Defendants under the DCHRA.**

The DC Human Rights Act (DCHRA) provides that individual supervisors can be held liable for their violations of the act. In Re: <u>Purcell v. Thomas</u>, 928 A.2d 699 (DC, 2007) the court opined that:

> "As we have seen, the DCHRA makes it an unlawful discriminatory practice for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, ... or otherwise adversely affect his [or her] status as an employee." D.C. Code § 2-1402.11(a) (1). We had occasion to consider the definition of "employer" under the DCHRA in *Wallace, supra.* D.C. Code § 2-1401.02(10) (2001), formerly codified at D.C. Code § 1-2502(10) (1999), defines "employer" as any person who, for

> compensation, employs an individual, except for the employer's parent, spouse, children or domestic servants, engaged in work in and about the employer's household; any person acting in the interest of such employer, directly or indirectly; and any professional association."

The court went on to say:

> "any person acting in the interest of such employer, directly or indirectly," and observed that there is no comparable provision in Title VII. *Id.* Nor does Title VII include an aiding and abetting provision as does the DCHRA: "It shall be an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the provisions of this chapter [Chapter 14, Human Rights] or to attempt to do so." D.C. Code § 2-1402.62 (2001), formerly codified at D.C. Code § 1-2526 (1999)." [928 A.2d 715]

The Individual District Defendants are persons acting in the interest of ABRA, and aided, abetted, invited, compelled or coerced the doing of action forbidden under the provision of D.C. Code § 2-1402.62 (2001). Plaintiff has therefore stated viable legal claims against the Individual District Defendants as to her DCHRA Claims.

2. **The Individual District Defendants are not entitled to Immunity on Plaintiff's Whistleblower Claims**

It is established precedent in this circuit that the DC Whistleblower Protection Act ("WPA") provides for individual liability. The Defendants' contentions in this regard are frivolous and without merit. The 2009 amendments confirm there is individual liability under the DC WPA. *See* Whistleblower Protection Amendment Act of 2009, § 2(c), D.C. Code § 1-615.54(a)(1) (2010) ("An employee aggrieved by a violation of § 1-615.53 may bring a civil action against the District, and, in his or her personal capacity, any District employee, supervisors, or official having personal involvement in the prohibited personnel action . . . ."). Because the Plaintiff engaged in protected disclosure and because Plaintiff has pleaded sufficiently her WPA claim, the Defendant's does not enjoy immunity.

a**.  Claims against Fred Moosally and Charles Brodsky**

The basis for liability is inadequate supervision.  When they failed properly to carry out that responsibility, they became liable on an inadequate supervision theory.  See <u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1261 (D.C. Cir. 1987) ("When inaction in the face of a substantial threat of harm is shown, it can be said that the supervisor acquiesced in the resulting constitutional violation, thereby 'linking' the non-feasance with the injury in the manner required by Rizzo.").

Defendant's Moosally[1] and Brodsky[2] had a duty to supervise personnel within The Alcoholic Beverage Regulation Administration (ABRA).  It is alleged in Plaintiff's Complaint, that she contacted Defendant's Moosally and Brodsky on numerous occasions to inform them of the discriminatory treatment by Defendant's Stewart and Jackson.  Notwithstanding, instead of intervening to ensure that the discrimination ceased, Defendant's Moosally and Brodsky acquiesced the behavior by their inaction, causing Plaintiff additional harm.  Had the Defendant Moosally and Brodsky intervened, Plaintiff constitutional rights would not have been violated.  This Court has stated that such a duty is "triggered by proof that, absent effective supervision, harm was not merely foreseeable, but was highly likely, given the circumstances of the case."  Robinson <u>*v. District of Columbia*</u>, 403 F. Supp. 2d 39, 50 (D.D.C. 2005) (citing Haynesworth, 820 F.2d at 1261).  Defendants failed to train, supervise, and/or discipline Defendant's Jackson and Stewart, which led to a deprivation of constitutional rights.

The Complaint establishes that Moosally and Brodsky breached their duty through gross negligence or deliberate indifference to the precautions necessary to protect Plaintiffs' First Amendment rights.

---

[1] DC Official Code § 25-207(b)
[2] DC Official Code § 25-204.

To construct a basis for liability, "the injured party must establish that the supervising official was either 'grossly negligent' or 'deliberately indifferent' in failing to take precautions against the constitutional violation that did in fact occur." Haynesworth, 820 F.2d at 1260-61. Plaintiff have clearly pled sufficient facts to establish that Moosally and Brodsky was grossly negligent or deliberately indifferent in failing to take precautions to avoid violating Plaintiffs' First Amendment rights.  See Compl.  ¶¶ 82-83, 169-174, 176,178-179 and 185-186.

Brodsky's and Moosally actions or inactions set forth above were intentional or reckless. Defendant's breach was the proximate cause of the constitutional injury that occurred to Plaintiff.  District Defendants should have known that negligently sanctioning the conduct of their subordinates would lead to harm to Plaintiff.  Brodsky and Moosally do not enjoy the benefits of qualified immunity.

### b.  Claims against Stewart and Jackson

Plaintiffs' well-pled factual allegations adequately state violations of constitutional claims against Defendant's Jackson and Stewart because Defendant's actions or inactions can properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense.

Defendant Stewart certainly acted in an arbitrary, or conscience-shocking, way because he used his power as an instrument of oppression– this is precisely the type of abuse that the Due Process Clause aims to protect against.  *Id.* at ¶¶ 37, 78, 80-106, 110.

Therefore, Plaintiff well-pleaded factual allegations adequately state a Section 1983 claim against Defendant's Stewart and Jackson Defendant's actions or inactions can properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense.

c.      **Liability as to Maria Delaney**

Defendant Delaney does not enjoy qualified immunity because accepting as true all the factual allegations contained in the complaint and granting the plaintiff the benefit of all inferences that can be derived from the facts alleged Defendant Delaney's conduct amounts to violations of Plaintiff's constitutional rights.

**B.**     COUNTS ONE, TWO, THREE, FOUR, EIGHT AND THIRTEEN ARE
NOT BARRED BY THE ELECTION OF REMEDIES DOCTRINE

Defendants' claims that Mrs. Martin's DCHRA claim are barred because she chose an administrative remedy is based upon Defendant's truncated, selective citation of DC statutory law and case authority, as well as upon Defendant's reliance upon case authority that is contrary to the holdings of this Court.

Plaintiff has filed three (3) Complaints with DC Office of Human Rights "DCOHR".  *Id.* at ¶ 73, 77, 89,      The first case 10C-2010-00130 was filed on or around February 2010[3]. On August 19, 2010, DCOHR made a finding of "No Probable Cause".   Plaintiff sought reconsideration of the No Probable Cause finding on September 8, 2010.  On January 10, 2011[4], DCOHR denied the request and dismissed the case administratively.  The defendants' argument that Plaintiff attempted to withdraw her complaint after a decision had already been rendered is frivolous and without merit.  The Defendant's own Exhibit's properly identifies on the face of the document the case number applicable to the DCOHR's decision.  It is clear and convincing that the No Probable Cause finding pertained to 10C-2010-00130 and not any subsequent case.

On or around July 2010, Plaintiff filed a subsequent complaint for retaliation with DCOHR and was assigned case number 10C-2010-00305.  On January 10, 2011, Plaintiff withdrew her retaliation complaint with DCOHR prior to them making a decision, which she has

---

[3] See Plaintiff Complaint Exhibit A and Defendant's Motion to Dismiss Exhibit's A and B.
[4] Defendant's Exhibit B

the right to do pursuant to D.C. Code § 1-2556(a) (1992) (recodified as D.C. Code § 2-1403.16(a) (2001)), which states in part that:

> "Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate, unless such person has filed a complaint hereunder; Provided, that where the Office [of Human Rights] has dismissed such complaint on the grounds of administrative convenience, or [w]here the complainant has withdrawn a complaint, such person shall maintain all rights to bring suit as if no complaint had been filed."

A plaintiff, however, may commence an action in court, notwithstanding his or her prior filing of a complaint with the DCOHR, if either: (1) the plaintiff withdraws the DCOHR complaint before the DCOHR renders a judgment on it; or (2) the DCOHR dismisses the complaint for "administrative convenience.(citing D.C. CODE § 2-1403.16(a)).

In order to successfully withdraw a complaint before the DCOHR, and thus, preserve the right to bring the same claim in court, a complainant must request withdrawal "prior to the completion of the [DCOHR's] investigation and findings." D.C. CODE § 2-1403.04.  More specifically, a plaintiff is required to withdraw his request prior to the DCOHR's determination of that probable cause exists *Brown,* 425 A.2d at 1312.

Plaintiff's third complaint was filed on around December 2010, pursuant to D.C. Code § 2-1402.11 (Disability Discrimination).   Plaintiff subsequently withdrew her complaint on January 20, 2011[5].   In this case, the statue requires that within thirty (30) days of filing a Complaint in regards to Disability Discrimination that the Plaintiff provides notice to DCOHR that she intend to sue.

In Re: <u>*Payne v. Salazar*</u> (Secretary, Dept. of the Interior), No. 09-5291 (D.C. Cir. Sept. 7, 2010), the Court of Appeals opined in part that:

> "In sum, an employee's right to trial de novo -- whether her employer is the federal government or a private company -- means

---

[5] Defendant's Motion to Dismiss Exhibit C

18

that she is entitled to a plenary trial of whatever claims she brings
to court."

The election of remedies doctrine therefore does not bar Plaintiff's claims based on those DCOHR charges that plaintiff withdrew "prior to the completion of the DCOHR's investigation and findings" and before any probable cause determination.

**C.**   PLAINTIFF HAS STATED A CAUSE OF ACTION FOR NEGLIGENCE

The Defendant alleges that the Plaintiff's Negligent Supervision claim should be dismissed because the Plaintiff has failed to Establish Facts of An Antecedent Act of Negligence. (District Defendants' Motion for Partial Dismissal, p.13)   The Defendant arguments amount to purposeful hyperbole.

In a traditional negligence action, a plaintiff must prove the existence of a duty of care owed by the defendant to him (or to a class of which he is a member), a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach. E.g., _District of Columbia v. Harris_, 770 A.2d 82, 87 (D.C.2001).   The cause of action for negligent supervision, derived from this standard negligence tort, recognizes that an employer owes specific duties to third persons based on the conduct of its employees.

One dealing with the public is bound to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee.   When an employer neglects this duty and as a result, injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment.   _Fleming v. Bronfin_, 80 A.2d 915, 917 (D.C. 1951) (collecting cases from six states); accord, Phelan v. City of Mount Rainier, 805 A.2d 930, 940 (D.C.2002); _Morgan v. Psychiatric Institute of Washington_, 692 576*576 A.2d 417, 423 (D.C.1997); Giles v. Shell Oil Corp., 487 A.2d 610, 613 (D.C.1985); _Murphy v. Army_

*Distaff Foundatio*n, 458 A.2d 61, 63 (D.C.1983).  See generally RESTATEMENT (SECOND) OF TORTS § 317 (1965); RESTATEMENT (SECOND) OF AGENCY § 213 (1958).  See also Daka, 839 A.2d at 693 (suggesting that an independent tortious act of an employee is likely necessary for employer liability under a negligent supervision theory).

To invoke this theory of liability it is incumbent upon a party to show that an employer knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee.  *Giles v. Shell Oil Corp.,* 487 A.2d 610, 613 (D.C.1985).  In addition, in *Brown v. Argenbright Sec. Inc.*, 782 A.2d 752 (D.C.2001), this court quoted the definition of [994 A.2d 795] Negligent supervision in the Restatement of Agency, as follows:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
> (a) in giving improper or ambiguous orders o[r] in failing to make proper regulations; or
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
> (c) in the supervision of the activity; or
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958).  *Id.* at 760 n.

Viewing the facts and information in the complaint in the light most favorable to Plaintiff, it cannot be stated that Plaintiff has not stated sufficient facts to allege a cognizable claim for Negligent Hiring and Supervision.  The Individual District Defendants' actions, in particular, Mr. Stewart and Mr. Jackson are clearly tortious in nature and effect.  These tortious actions including placing Plaintiff in a false light, negligence, civil conspiracy, and other tortious conduct.  Accordingly, Defendant's Motion should be denied.

**D.**     PLAINTIFF STATES A CAUSE OF ACTION FOR WHISTLE BLOWER
            RETALIATION

The Defendants' alleges that the Plaintiff has failed to allege specific violations of the

District of Columbia Whistleblower Protection Act, "WPA" as amended.  Defendants' allege

that the claim fails because: (1) The Plaintiff failed to State when the alleged protection occurred

and somehow the claim as pleaded   runs afoul of Federal Rule Procedure 8 (2).  The Allegations

raised by Plaintiff regarding violations of the WPA before December 2009 are covered by the

former language in WPA (3) That Individual Supervisors or Employees are not liable under

WPA (4) That the WPA claim is limited to a one year statute of limitation (5)   WPA claims

require strict compliance with DC Code 12-309 and (6) Plaintiff failed to allege that she made

protected disclosures.  (District Defendants' Motion for Partial Dismissal, p.14)

The purpose of a motion to dismiss is not to test whether plaintiff will prevail on the

merits of her case, but instead whether the plaintiff has properly stated a claim.  _Glymph v._

_District of Columbia_, 180 F.Supp.2d 111, 113 (D.D.C. 2001).  Thus, "[f]or a complaint to

survive a Rule 12(b) (6) motion to dismiss, it need only provide a short and plain statement of

the claim and the grounds on which it rests." 180 F.Supp.2d at 113, citing Rule 8(a) (2), Fed.  R.

Civ. P.; see also _Conley v. Gibson_, 355 U.S. 41, 47 (1957).  In evaluating the sufficiency of the

complaint, the court must accept all the complaint's well-pled factual allegations as true and draw

all reasonable inferences in the plaintiff's favor.  _Scheuer v. Rhodes_, 416 U.S. 232, 236 (1974) --

overturned on other grounds by _Harlow v. Fitzgerald_, 457 U.S. 800 (1982).  Moreover, with

respect to a claim of discrimination, as previously noted, the D.C. Circuit has held directly that a

plaintiff is not required to set forth the elements of a prima facie case at the initial pleading stage.

Sparrow v. United Air Lines, Inc., 216 F.3d at 1114.

Here, the complaint more than passes muster.  Plaintiff's complaint sets forth that Plaintiff "volunteered to provide information and testified before the D.C Office of Inspector General (OIG), regarding unlawful and/or unethical activities of ABRA and its employees, including with respect to, corruption, fraud, waste and abuse, employees consuming alcoholic beverages on the job, inside influence, cronyism, abuse of authority and discriminatory treatment of licensees."  *Id* at ¶ 189.  District Defendants provides no legal support for their arguments that the absence of specific dates in Plaintiff's complaint as to when Plaintiff made disclosures pursuant to the WPA is detrimental to the claim at the pleading stage.

### 1. The WPA provides individual liability.

It is in established precedent in this circuit that the WPA provides individual liability. The Defendant's allegations in this regard and frivolous and without merit.   The 2009 amendments confirm there is individual liability under the DC WPA.  *See* Whistleblower Protection Amendment Act of 2009, § 2(c), D.C. Code § 1-615.54(a)(1) (2010) ("An employee aggrieved by a violation of § 1-615.53 may bring a civil action against the District, and, in his or her personal capacity, any District employee, supervisors, or official having personal involvement in the prohibited personnel action . . . .").

Moreover, this very fact was addressed in In re Winder v. Erste, Civil Action No. 03-2623, Memorandum Opinion and Order at 3-5 (D.D.C. Mar. 7, 2011);

Judge Bates opined that:

> "Although the parties do not discuss the private right of action issue in their briefs, the Court recognizes that the 2009 Amendment also expressly provides for a right of action against supervisors and other District personnel.  See 2009 D.C. ALS 265 (amending D.C. Official Code Section l-615.54(a) to read "an employee aggrieved by a violation of section 1553 may bring a civil action against the District, and, in his or her personal capacity, any District employee, supervisor, or official having personal

involvement in the prohibited personnel action, before a court or a jury in the Superior Court of the District of Columbia seeking relief and damages. ")."

## 2. Plaintiff claims were filed in the 3 Year Statute of Limitations applicable to WPA  Claims

The amendments to the WPA also extended the prior one-year statute of limitations for DCWPA claims, allowing the filing of such claims up to three years after a violation occurs or up to one year after the employee becomes aware of the violation, whichever occurs first.  See D.C. Code § 1-615.54(a) (2).

### 3. The Notice Requirements of D.C. Code § 12-309 Are inapplicable to WPA Claims.

This court has already opined that persuasive authority suggests that D.C. Code § 12-309 is inapplicable to WPA claims.  See <u>Winder v. Erste</u>, Civil Action No. 03-2623, Memorandum Opinion and Order at 3-5 (D.D.C. Mar. 7, 2011); <u>Davis v. District of Columbia</u>, Civil Action No. 2005-8772, Memorandum Opinion at 4-7 (D.C. Super.  Ct. Nov. 23, 2010); (<u>Davis v. District of Columbia</u>, Civil Action No. 2005 8772, Transcript of Hearing and Oral Ruling (D.C. Super.  Ct. Oct. 29, 2009)), at 7-11; (<u>Cusick v. District of Columbia</u>, Civil Action No. 2008-6915, Transcript of Hearing and Oral Ruling (D.C. Super.  Ct. Aug. 17, 2010)), at 36.

In <u>Davis</u>, Judge Eldeman, opined that:

> "The 2009 amendments made D.C. Code §12-309 — the statute requiring written notice to the District of Columbia six months prior to the filing of any action for unliquidated damages — inapplicable to DCWPA lawsuits.  See D.C. Code § 1-615.54(a) (3)."

In <u>Winder,</u> Judge Bates opined that:

> "Defendants correctly note that "the presumption against retroactive legislation is deeply
> rooted in our jurisprudence." See <u>Landgrafv.  USI Film Prods.</u>, 511 U.S. 244, 265 (1994)  However, the presumption against statutory retroactivity is not absolute, as courts also invoke the

principle that the "court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley v. School Bd. of Richmond, 416 U.S. 696, 711 (1974). " Thus, there is the presumption that legislation that affects substantive rights will operate only prospectively." Lacek v. Wash. Hosp. Ctr. Corp., 978 A.2d 1194, 1197 (D.C. 2009) (citing Landgraf, 511 U.S. at 265). Moreover, "laws which provide for changes in procedure may properly be applied to conduct which predated their enactment." Id. (citing Duvall v. United States, 676 A.2d 448, 450 (D.C. 1996)). This distinction is appropriate because while substantive laws create or impair substantive rights, procedural laws generally are "related to the modes of procedure or confirm or

clarify existing rights." Edwards v. Lateef, 558 A.2d 1144, 1146-47 (D.C. 1989). Ultimately, "a statute does not operate retrospectively merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70 (internal quotations and citations omitted)

The District of Columbia Whistleblower's Protection Act prohibits, in relevant part, a supervisor from threatening to take or taking a prohibited personnel action or otherwise retaliating against an employee because of the employee's ―protected disclosure.

D.C. Code. Sec. 1-615.53. A ―protected disclosure is statutorily defined as:

[A]ny disclosure of information, not specifically prohibited by statute, by an employee to a supervisor or a public body that the employee reasonably believes evidences:
(A) Gross mismanagement;
(B) Gross misuse of waste of public resources or funds;
(C) Abuse of authority in connection with the administration of a public program or the execution of a public contract;
(D) A violation of a federal, state, of local law, rule, or regulation, or of a term of a contract between the District government and a District government contractor which not of a merely technical or minimal nature; or
(E) A substantial and specific danger to the public health and safety. D.C. Code § 1-615.52 (6). Id. Sec. 1-615.52(a)(6).

The District of Columbia Court of Appeals recently held that ―[a] `protected disclosure` under the DC WPA is one that the employee `reasonably believes` evidences one or more of the circumstances delineated in D.C. Code Sec. 1-615.52(6)(A)-(E) 2001‖ Wilburn v. District of Columbia, 957 A.2d 921, 925 (D.C. 2008).

Plaitiff's testimony before the D.C Office of Inspector General (OIG), regarding unlawful and/or unethical activities of ABRA and its employees, including with respect to, corruption, fraud, waste and abuse, employees consuming alcoholic beverages on the job, inside influence, cronyism, abuse of authority and discriminatory treatment of licensees, is sufficient to plead Plaintiff's WPA claim.  *Id* at ¶ 189

### E.   PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SUPPORT HER FIRST AMENDMENT SPEECH   AND PETITION VIOLATIONS.

The case law is clear that when a public employee makes comments to her supervisors on subjects directly related to his job, that speech is made pursuant to official duties and is not subject to First Amendment protection.  See *Thompson v. District of Columbia*, 530 F.3d 914, 917 (D.C. Cir. 2008) ("When employees make recommendations to supervisors on subjects directly related to their jobs, they are speaking as employees even if the supervisors discourage this speech.").

In order to prevail on a First Amendment retaliation claim, a public employee must demonstrate that his protected speech "was a substantial or motivating factor in prompting the retaliatory or punitive act of which []he complains."  O'Donnell v. Barry, 148 F.3d at 1133(citing *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that the Defendants' retaliated against her in violation of the WPA and her First Amendment Rights.  To prevail on a section 1983 claim, alleging retaliation in violation of her First Amendment rights, Plaintiff must show that her speech was ―a substantial or

motivating factor in prompting the retaliatory or punitive act.  *Wilburn v. Robinson*, 480 F.3d 1140, 1149 (D.C. Cir. 2007) (quotations omitted).

Similarly, to succeed on her WPA claim, Plaintiff is required to demonstrate as part of her prima facie case that the protected disclosure was a —contributing factor to the allegedly retaliatory actions and a jury must ultimately find that —a direct causal link in order for there to be liability--- i.e. that Defendants would not have taken the allegedly retaliatory actions —but for her protected disclosures.  *Johnson v. District of Columbia*, 935 A.2d 1113, 1119 (D.C. 2007) (internal quotation marks omitted).

For the above stated reasons, Plaintiff has established a WPA retaliation claim.

First, Plaintiff's primary duties and responsibilities includes those assigned to a Grade 12, Step 3 investigator of the Compliance Division, including inspecting licensees  in the District of Columbia, serving subpoenas, conducting covert investigations with other government agencies, and testifying before governmental agencies, including the ABC Board, and the Federal Bureau of Investigations (FBI).  See Comp. at ¶ 2.

The Defendant argues that "It is her job to make misconduct reports".  The Defendant's assertion lacks any modicum of creditability and assumes facts not in the records.  Plaintiff's job duties are governed by § 25-211 of the DC Official Code.   Plaintiff's job duties entail investigations of liquor licensee's, not reporting misconduct as the Defendants' suggest.

Plaintiff's complaint identifies what the protected speech was and with whom she spoke. *Id. at* ¶ 189.  Plaintiff complained that she was retaliated against because she exercised her rights to file an EEOC and DCHR Complaint.  Plaintiff asserts that these complaints were protected disclosure and not made pursuant to her official duties.  *See* Tao v. Freeh, 307 U.S. App. D.C. 185, 27 F.3d 635 (1994), 27 F.3d at 637- 39 (employee's complaint about discrimination was not

made pursuant to official duties because his job as language translator did not include exposing racial discrimination in the workplace);*Wilburn v. Robinson*, 480 F.3d 1140 (D.C. Cir. 2007).

Plaintiff made protected disclosures when, among other occasions, she testified before the D.C Office of Inspector General (OIG)[6], regarding unlawful and/or unethical activities of ABRA and its employees, including with respect to, "corruption, fraud, waste and abuse, employees consuming alcoholic beverages on the job, inside influence, cronyism, abuse of authority and discriminatory treatment of licensees". *Id at* ¶ 189.

District Defendant cite to *Garcetti v. Ceballoz*, 547 U.S. 410, 421 (2006); *Wilburn v. Robinson*, 480 F.3d 1140 (D.C. Cir. 2007) (holding that former Director of Office of Human Rights did not have a First Amendment claim for complaint of racism and sexism to Department of Personnel); *Thompson v. District of Columbia*, 530 F.3d 913 (DC. Cir. 2008) (auditory and security officer at DC Lottery Board did not have a First Amendment claim for complaints to officials and supervisors concerning corruption) and *Williams v. District of Columbia*, 537 F.2d 141 (D.D.C. 2008) (finding that plaintiff did not speak as a citizen when she testified before the City Council because her job duties and responsibilities as the Chief with the Department of Health required her to provide findings to senior personnel in District government and attend hearings).

Unlike the plaintiffs in the cases cited by the Defendants, the instant Plaintiff spoke as a citizen for First Amendment purposes.  The plaintiffs in the cases cited by the Defendants spoke about areas specifically within their job responsibilities.  Plaintiff's job as an ABRA Investigator

---

[6] The OIG is an executive branch agency of the District of Columbia government that conducts audits, inspections, and investigations of government programs and operations.  The OIG's mission is to promote economy, efficiency, and effectiveness, and to detect and deter fraud, waste, and mismanagement throughout the government.  In carrying out its duties and responsibilities, the OIG refers all evidence of criminal violations that it uncovers to the US Department of Justice.

was to inspect liquor establishments, and among other things, ― insure that the licensee's were adhering to the rules and regulations governing their liquor license.

Plaintiff complaint to the DC (OIG), was to point out ABRA's refusal to enforce regulations evenly and fairly amongst the licensees, the failure to prevent employees from consuming alcoholic beverages on duty, the failure to stop employees from abusing their positions by engaging in conflicts of interest, cronyism, inside influence with licensees, failure to prevent employees from stealing or abusing governmental resources- among other things.  As is evident, Plaintiff spoke as a citizen and said speech was protected by the First Amendment.

Defendant further alleges that all Plaintiff's did was disclose information to the police. This is a mischaracterization of the facts.  Comp ¶197 stated that:

"197.  Plaintiff is a member if a protected class, in that she engaged in first amendment protected free speech and petition clause activity by:

> (a) opposing perceived race discrimination in employment, obeying a subpoena;
> (b) appearing as a witness to offer testimony:
> (c) speaking as a citizen on perceived investigator or ABC Board misconduct;
> (d) reporting to police and cooperating with Police in a criminal matter involving investigator misconduct;
> (e) using the labor grievance process under a Collective Bargaining Agreement to challenge governmental action against her;
> (f) file sex discrimination and retaliations charges with state and federal agencies duly authorized under law to investigate such charges; and,
> (g) file a lawsuit against the District of Columbia and its employees for perceived sex discrimination and retaliation."

The Defendants' misses the point.  Plaintiff also incorporated the preceding paragraphs in support of her First Amendment violation count.  *Id at* ¶ 196.  Plaintiff's complaint demonstrates that Plaintiff made protected disclosures and that the Defendant took various adverse actions against the Plaintiff based on said disclosures.  Her speech included ―protected disclosure[s], as

that term is defined for First Amendment purposes and in D.C. Code § 1-615.52(6).   A reasonable jury could conclude that the Plaintiff made protected disclosures and that she was retaliated against by the Defendant'' and their agents.

### 1. Plaintiff speech was of public concern.

The District of Columbia Court of Appeals recently held that ―[a] `protected disclosure‘ under the DC WPA is one that the employee `reasonably believes‘ evidences one or more of the circumstances delineated in D.C. Code Sec. 1-615.52(6)(A)-(E) 2001.   *Wilburn v. District of Columbia*, 957 A.2d 921, 925 (D.C. 2008).   The ―employee must disclose such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people.‖ Id. (quoting White v. Dep‘t of the Air Force, 391 F.3d 1377, 1382 (Fed.  Cir. 2004)).

To determine whether an individual reasonably believed that such rumors constituted gross misconduct or abuse or were illegal, a court must consider whether ―`a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee [could] reasonably conclude that the actions of the government evidence [illegality, gross abuse, etc.].‘ *Zirkle v. District of Columbia*, 830 A.2d 1250, 1259-60 (D.C. 2003) (quoting *Lachance v. White*, 174 F.3d 1378, 1381 (Fed.  Cir. 1999)).   ―`A purely subjective perspective of an employee is not sufficient even if shared by other employees.‖ Id.  The key inquiry remains whether the plaintiff reasonably believed the conduct disclosed was illegal and/or a gross abuse and not whether the conduct was in fact ultimately found to be illegal or a gross abuse.  *Id.*

A reasonable jury could find that plaintiff‘s testimony implicated all of these categories above: (A) Gross mismanagement; (B) Gross misuse of waste of public resources or funds; (C) Abuse of authority in connection with the administration of a public program or the execution of

a public contract; and (E) A substantial and specific danger to the public health and safety.  D.C. Code § 1-615.52 (6).

**F.**   **PLAINTIFF HAS STATED SUFFICIENT FACTS TO SUPPORT HER 42 U.S.C. 1983 CLAIM.**

The United States Supreme Court has put to rest the very challenge that the Defendants' bring, which is that the plaintiff's complaint, "failed to provide sufficient factual allegations in her complaint to support the claim of the defendant's liability"

In _Sienkiewicz v. Sorema_, 534 U.S. 506 (2002), the Supreme Court examined the required sufficiency pleading standard under the federal rules of civil procedure when pleading a Title VII claim.  The Court said that:

> When a federal court reviews the sufficiency of a complaint, before the reception of any   evidence   by   either   affidavit   or admissions, its task is necessarily a limited one.  The issue  is   not whether a plaintiff will ultimately prevail but whether the claimant is entitled to   offer  evidence  to  support  the  claims.   (Citing Scheuer v. Rhodes, 416 U.S. 232, 236, 94             S.Ct. 1683, 40 L.Ed.2d 90 (1974)).
>
> In  addition,  under  a  notice  pleading  system,  it  is  not appropriate to require a plaintiff to   plead  facts  establishing  a prima facie case. . . .  (citing _Trans World Airlines, Inc. v. Thurston,_  469  U.S.  111,  121,105  S.Ct.  613,  83  L.Ed.2d  523 (1985)).   Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited     exceptions.  Rule 9(b), for example, provides for greater particularity in all averments of fraud          or mistake.    This  Court,  however,  has  declined  to  extend  such exceptions to other contexts.  In _Leatherman v. Tarrant County Narcotics Unit,_ ___ U.S. ___, 113 S.Ct. 1160,        122  L.Ed.2d 517 (1993) the court stated: "[T]he Federal Rules do address in Rule 9(b)        the question of the need for greater particularity in pleading certain actions, but do not   include        among        the enumerated actions any reference to complaints alleging municipal         liability  under  §1983.    Expressio  unius  est  exclusion alterius."   507 U.S., at 168, 113 S.Ct. 1160.  Just as Rule 9(b) makes no mention of municipal liability under Rev. Stat. §  1979, 42 U.S.C. § 1983 (1994 ed., Supp. V), neither does it refer to employment   discrimination.  Thus, complaints in these cases, as

in most others, must satisfy only the simple requirements of Rule 8(a).

Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule        8(a)'s      simplified      notice pleading standard.  Rule 8(e)(1) states that "[n]o technical forms of pleading or motions are required," and Rule 8(f) provides that "[a]ll pleadings shall be        so construed as to do substantial justice."  Given the Federal Rules' simplified standard for pleading, "[a] court may dismiss a complaint only if it is clear that no relief could be        granted under any set of facts that could be proved consistent with the allegations."        *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).  If a pleading fails to specify the allegations in a manner that provides sufficient notice, a        defendant can move for a more definite statement under Rule 12(e) before responding.

Moreover, claims lacking merit may be dealt with through summary judgment under        Rule 56.  The liberal notice pleading of Rule 8(a) is the starting point of a simplified        pleading system, which was adopted to focus litigation on the merits of a claim. See        Conley, supra, at 48, 78 S.Ct. 99 ("The Federal Rules reject the approach that pleading is        a game of skill in which one misstep by counsel may be decisive to the outcome and accept the  principle that the purpose of pleading is to facilitate a proper decision on the merits").

The foregoing reasons supports Plaintiff's contention that as an employment discrimination plaintiff, Ms. Martin need not plead a prima facie case of discrimination.

In *Thomas v. Independence Tp*., 463 F.3d 285 (3rd Cir, 2006) the Third Circuit while examining a section 1983[7] claim relied on S*wierkiewicz* to made clear what the pleading standard was to state a claim under section 1983; the Court said:

The marching orders of the Supreme Court in both Leatherman and Swierkiewicz are clear: the notice pleading standard of Rule 8(a) applies in all civil actions, unless otherwise specified in the Federal Rules or statutory law.  There is no federal rule or statute that        prescribes a heightened pleading standard in § 1983 civil rights actions in which the defendant pleads a qualified immunity defense.  Hence, we now make clear that       which was implied in Evancho: a civil rights complaint filed under § 1983 against a

_____

[7] In Alston v. Parker, 363 F.3d 229 (3d Cir.2004), the Third Circuit stated that, "we noted that a civil rights complaint was not subject to dismissal due to the absence of factual allegations. Id.  At 233 n. 6.  We reasoned that 'a plaintiff need not plead facts,' but, instead, 'need only make out a claim upon which relief can be granted'.  Should more facts be necessary to define the disputed facts and issues, we noted that other procedural mechanisms, such as discovery, are available."

government official need only satisfy the notice pleading standard of Rule 8(a), regardless of the availability of a qualified immunity defense.

It is submitted the complaint at issue meets the federal pleading standard to state a Title VII and 1983 sex based claim, because the complaint asserts in a short plain manner the time, acts, and persons invoked.  Here, the complaint states that because of the plaintiff's sex and making protected disclosures, the defendants treated her differently in the terms and conditions of employment and subjected her to several adverse employment actions.  Specifically, it is plead that the Defendants' deprived plaintiff of promotional opportunities, deprived her of overtime, retaliated against her for engaging in protected activities, and subjected her disparate treatment. The complaint identified Johnnie Jackson, Frederick Moosally, Craig Stewart , Maria Delaney, and Charles Brodsky as among those who engaged in the different treatment.  In fact, the complaint is replete with dates and misdeeds of the Defendants.

Furthermore, in Atchinson v. District of Columbia, 73 F.3d 418 (D.C. Cir. 1996) the court had to decide whether a plaintiff asserting a section 1983 claim of municipal liability is required to allege the policy, specific custom or procedure that was adopted by the District that caused the constitutional violation.  The Circuit Court following the Supreme Court's lead in Leatherman, determined that the plaintiff's complaint was not deficient simply because it "failed to identify a specific custom, policy statement, or procedure that caused his injuries," and otherwise "failed to state facts supporting its allegation." Atchinson v. District of Columbia, 73 F.3d at 422.  Consequently, the Circuit Court found that it was enough for the plaintiff to "allege facts that may reasonably suggest misconduct sufficiently serious and obvious to justify an allegation of improper training."  Id.  In addition, the Circuit Court also found that plaintiff's use of the phrase "deliberate indifference" without any facts or even generalized factual allegations regarding such alleged indifference renders the complaint adequate. Id. at 423.  Holding that the

complaint sufficiently stated a claim against the District under section 1983, the court reversed the dismissal of plaintiff's complaint, which alleged that the District had violated plaintiff's civil rights by failing to train or supervise its police officers.

### 1.    Plaintiff has stated claims against the individual Defendants under 42 U.S.C. 1983

To establish a § 1983 claim against an individual defendant in his individual capacity, "a plaintiff must allege "two-and only two-allegations" . . . in order to state a cause of action under that statute.  First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.  See _Monroe v. Pape_, 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961). See also _Gomez v Toldeo_, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572, (1980).

Plaintiff has alleged that the Individual District Defendants deprived Plaintiff of her federal right to nondiscrimination and retaliation in her employment under color of DC law.

### G.    THE DEFENDANTS' RELIANCE ON THE INTRACORPORATE CONSPIRACY DOCTRINE IS FLAWED

The Defendants' state in their motion that as "a matter of law, the District, a municipal corporation, cannot conspire with itself.  See, Gladden v. Barry, 558 F. Supp. 676, 680 (D.D.C. 1983) (The District of Columbia government is a single entity acting and cannot be said to conspire with itself through its officials); Michelin v. Jenkins, 704 F. Supp. 1,4 (D.D.C 1989) (there can be no conspiracy between the District of Columbia Board of Education and its officials to violate plaintiffs rights because the defendants comprised a single entity that was incapable of entering into a conspiracy).  See also, Hilliard v. Ferguson, 30 F. 3d 649, 653 (5th Cir. 1994) (public school board and its employees constitute single legal entity and acts of the agents are acts of the corporation)."

Our circuit has not opined whether or not the intracorporate conspiracy doctrine is applicable to the DC Government. However, this court should be persuaded by the other circuits.

In re: <u>McAndrew v. Lockheed Martin Corp.</u>, 206 F.3d 1031, 1035–41 (11th Cir. 2000), the 11th Circuit opined that:

> "Accordingly, we hold that just as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. 1985(2)".

In some jurisdictions, for example, the doctrine does not apply where the civil rights conspiracy consists of "a series of discriminatory acts," <u>Volk v. Coler</u>, 845 F.2d 1422, 1435 (7th Cir. 1988); cf. <u>Baker v. Stuart Broad. Co</u>., 505 F.2d 181, 183 (8th Cir. 1974) (applying the doctrine where "the challenged conduct is essentially a single act of discrimination by a single business entity"); <u>Dombrowski v. Dowling</u>, 459 F.2d 190, 196 (7th Cir. 1972) (same), or where the corporate agents' actions were either unauthorized or motivated by "an independent personal stake in achieving the corporation's illegal objective," <u>Buschi</u>, 775 F.2d at 1252; see <u>Benningfield</u>, 157 F.3d at 378 (noting a "possible exception . . . where corporate employees act for their own personal purposes").

**H.   PLAINTIFF IS ENTITLED TO DISCOVERY PURSUANT TO FEDERAL RULE 56(F)**

We note as an initial matter there has been no opportunity for plaintiff to engage in any discovery whatsoever. In this regard, it is settled law that, considering the purpose of liberal

discovery rules and the familiar test for summary judgment under Rule 56(c),[8] and under Rule 56(f), a dispositive motion will not be considered under Rule 56(c) until plaintiff has had a reasonable opportunity to conduct discovery.  See *Berkeley v. Home Insurance Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)(holding that Rule 56(f) motion is to be granted as a matter of course unless counsel lacked diligence in pursuing discovery); see also, *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1379 (D.C. Cir. 1988)(holding that it is premature for a district court to grant summary judgment "without first permitting discovery on the merits").  Indeed, the Supreme Court has directly stated that "[a]s a general rule, summary judgment is appropriate only after adequate time for discovery." *Celotex v. Catrett,* 477 U.S. 317, 322 (1986)(emphasis added); see also, *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 n.5 (1986)(Court declared that a summary judgment "must be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition").  Here there have been no depositions, answers to interrogatories, document production, or admissions.  Indeed, there have been no interrogatories or document requests or depositions at all since discovery has not even started.  Thus, plaintiff has not had any "opportunity to discover information that is essential to her opposition" whatsoever.

It is worth noting that the D.C. Circuit reverses summary judgments that have been granted before the nonmoving parties have had any opportunity to conduct discovery.  See e.g., *First Chicago Int'l v. United Exch. Co.,* 836 F.2d 1375 (D.C. Cir. 1988).  In that case, the Court of Appeals held directly the "it was premature for the district court to grant summary judgment without first permitting discovery on the merits."  836 F.2d at 1379.  Needless to say, the Supreme Court also fully supports allowing discovery before considering a Rule 56(c) motion.

---

[8] Rule 56(c) provides that summary judgment shall be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In Celotex v. Catrett, 477 U.S. 317 (1986), the Court said: "As a general rule, summary judgment is appropriate only after adequate time for discovery."  477 U.S. at 322 (emphasis added).

Granting plaintiff an opportunity to conduct discovery -- and denying defendant's dispositive motion at this juncture -- is particularly appropriate in the employment discrimination context.  In *Paquin v. Federal National Mortgage Association*, 119 F.3d 23 (D.C. Cir. 1997), for example, the district court entered summary judgment for defendant-employer before that defendant had met its discovery obligations to the plaintiff-employee.  119 F.3d at 28.  Because plaintiff in that case needed certain requested documents (e.g., information underlying the employer's performance evaluations of the employee plaintiff) to effectively oppose the summary judgment motion filed by defendant, the D.C. Circuit reversed the lower court's grant of summary judgment.  Id.  The appeals court in *Paquin,* stating "the district court erred in not granting [plaintiff's] Rule 56(f) motion," reversed the district court's grant of summary judgment to defendant and remanded the case for discovery and further proceedings below.  Id.

Here again, discovery is in order, and defendant's dispositive motion -- which, by virtue of it being supported by matter extrinsic to the pleadings, must be viewed as a motion for summary judgment and disposed of in accordance with Rule 56 (see Rule 12(b), Federal Rules of Civil Procedure) – can be considered only after plaintiff has had a fair opportunity to engage in discovery.  Based on these considerations, defendant's motion to dismiss or, in the alternative, for summary judgment must be denied in its entirety at this juncture.

As this court has held, under Rule 56(f) plaintiffs "need not even present the proof creating the minimal doubt on the issue of fact which entitles [them] to a full trial; it is enough if [they] show[] the circumstances which hamstring [them] in presenting that proof by affidavit in

opposition to the motion." *American Broadcasting Companies, Inc.*, 599 F. Supp. at 769 (citing *10A Wright, Miller & Kane, Federal Practice and Procedure*, Civil § 2740 at 520 (2d ed. 1983)). See also <u>*Carney v. Department of Justice*</u>, 19 F.3d 807, 813 (2d Cir. 1994) ("in support of his Rule 56(f) affidavit, [plaintiff] was not required to present evidence that would be admissible at a trial") (citation omitted).

### I.    <u>PLAINTIFF IS ENTITLED TO AMEND HER COMPLAINT</u>

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend pleadings "shall be freely given when justice so requires."  The decision of whether to grant leave to amend rests within the discretion of the trial court.  <u>Zenith Radio Corp. v. Hazeltine Research, Inc</u>., 401 U.S. 321 (1971).

As has been stated by this Court:

> "Leave to amend a pleading is to be granted 'freely,' Fed.R.Civ.P. 15(a)(2), and should be granted where there is no showing of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'

*Giardono v. District of Columbia*, 252 F.R.D. 18, 22 (D.D.C. 2008) (citing <u>*Kontrick v. Ryan*</u>, 540 U.S. 443, 459, 124 S.Ct. 906 (2004)).  This Court accordingly held that "[t]he court must, however, heed Rule 15's mandate that leave is to be 'freely given when justice so requires.'" <u>*Anderson v. USAA Casualty Ins. Co*</u>., 218 F.R.D. 307, 310 (D.D.C. 2003) (citing <u>Firestone</u>, 76 F.3d at 1208; <u>Caribbean Broad.  Sys., Ltd. V. Cable & Wireless PLC</u>, 148 F.3d 1080, 1083 (D.C. Cir. 1998)).

This Court further stated in <u>Anderson</u> that:

> Indeed, '[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits.'

Anderson, 218 F.R.D. at 310 (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227 (1962)).  This Court has accordingly stated: Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments."  Anderson, 218 F.R.D. at 310 (citing Foman, 371 U.S. at 182, 83 S.Ct. at 227); Caribbean Broad.  Sys., 148 F.3d at 1083).  See also Baloch v. Norton, 355 F.Supp.2d 246, 261 (D.D.C. 2005) (holding that, in the interests of justice, an employee would be granted leave to amend his complaint for the purpose of raising the claim of retaliation based on a hostile work environment).  In the instant case, there has not been undue delay and there has been no discovery.

In the alternative, if the court agrees that any part of the Complaint is lacking in facts sufficient to make a claim, Plaintiff request that she be allowed to amend her complaint.

**V.**     **CONCLUSION**

For the reasons stated above and those apparent to the court, the District Defendants' Motion for Partial Dismissal of the Complaint must be denied.

**VI.**     **HEARING REQUESTED**

Pursuant to LCvR 7(f), Plaintiffs request an oral hearing.

Respectfully Submitted,

/s/ George Rose
_____
George Rose, Esquire
Trial Bar No.:  26086

THE ROSE LAW FIRM LLC
200 East Lexington Street, Suite 800
Baltimore, Maryland 21202

Ph: 410-727-7555 / Fx:410-727-7585
grose@roselawfirm.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on this 31st Day of August, 2011, Plaintiff's Response in

Opposition to District Defendants' Motion for Partial Dismissal of the Complaint was served by

electronic mailed on:

Denise Baker, Esquire
Patricia B Donkor, Esquire
Counsel for Defendants'

*Via Electronic Notice*

/s/ George Rose

_____

George Rose, Esq.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| | * |
| FELICIA MARTIN | |
| | * |
|     Plaintiff, | |
| | *     Case No  11-CV-1069 ABJ |
| Vs. | |
| | * |
| DISTRICT OF COLUMBIA, et al | |
| | * |
|     Defendants. | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

**ORDER**

Upon consideration of the District Defendants' Motion for Partial Dismissal of Plaintiff's Complaint, and considering the Response of Plaintiff, it is hereby this ____Day of _____, 2011,

ORDERED, that the Motion to Dismiss be and is hereby DENIED.


Date:_____                    Signed: _____

                                            Judge Amy Berman-Jackson