**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| FELICIA MARTIN, | : | | |
| *formerly known as Felicia Dantzler*, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 11-1069 (RC) |
| | : | | |
| v. | : | Re Document No.: | 49 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT CHARLES BRODSKY'S
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

In this employment discrimination action, Plaintiff Felicia Martin, an employee of a District of Columbia regulatory agency, has asserted sex discrimination and related claims against the District and several individuals with whom she has worked. One of the individual defendants, Charles Brodsky, is a man who was the chairman of the board that oversees the regulatory agency. It is Ms. Martin's theory that, by failing to take any action, Mr. Brodsky aided or abetted the other defendants in taking adverse action against her. Mr. Brodsky has moved to dismiss or, in the alternative, for summary judgment as to each cause of action asserted against him. For the reasons discussed below, the Court will grant Mr. Brodsky's motion.

**II. FACTUAL BACKGROUND**

The Alcoholic Beverage Control Board (the "ABC Board" or the "Board") is a 7-member body of the D.C. government whose primary function is to administer and enforce the District of Columbia's alcoholic beverage regulations. *See* D.C. Code § 25-201 (Supp. 2012). Its duties

include issuing alcoholic beverage licenses, conducting inspections of licensees' premises and records, and responding to complaints about licensees. *See id.* § 25-201(c). The Alcoholic Beverage Regulation Administration ("ABRA") is an independent agency of the District of Columbia, whose purpose is "to provide professional, technical, and administrative staff assistance to the Board in the performance of its functions." *Id.* § 25-202 (2001). ABRA is headed by a Director, who is appointed by the ABC Board for a 4-year term, and whose duties include "employ[ing] staff as needed to carry out the function of ABRA." *Id.* § 25-207. One of the Board's duties is to oversee ABRA. *See id.* § 25-201(c)(1) (Supp. 2012). The parties dispute the extent to which this oversight includes supervision of ABRA's employment practices, but the Board has reviewed discrimination cases involving ABRA in at least one instance. *See* Pl.'s Resp. Mot. Dismiss & Summ. J. Ex. 5, ECF No. 83-5.

Felicia Martin, the plaintiff in this case, has been an investigator with ABRA's Enforcement Division since February 21, 2007. *See* Pl.'s Stmt. Material Facts 1, ECF No. 87. In 2008, Ms. Martin applied for the position of Enforcement Division Supervisor. *See* Am. Compl. ¶ 16, ECF No. 33. Ms. Martin alleges that, despite her exceptional work performance, she was notified that she was ineligible for the position and a less-qualified male candidate was selected. *See id.* ¶¶ 18–21. The complaint also alleges that, in the time after Ms. Martin was denied the promotion, she suffered further disparate treatment, including, among other things, denial of acting supervisor positions, denial of volunteer opportunities, and denial of overtime. *See generally id.* ¶¶ 15–105. Ms. Martin also alleges that she suffers from carpal tunnel syndrome and was denied a reasonable accommodation for her condition. *See id.* ¶¶ 106–18. In late 2009, Ms. Martin made a formal complaint of discrimination with ABRA's internal Equal Employment Opportunity ("EEO") Officer, Laverne Fletcher. *See id.* ¶ 67. Ms. Martin alleges that no

investigation was conducted and, after her complaint, members of ABRA escalated their disparate treatment of her in retaliation.  *See id.* ¶¶ 68–100.  On April 12, 2010, Ms. Martin forwarded a portion of the EEO correspondence to members of the ABC Board via email.  *See* Pl.'s Resp. Mot. Dismiss & Summ. J. Ex. 4, ECF No. 83-4.  During all relevant times, Charles Brodsky was Chairman of the ABC Board.  *See* Def. Brodsky's Mem. P. & A. Supp. Mot. Dismiss & Summ. J. 7, ECF No. 49.

Ms. Martin initiated this litigation in June 2011, and filed the operative complaint on April 16, 2012, asserting twelve causes of action under various federal and D.C. employment and civil rights laws.  *See generally* Compl., ECF No. 1; Am. Compl., ECF No. 33.  Mr. Brodsky is named in his personal capacity as a defendant in this action, along with several individual ABRA employees and the District of Columbia.  *See* Am. Compl. ¶¶ 3–9, ECF No. 33.  Other than his passive act of receiving Ms. Martin's April 12, 2010, email, the complaint does not specifically allege that Mr. Brodsky took any action in the events underlying this lawsuit.  *See id.* ¶ 156.  The gravamen of Ms. Martin's complaint against Mr. Brodsky is that he "should have acted on the Plaintiff's notice concerning [her] EEOC matters within ABRA."  Pl.'s Mem. P. & A. Resp. Mot. Dismiss & Summ. J. 16, ECF No. 83.  Mr. Brodsky is named as a defendant as to seven of the twelve causes of action in this case.  He has moved to dismiss each of the claims, or, in the alternative, for summary judgment.

### III.  LEGAL STANDARD

#### A.  Failure to State a Claim

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

3

(per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor.  *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).  It is not necessary for the plaintiff to plead all elements of her prima facie case in the complaint.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28–29 (D.D.C. 2010).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.  *Id.*  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.  Summary Judgment

A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV.  ANALYSIS

The amended complaint contains seven causes of action against Mr. Brodsky: retaliation in violation of the D.C. Human Rights Act ("DCHRA"); disability discrimination in violation of the Americans with Disabilities Act ("ADA"); negligent hiring and retention; violation of the D.C. Whistleblower Protection Act ("DCWPA"); retaliation for exercise of First Amendment rights in violation of 42 U.S.C. § 1983; conspiracy to deny Equal Protection rights in violation of 42 U.S.C. § 1985; and failure to prevent a conspiracy to deny Equal Protection rights in violation of 42 U.S.C. § 1986. Mr. Brodsky moves for dismissal or summary judgment of all seven claims, mostly on the ground that his position as Chairman of the ABC Board did not make him an "employer" of Ms. Martin.

**A.  D.C. Human Rights Act (Count 4)**

Ms. Martin's first claim against Mr. Brodsky arises under the retaliation provision of the DCHRA, which makes it unlawful for an employer "to coerce, threaten, retaliate against, or interfere with any person . . . in the exercise or enjoyment of any right granted or protected" under the DCHRA.  D.C. Code § 2-1402.61(a) (2001); *see also* Am. Compl. ¶¶133–38, ECF No. 33.  It is Ms. Martin's position that, by not exercising any supervisory authority over the ABRA employees in the context of her employment dispute, Mr. Brodsky effectively aided the ABRA employees in retaliating against her for making an EEO complaint.  *See* Pl.'s Mem. P. & A. Resp. Mot. Dismiss & Summ. J. 12–14, ECF No. 83.  Mr. Brodsky argues that (1) he was not Ms. Martin's "employer" under the DCHRA; (2) the complaint fails to allege that he personally engaged in any act prohibited by the DCHRA; and (3) Ms. Martin has not pleaded, and cannot show, that he aided or abetted in any DCHRA violation.  *See, e.g.*, Def. Brodsky's Reply Supp. Mot. Dismiss & Summ. J. 6–7, ECF No. 88.

The definition of "employer" under the DCHRA is quite broad, extending to "any person who, for compensation, employs an individual . . . ; *any person acting in the interest of such employer, directly or indirectly*; and any professional association."  D.C. Code § 2-1401.02(10) (Supp. 2012) (emphasis added).  With her response brief, Ms. Martin submitted evidence of the ABC Board's involvement in a different EEO matter.  In 2008, the Board, acting under then-Chairman Peter Feather, convened a panel to address concerns about an alleged racist comment by ABRA's then-Director, Maria Delaney, toward Richard Coward, an ABRA employee.  *See* Pl.'s Resp. Mot. Dismiss & Summ. J. Ex. 5, ECF No. 83-5.  The Board then considered whether disciplinary action was warranted and found that a verbal warning to Ms. Delaney was

appropriate.¹ *See id.* at 3603. Based on this evidence and for purposes of this motion, the Court assumes without deciding that the Board—and by extension, Mr. Brodsky—can "act[] in the interest of [ABRA], directly or indirectly" for purposes of the DCHRA. D.C. Code § 2-1401.02(10).

Although the complaint does not allege that Mr. Brodsky committed any direct acts in violation of the DCHRA, the statute also makes it "an unlawful discriminatory practice for any person to aid, abet, invite, compel, or coerce the doing of any of the acts forbidden under the [DCHRA] or to attempt to do so." *Id.* § 2-1402.62 (2001). This is the theory on which Ms. Martin hopes to proceed against Mr. Brodsky. A supervisor's omissions can give rise to a DCHRA violation under an aiding or abetting theory "when it was alleged that they knew or should have known about the discriminatory conduct and failed to stop it." *King v. Triser Salons, LLC*, 815 F. Supp. 2d 328, 332 (D.D.C. 2011). Under Count 4, the "discriminatory conduct" complained of is ABRA's retaliation for Ms. Martin's discrimination complaint. *See* Am. Compl. ¶ 137, ECF No. 33. However, the only evidence linking Mr. Brodsky to this employment dispute is Ms. Martin's April 12, 2010, email to him purportedly attaching a rebuttal letter from ABRA as part of the EEO procedure. *See* Pl.'s Resp. Mot. Dismiss & Summ. J. Ex. 4, ECF No. 83-4.² It is unclear whether Mr. Brodsky read the email, and at his deposition he suggested that the document looked like spam email. *See* Brodsky Dep. 92:10, May 31, 2013,

---

¹ It is not clear from the parties' briefing whether the Board involved itself in this incident because the alleged discriminatory official was ABRA's Director, an officer over whom Mr. Brodsky concedes the ABC Board has some authority. *See* Brodsky Dep. 112:2–15, May 31, 2013, ECF No. 88-1; *see also* D.C. Code § 25-207(a) (2001) ("The Board . . . shall appoint a Director of ABRA for a renewable 4-year term. The Director shall be removed by the Board for just and reasonable cause.").

² To be clear, the document submitted to the Court does not actually include any attachment. Indeed, the email exhibit does not bear any indicia of an attachment, such as an "attachments" header or a file name in the body of the email. *See* Pl.'s Resp. Mot. Dismiss & Summ. J. Ex. 4, ECF No. 83-4.

ECF No. 88-1.  But even if Mr. Brodsky did review the email, Ms. Martin did not include in it any suggestion that she was being *retaliated* against for her EEO complaint.  Rather, the email simply indicated that an EEO complaint had been made.  There is no evidence that Mr. Brodsky was on notice of any retaliation, and therefore no basis to find that he aided or abetted in it.  To find otherwise would make supervisors who are aware of an EEO complaint immediately liable for virtually any retaliation by other individuals following a formal complaint of discrimination, whether or not the supervisor has any reason to believe that retaliation is likely to occur.  The Court declines to stretch the DCHRA's aiding or abetting statute to such an extent.  The Court will grant summary judgment in favor of Mr. Brodsky on Ms. Martin's DCHRA claim due to a lack of evidence that Mr. Brodsky was aware of any alleged retaliation.

### B.  Americans with Disabilities Act (Count 5)

Mr. Brodsky also challenges Count 5, which alleges that he and the other defendants violated the ADA by discriminating against Ms. Martin on the basis of her carpal tunnel syndrome.  *See* Am. Compl. ¶¶139–45, ECF No. 33.  Ms. Martin argues that there is a dispute as to whether Mr. Brodsky supervised—or had a duty to supervise—ABRA's employment practices.  *See* Pl.'s Mem. P. & A. Resp. Mot. Dismiss & Summ. J.13–16, ECF No. 83.  Mr. Brodsky, citing *Grandison v. Wackenhut Servs., Inc.*, 585 F. Supp. 2d 72 (D.D.C. 2008), merely recycles his DCHRA argument, asserting that ADA claims are analyzed under the "same legal framework" as DCHRA claims.  *See* Def. Brodsky's Mem. P. & A. Supp. Mot. Dismiss & Summ. J. 7, ECF No. 49.  But Mr. Brodsky's citation to *Grandison* is inapposite, as the court in that case was referring to the *burden-shifting* legal framework in which the plaintiff must make a prima facie case of discrimination, the employer must articulate a non-discriminatory basis for its action, and the plaintiff must show that the action was pretextual.  *See Grandison*,

585 F. Supp. 2d at 77 & n.7 (citing *McFarland v. George Wash. Univ.*, 935 A.2d 337, 346 (D.C. 2007)).  The case does not compare the definitions of "employer" and "employee" across the two statutes, and the definitions are in fact quite different under each act.  *Compare* 42 U.S.C. § 12111(4)–(5) (2006), *with* D.C. Code § 2-1401.02(9)–(10).

But as Mr. Brodsky points out separately, *see* Def. Brodsky's Reply Supp. Mot. Dismiss & Summ. J. 7, ECF No. 88, Ms. Martin's ADA claim against him fails for a separate reason:  There is no liability under the ADA for a person in his individual capacity.  *See Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 186–87 (D.D.C. 1997) (holding that the ADA's "employer" definition does not allow for individual liability).  The Court will therefore dismiss the ADA claim against Mr. Brodsky under Rule 12(b)(6).

### C.  Negligent Hiring and Retention (Count 7)

The amended complaint also contains a count of negligent hiring and retention against Mr. Brodsky and others for their alleged selection and retention of employees who created an environment that promoted discrimination and retaliation.  *See* Am. Compl. ¶¶ 153–66, ECF No. 33.  With respect to this claim, the parties again dispute whether Mr. Brodsky had an employer–employee relationship with Ms. Martin.  *See* Def. Brodsky's Mem. P. & A. Supp. Mot. Dismiss & Summ. J. 8, ECF No. 49; Pl.'s Mem. P. & A. Resp. Mot. Dismiss & Summ. J.13–16, ECF No. 83.

Although Mr. Brodsky once again fails to address the legal definition of "employer" as it relates to the D.C. common law tort of negligent hiring and retention, the Court need not reach the issue because the claim is easily disposed of as a matter of law on other grounds.  The D.C. Court of Appeals has held that a negligence claim "may be predicated only on *common law* causes of action or duties imposed by the common law."  *Griffin v. Acacia Life Ins. Co.*, 925

9

A.2d 564, 576 (D.C. 2007) (per curiam) (emphasis added).  Ms. Martin's allegations arise from various employment causes of action that are creatures of statute, not common law.  Such employment violations cannot form the underlying basis for a negligence claim against an employer under D.C. law.  *See id.* at 576–77.  The Court will therefore dismiss the negligent hiring and retention claim against Mr. Brodsky under Rule 12(b)(6).

### D.  D.C. Whistleblower Protection Act (Count 8)

Ms. Martin also asserts a claim against Mr. Brodsky under the DCWPA, D.C. Code § 1-615.53 (Supp. 2012), for allegedly aiding or abetting ABRA in retaliating against Ms. Martin following her formal complaint of discrimination.  *See* Am. Compl. ¶¶ 167–87, ECF No. 33.  Mr. Brodsky challenges the claim on the bases that (1) he was not her "supervisor" within the meaning of the DCWPA; and (2) even if he were her supervisor, Ms. Martin fails to show any causal connection between her protected speech and Mr. Brodsky's acts or omissions.  *See* Def. Brodsky's Mem. P. & A. Supp. Mot. Dismiss & Summ. J. 9–10, ECF No. 49.

The definition of "supervisor" under the DCWPA is quite broad.  Under the statute, a supervisor is "an individual employed by the District government . . . who has the authority to effectively recommend or take remedial or corrective action . . . ."  D.C. Code § 1-615.52(8).  As discussed above in the context of the DCHRA, Ms. Martin has submitted evidence showing that the ABC Board involved itself in one of ABRA's prior EEO matters and recommended corrective action.  *See* Pl.'s Resp. Mot. Dismiss & Summ. J. Ex. 5, ECF No. 83-5; *supra* Part IV.A.  Even if the Board did not have a duty or typically go to such lengths as part of ABRA's employment disputes, the Board's participation in the Coward incident creates a question as to whether Mr. Brodsky "ha[d] the *authority* to effectively recommend or take remedial or corrective action" for any discriminatory or retaliatory behavior that was occurring at ABRA.

D.C. Code § 1-615.52(8) (emphasis added).  Accordingly, for purposes of this motion, the Court assumes without deciding that Mr. Brodsky was Ms. Martin's supervisor.

Mr. Brodsky has shown, however, that there is no triable issue as to causation.  To succeed on a DCWPA claim, a plaintiff must show "that the protected disclosure was a 'contributing factor' to the allegedly retaliatory actions and a jury must ultimately find . . . 'a *direct causal link* in order for there to be liability'—i.e., that Defendants would not have taken the allegedly retaliatory actions 'but for' her protected disclosures." *Williams v. Johnson*, 701 F. Supp. 2d 1, 17 (D.D.C. 2010) (quoting *Johnson v. District of Columbia*, 935 A.2d 1113, 1119 (D.C. 2007)).  The April 12, 2010, email is the only piece of evidence suggesting that Mr. Brodsky *might* have been aware of this employment dispute.  *See* Pl.'s Resp. Mot. Dismiss & Summ. J. Ex. 4, ECF No. 83-4; *see also supra* note 2.  As discussed above in the context of Ms. Martin's DCHRA retaliation claim, even if Mr. Brodsky reviewed the email, it did not include any complaint that Ms. Martin was being *retaliated* against for her EEO complaint; it merely indicated that an EEO complaint was made.  There is no evidence that Mr. Brodsky was aware that Ms. Martin was suffering retaliation, and therefore no basis to find that he aided in the alleged retaliation.

The Court also notes that, unlike the DCHRA, it is unclear whether an "aiding or abetting" theory can even give rise to a DCWPA claim.  *Cf.* D.C. Code § 2-1402.62 (making it illegal to aid or abet a violation of the DCHRA); *King*, 815 F. Supp. 2d at 331–32 (applying the DCHRA's "aiding or abetting" theory).  The Court is unaware of any statute or case law providing for that theory of liability, and Ms. Martin cites to none.  Although the Court is skeptical that such a theory can prevail under the DCWPA, it need not reach that issue here.  The

Court will grant summary judgment for Mr. Brodsky on the DCWPA claim based on a lack of causation.

### E. First Amendment Retaliation in Violation of Section 1983 (Count 9)

The amended complaint also asserts that Mr. Brodsky, by acquiescing to ABRA employees' conduct, aided the ABRA employees in retaliating against Ms. Martin in violation of the Civil Rights Act of 1871. *See* 42 U.S.C. § 1983 (2006); *see also* Am. Compl. ¶¶ 188–96, ECF No. 33; Pl.'s Mem. P. & A. Resp. Mot. Dismiss & Summ. J. 12–16, ECF No. 83. However, the Supreme Court has rejected the notion that section 1983 liability can be predicated on such a theory:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument. . . . In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted).

Ms. Martin does not allege in her complaint that Mr. Brodsky made any affirmative conduct whatsoever in this employment controversy—a fact that is reinforced by her opposition brief's exclusive reliance on an "aiding and abetting by omission" theory. *See* Pl.'s Mem. P. & A. Resp. Mot. Dismiss & Summ. J. 12, ECF No. 83 ("Plaintiff hopes to convince [the Court] that Brodsky was under a legal duty to oversee ABRA and the fact that he failed to do so does not abrogate his duties."). Because a section 1983 claim cannot be based on mere knowledge and acquiescence to the behavior of a subordinate,[3] and because the complaint contains no

---

[3] For purposes of this analysis, the Court again assumes without deciding that the ABRA employees were Mr. Brodsky's subordinates.

allegation that Mr. Brodsky otherwise engaged in any affirmative misconduct, the Court will dismiss the section 1983 claim against Mr. Brodsky for failure to state a claim upon which relief can be granted.[4]

### F. Conspiracy and Failure to Prevent Conspiracy (Counts 11 and 12)

Ms. Martin also asserts claims against Mr. Brodsky for conspiracy to deprive Ms. Martin of her equal protection rights, and for failure to prevent such a conspiracy.  *See* 42 U.S.C. §§ 1985–86 (2006); Am. Compl. ¶¶ 201–08, ECF No. 33.  Mr. Brodsky moves to dismiss both claims under the "intracorporate conspiracy" doctrine, which provides that "there can be no conspiracy if the conduct complained of is essentially a single act by a single entity."  *Gladden v. Barry*, 558 F. Supp. 676, 679 (D.D.C. 1983); *see also* Def. Brodsky's Mem. P. & A. Supp. Mot. Dismiss & Summ. J. 11–12, ECF No. 49.  Ms. Martin's opposition brief fails to respond to the argument, effectively conceding it.  *See* D.D.C. Civ. R. 7(b); *Rosenblatt v. Fenty*, 734 F. Supp. 2d, 21, 22 (D.D.C. 2010) ("[A]n argument in a dispositive motion that the opponent fails to address in an opposition may be deemed conceded . . . .").

---

[4] The Court further notes that, even if Ms. Martin could show a constitutional violation, Mr. Brodsky would be entitled to qualified immunity because Ms. Martin points to no clearly established law showing that Mr. Brodsky had a duty to act under these circumstances.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  The Coward incident notwithstanding, the record reveals that Mr. Brodsky and multiple ABRA employees did not clearly understand the ABC Board to wield supervisory authority over ABRA's employment practices.  *See* Brodsky Aff. ¶¶ 7–14, ECF No. 49-1; Moosally Dep. 111:14–20, Jan. 22, 2013, ECF No. 83-1; Fletcher Dep. 9:21–10:5, June 11, 2013, ECF No. 83-2; Brodsky Dep. 61:10–63:18, 73:5–24, 91:21–25, 95:6–21, May 31, 2013, ECF No. 88-1; *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").  And Ms. Martin fails to point to any regulation, statute, or case law clearly indicating that Mr. Brodsky had such a duty to act in this context.

Although the D.C. Circuit has not weighed in on the applicability of the intracorporate conspiracy doctrine to claims under sections 1985 and 1986, *see Bowie v. Maddox*, 642 F.3d 1122, 1130 n.4 (D.C. Cir. 2011) ("We have yet to pick sides in the circuit split regarding the doctrine's applicability to civil rights cases in general and the first clause of § 1985(2) in particular."), other judges within this district have consistently found that it does apply. *See Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (collecting cases). Such cases have included application of the doctrine to alleged "conspiracies" among the District of Columbia and employees of the District or its various agencies. *See, e.g.*, *Kelley v. District of Columbia*, 893 F. Supp. 2d 115, 120 (D.D.C. 2012) (applying the doctrine to an alleged conspiracy between the District of Columbia and employees of the Metropolitan Police Department). Because Mr. Brodsky and all other defendants were agents of the D.C. government during the alleged events giving rise to this litigation, *see* Am. Compl. ¶¶ 3–8, ECF No. 33, the intracorporate conspiracy doctrine bars application of sections 1985 and 1986 in this case as a matter of law. The Court will grant Mr. Brodsky's motion to dismiss these claims pursuant to Rule 12(b)(6).

## V.  CONCLUSION

For the foregoing reasons, the Court will grant Mr. Brodsky's motion to dismiss Counts 5, 7, 9, 11, and 12 of the amended complaint; and summary judgment will be entered in favor of Mr. Brodsky on Counts 4 and 8. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 16, 2013                                         */s/ Rudolph Contreras*
                                                                                              RUDOLPH CONTRERAS
                                                                                              United States District Judge