**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **FELICIA MARTIN** | * | |
| PLAINTIFF | * | |
| | * | |
| Vs. | * | CASE NO.: **11-CV-1069 RC** |
| | * | |
| **DISTRICT OF COLUMBIA**, *et al* | * | |
| DEFENDANT | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *   *

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT[1]

## STANDARD OF REVIEW

On a Motion to Dismiss under 12(b)(6), all matters are presumed true and all doubts and inferences are resolved in the pleader's favor and the pleading is viewed in the light most favorable to the pleader. Albright v. Oliver 114 S. Ct 807 (1994); Schuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683 (1974). Moreover, the U.S. Supreme Court has determined that on a Motion to Dismiss, the issue is not whether the Plaintiff will prevail, but whether the Plaintiff is entitled to offer evidence. Schuer v. Rhodes, supra; Anderson v. Creighton, 483 U.S. 635 (1987).

Summary Judgment is proper only where there is no genuine dispute of fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250, (1986); Celotex v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The U. S. Supreme Court as well as the Fourth Circuit have consistently held that, "In discrimination cases, motive is often the crucial issue and thus the Court must take special care when it considers a motion for summary judgment". Ballinger v. North Carolina Agric. Extension Serv., 815 F. 2d

---

[1] Plaintiff Refers the Court to Plaintiff's Statement of Facts File concurrently with this Memorandum and herein incorporated by reference.

1001, 1005 (4th Cir.) cert denied, 484 U. S. 897, 108 S. Ct. 232, 98 L. Ed. 2d 191 (1987).   All

facts and inferences must be drawn in favor of the non-moving party.  <u>Matsushi Elec. Indus. Co.</u>,

475 U.S. at 587, 106 S. Ct. at 1356.   When considering a Motion for Summary Judgment, a

court must inquire as to whether or not there is sufficient evidence for a trier of facts to find for

the non-moving party.    In <u>Adickes v. S.H. Kress and Company</u>, 398 U.S. 144 (1970), the

Supreme Court held that summary judgment is inappropriate where the Defendant has failed to

rebut all material allegations from which a jury, may draw inferences in favor of the Plaintiff.

When the validity of a complaint turns on questions of an employer's motive and intent a

court must be especially cautious in granting summary judgment.   See <u>Morrison v. Nissan</u>

<u>Company, Ltd.</u>, 601 F.2d 139, 141 (4th Cir. 1979). Rule 56 of the Federal Rules of Civil

Procedure prohibits the court from rendering judgment for the moving party if the pleadings,

depositions, answers to interrogatories and admissions on file, together with the affidavits, if any,

show that there is a genuine issue as to any material fact.  F.R.C.P. 56(c).

## B.   <u>ARGUMENTS</u>

### I.   The Court should Deny Defendant's Requests for Dismissal of Count One - Disparate Treatment On The Basis Of Sex Or Gender  In Violation Of Title VII (Against DC Government)

Defendant claims that Plaintiff was rejected "for the GS-13 Supervisory Investigator position

because the DC Department of Human Resources (DCHR) advised ABRA that Plaintiff was not

eligible for the GS-13 position because she had not been in her current position for a year."

Defendant seeks dismissal of Plaintiff's disparate treatment claim, with wishful thinking that

Plaintiff cannot show that this reason is a pretext for gender discrimination.  Dkt. # 118-1, p.4-5

To establish a *prima facie* case of gender discrimination in the denial of promotion, Ms.

Martin must show that: (1) she is in the protected class; (2) the employer had an open position

for which Mrs. Martin applied; (3) Mrs. Martin was qualified for the position; 4) Mrs. Martin was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.  Dobbs v. Roche, 329 F. Supp. 2d 33, 2004 U.S. Dist. LEXIS 14737 (D.D.C., August 2, 2004, Decided)   *Stella v. Mineta*, 284 F.3d 135, 145 (D.C.Cir.2002).

1. **Plaintiff Can Prove Disparate Treatment on the Basis of Gender in Relation to Defendant's Rejection of Plaintiff for the For 2008 & 2009 SI Positions.**

In this case, Plaintiff has established a *prima facie* case with respect to gender discrimination:  (1) Plaintiff was a female African-American who was 42 years old; (2) in September 2008, Defendants posted vacancies for two (2) SI positions and Plaintiff applied for the positions; (Exb# 34-35, 40-41) (3) Plaintiff was more than qualified for the SI position; (Exb# 3, 4, 67) and, Defendants' rejected Plaintiff for the position and gave the position to a less qualified and less experience male Investigator, Gregory Price, who was hired one year after Plaintiff. (Exb# 31) Defendant District of Columbia articulated non-discriminatory reason for denying Plaintiff the promotional opportunity is provably falsehood.

a. **Plaintiff Has Established Pretext**

"Pretext might be established by showing such weaknesses, implausibility's, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Nerenberg v. RICA, 131 Md. App. 671, (Md. Ct. Spec. App., 2000).  The October 2008 choosing of Gregory Prince for the SI position when he was in his GS-11 grade for about nine months and the interviewing of Investigator Mathews who was promoted from GS-9 to GS-11 in May 2008 is, just a mere five (5) months before he was interview, is enough to show pretext.

### i.  The time in Grade Explanation is False

Defendant Jackson told Plaintiff that Plaintiff had to have one (1) year time in grade to be eligible to apply for the 2008 SI vacancies. (Exb# 31, 32, 40, 41) Plaintiff was recommended for DS-12 promotion in May 2008, and would have to have been a DS-12 for one year before she could be promoted.  However, Investigator Price, who was employed in February 2008, only had eight or nine months in grade (GS-11) when he was promoted to the SI position.  Additionally, Investigator Matthews, who was promoted from GS-9 – GS-11 in May 2008, and had not completed one year time in grade but was interview for the 2008 SI positions, while Plaintiff was not.  (Exb# 32)

On November 17, 2008, Camille Robinson sought information from a Sabrina Coleman (OCFO)) regarding the subject of "Time in Grade".  Ms. Coleman got the info from Zondie Pendarvis, (DCHR).  (Exb# 42) This was three weeks after Defendant Jackson gave Plaintiff the false excuse about time in grade requirement. Yet, the information received by Robison indicated that "DCHR has updated its time-in-grade regulations to provide more flexibility."   (Id.)  The facts clearly show that Plaintiff's excuse was false and deceitful.

### ii.  The time in Grade Explanation is Inconsistent, Incoherent, Weak and Lacks Credibility

Delaney and the executive Staff, including Jackson had no formal accountable and transparent policy and procedures in places for deciding on promotions.  In fact, Defendant Delaney and Jackson took the power and authority for themselves to decide on hiring, promotions and terminations of Investigators. The practices by the Defendant were articulated by Mr. Farouk, Director of Operations at the time in an email sent to Defendant Delaney about "pending personnel actions".  In the email Mr. Farouk stated the regular practice and procedures

of filing vacancies at ABRA as   "1 vacancy left – we'll send Mr. Simmons with the name of the

one person whom we deem "Highly Qualified". He will return a Selection Certificate with that

name on it, and we will make the selection."   Defendant Delaney responded and copied

Moosally, saying "Thanks". (Exb# 30)  This is the process that was also explained to Plaintiff by

Defendant Jackson.  Defendant Jackson followed this practice when he announced Investigator's

Price selection ten days before the interview was even conducted.  (Exb. 38) Clearly the practice

is inconsistent with the articulated reason. Notwithstanding that Plaintiff was more qualified,

experienced and had a stellar performance record, (Exb# 4, 67), Defendant Jackson rejected

Plaintiff for the position because of gender as a female.


### iii.   Plaintiff Applied for the Re-Posted SI Positions in 2009

After Defendant Jackson rejected Plaintiff for one of the SI position in October 2008,

Plaintiff renewed her application for the remaining vacant SI position.  On December 12, 2008,

Plaintiff inquired about her application for the remaining SI position. Defendant Jackson

responded: "The position is still posted and no applicants from the ·external posting have been

interviewed nor are they scheduled to be-interviewed at this time." (Exb# 43) Mr. Jackson  led

Martin to believe that he was processing her application for 2008.

On August 6, 2009, Defendant Moosally sent an email to a Kantor, Jayme (ABRA)

stating: "As a priority assignment I need you to draft a bonus, promotion and special award

policy for the agency. Please look at the DPM, which is attached. I will also send you the e-

performance information, which I think may be a little more helpful. Please look at OAG's

policy as well. Please try and get a policy completed by Monday, August 10." (Exb# 51)

However, on September 11, 2009, Defendant Moosally emailed Camille Robinson and indicated

that he was only submitting the incentive policy because "I felt it made sense to have a separate

promotion policy at a later date." (Id at 2) A reasonable jury could conclude that Moosally did not submit or implement the promotion policy because Moosally, wanted to continue the *"send Mr. Simmons with the name of the one person whom we deem "Highly Qualified". He will return a Selection Certificate with that name on it, and we will make the selection"* policy of his predecessor, Defendant Delaney.  In fact, the evidence shows that this was the policy that was used to select Investigators Matthews and Stewart for the 2009 reposted SI positions.  Their selection and appointment was announced by Defendant Moosally, in November 2009, weeks after he failed to submit or implement as promotion policy, which he claimed was a priority assignment.  Under this policy, the filing out of a new application was a mere formality, once the decision was made by Jackson and Moosally to select Matthews and Stewart.  The Defendants had the power, unfettered authority, and opportunities to select Plaintiff, who consistently performed well as an Investigator, compared to the male Investigators that were selected, both of whom had tarnished work histories with prior personnel actions against them for improper activities regarding their duties as Investigators.

Because of the promotion policy in place, Defendants cannot now claim that Plaintiff did not submit a new application after the SI position was re-posted.  This was not a requirement for internal candidate selection. The court must reject Defendant's arguments on this issue.

### b. Plaintiff's gender as a female investigatory was a determining or motivating factor in the Denial of the SI Position

One of the vacant SI position in 2008 was vacated by Sheila Bennett, who had retired.  Chief Jackson had a poor working relationship with Sheila Bennett, who he had given a poor evaluation.  Consequently, Investigator Bennett filed gender discrimination claims against the Actions of Chief Jackson.

Also during this period of time several female investigators who had either resigned or terminated had filed OIG complaint or reported allegations of misconduct or irregularities by Delaney or Jackson.  These, include Investigators Webb (Exb# 6), Carroll, (Exb# 7) and Baraboo, (Exb# 11).  In June 2008, Plaintiff gave information in the OIG investigation into the allegation supporting some of the allegations made by the former female investigators.

All of the Investigators who were promoted to SI were male investigators.  Furthermore, all of the collateral assignments for ASI or RSI were given to male Investigators by Defendant Jackson. Defendant Jackson is a member of black executive organization who was sued for gender discrimination by female officers

2. **Plaintiff Can Prove Disparate Treatment on the Basis of Her Gender in Defendants' Rejection of Plaintiff for Volunteer Collateral Job Duties and Opportunities**

   a. **Denial of Volunteer Duties Providing Leadership and Management Skills That Enhance Promotion Opportunities is an Adverse Action**.

Defendant District of Columbia claims that summary judgment should be granted because Plaintiff did not establish that the volunteer opportunities for which Defendant failed to select her afforded extra pay or benefits, and that individuals over the age of 40 were selected.  In doing so, Defendant failed to cite any legal precedent in support.   For the reasons stated below, Defendants has failed to establish any grounds for summary judgment on this claim.

To establish disparate treatment, a plaintiff must demonstrate '"materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities"'.  *Saunders v. Mills*, 842 F. Supp. 2d 284, 291 (D.D.C. 2012) (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C.Cir.1999)).   '"Withdrawing an employee's supervisory duties ... [or] reassignment with significantly different responsibilities' can constitute

an adverse employment action." *Saunders*, 842 F. Supp. 2d at 292 (quoting *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C.Cir.2007)).

Precedence in this jurisdiction supports Plaintiff's argument that denial of volunteer opportunities constituted adverse action. For instance, in *Czekalski*, plaintiff brought a Title VII action against defendant, alleging gender discrimination in reassignment resulting in loss of supervisory and managerial duties. 475 F.3d at 362. The U.S. District Court, District of Columbia, granted defendant summary judgment, holding that plaintiff failed to establish adverse action, a similarly-situated comparator, and pretext. *Id.* at 362. The U.S. Court of Appeals, District of Columbia, reversed the U.S. District Court. *Id.* at 369. The appellate court held that plaintiff's lateral transfer, resulting in a significant drop in the number of employees and projects she oversaw, constituted an adverse action. *Id.* at 364. The appellate court rejected defendant's argument that plaintiff suffered no adverse action because she suffered no loss of salary, grade level, or benefits. *Id.* at 364.

More recently, in *Saunders*, plaintiff brought a Title VII against defendant, alleging race and gender discrimination, retaliation, and hostile work environment. 842 F. Supp. 2d at 287. Defendant moved to dismiss, claiming in part that plaintiff failed to establish adverse action. *Id.* at 287. The U.S. District Court, District of Columbia, denied defendant's motion in part, holding that plaintiff established adverse action by pleading that defendant removed her supervisory duties and oversight of project initiatives. *Id.* at 292. As in *Czekalski*, the court rejected defendant's argument that plaintiff suffered no adverse action because she suffered no loss of salary, grade level or benefits. *Id.* at 293 (citing *Czekalski*, 475 F.3d at 364).

In this case, Plaintiff has established that she suffered adverse action when Defendants rejected Plaintiff for voluntary collateral work duties and opportunities, including for Relief and

8

Acting Supervisor Investigator, for Acting Chief of Enforcement, for Training, Fleet, and Special Events Coordinator, for the 2009 Inaugural Detail unit and from other work opportunities.  Each of these positions consisted of duties involving supervision of employees and oversight of project-initiatives.  As in *Czekalski* and *Saunders*, Defendants in this case denied Plaintiff such responsibilities.   As a result, Plaintiff lost significant opportunities for managerial and supervisory training that would have enhanced her job exposure and skills.  In most cases, these opportunities were given to male Investigators.   In addition, Defendant D.C. selected Mr. Matthews and Mr. Steward, who both served in volunteer positions with similar duties, to be SIs, and failed to select Plaintiff to the same position.  Thus a reasonable jury may conclude that denial of such volunteer positions harmed her future employment opportunities.  Moreover, the courts in *Czekalski* and *Saunders* rejected the only argument that Defendant asserts regarding adverse action – that Plaintiff did not establish any loss in extra pay or benefits.  Accordingly, this Court must deny Defendant's motion for summary judgment.

> **b.   Plaintiff was Improperly Denied Collateral Positions as Relief and Acting Supervisor Investigator**

Defendant had a policy of sending emails to Investigators requesting volunteers for relief and acting supervisor collateral duties or just announcing his selection for these positions or duties as he favored.  On September 24, 2008, Defendant Jackson announced that ASI Matthews would be the Acting Chief of Enforcement (ACE) for 5 days. (Exb# 36)   On October 8, 2008, Defendant Jackson chose Craig Stewart to be the ASI and Jermaine Matthews to be the ACE. (Exb# 37) On December 22, 2008 Jackson chose ASI Matthews to re the ACE for five days. (Exb# 44)   On June 10, 2009, Plaintiff emailed Defendant Jackson that Plaintiff wanted to volunteer for a Relief Supervisor Investigatory (RSI) work opportunity that Defendant Jackson

was requesting volunteers for.  (Exb# 48)  However, on June, 11, 2009, Defendant Jackson choose Craig Stewart to be the ASI, while Gregory Price was on leave.  (Exb# 49)

For the times when Plaintiff volunteered, Plaintiff was never selected, and she was never selected without volunteering.  On one occasion, Relief supervisor was offered to Plaintiff, she declined because Defendants refused to pay Plaintiff for having the phone on call in violation of their own policy.  Plaintiff was entitled to be paid for working the phone as on call RSI. (01/14/13 On-Call Pay Policy, hereinafter (Exb# 75)

The two supervisors who were consistently selected by Defendants, Craig Stewart and Matthews were given the permanent PI positions.  Defendants Policy allow Jackson to choose at his own leisure, without any etc., knew that Matthews and Stewart were less qualified that Plaintiff, had prior performance issued involving misconduct, etc., yet chose them.

### c.  Plaintiff was Improperly Rejected for Important Collateral Duties & Responsibilities

In this case, Plaintiff has established that she suffered adverse action when Defendants rejected Plaintiff for voluntary collateral work duties and opportunities. Each of these positions consisted of duties involving supervision of employees and oversight of project-initiatives that would have enhanced Plaintiff promotional opportunities and Job prospects in terms of transfers.

### i.  Plaintiff was Improperly Removed From Inauguration Committee

On June 6, 2008, Plaintiff was one of seven investigator selected to work the 2009 Inaugural Details.  (Exb# 54) However during the credentialing process in November 2008, Plaintiff was excluded from working the Inaugural Details.  (Id at 2) However, on or about November 18, 2008, Plaintiff was replaced by, Camille Robinson, an African American female under 40 years of age.  Mrs. Robinson, who is not a member of the Enforcement division, and

has no enforcement powers, was hired one (1) month before Plaintiff was removed from the Inaugural committee.

On September 11, 2008, in responds to a request from Defendant Jackson, Plaintiff volunteered to "handle the coordination of activities and submission of documents for ABRA's detail for the inauguration".   However, on September 11, 2008, Defendant Jackson chose Investigators Shoemaker and Price to handle the coordination assignments and documentation for the 2009 Inauguration Committee.  (Exb# 55).  No reason was given for this arbitrary decision.

For Plaintiff' removal from the Inaugural Detail, Defendants proffers a non-discriminatory reason that Plaintiff did not report to the Secret Service on a scheduled time and day to obtain her photo ID and credentials.  Plaintiff nonetheless has demonstrated that Defendant's proffered reason is a pretext for discrimination by establishing all three *Aka* factors: (1) Plaintiff has established *prima facie* cases for disparate treatment and retaliation; (2) Plaintiff has attacked Defendant's reason with evidence that Defendant permitted Ms. Robinson to join the Committee *after* she missed the scheduled date; that Defendant has failed to produce any evidence that it was required to bar any employees who missed the scheduled date from participating in the Committee; and that Mr. Matthews, who was Plaintiff's supervisor, informed Plaintiff that she could retrieve her ID and credentials at a later date, but failed to provide such date; and (3) Plaintiff has established additional material facts demonstrating discriminatory and retaliatory animus, as established above.  Because Plaintiff has established material facts demonstrating that Defendant's reason is untruthful, a reasonable jury may conclude that Defendant is concealing a discriminatory and retaliatory motive.   For this reason, Summary Judgment must be denied.

**3. Plaintiff Can Prove Disparate Treatment on the Basis of Her Gender in Regards To Other Deliberate Adverse Personnel Against Plaintiff by Defendants.**

  **a. Defendants Directly Sabotaged Plaintiff's 2009 Performance Evaluation, Resulting in Plaintiff Losing Step Increase and Performance Incentives**

Sometime between October 1, 2009 and November 13, 2009, Defendant Jackson performed Plaintiff's Annual performance evaluation. In the core competency of Customer Service, Defendant Jackson gave Plaintiff a numeric rating of 2, and commented: "Investigator Dantzler is aware of ABRA's efforts to provide quality customer service. ABRA management has spoken to Investigator Dantzler regarding her style of delivering communications to management personnel, co-workers, and customers."

Although Plaintiff received an overall rating of 3.45 and ranked in the "valued performer" category as opposed to the "Highly Effective Performer" numeric ranking range of 3.50 – 4.49. (Exb# 67) As a result of failing to reach the highly effective performer rating, Plaintiff suffered the loss of Incentive and Step Increases. Plaintiff appealed Defendant's Jackson's numeric ranking. However, it took until May 2010, and many emails, and phone calls by Plaintiff to her superior before Defendant Moosally reversed Defendant Jackson's malicious numeric ranking of 2.0 and gave Plaintiff a 3.0. (Exb# 69)

  b. <u>**Defendants Denied Plaintiff Overtime Work Opportunity**</u>

Plaintiff has established a *prima facie* case regarding race, gender, and age discrimination: (1) she suffered adverse action because Mr. Jackson denied her pay for overtime hours that she worked; although she did not allege a comparator, Plaintiff did establish the *Stella* factors in that (2) Plaintiff was meeting the legitimate expectations of the employer; and (3) Defendant did not eliminate the overtime duties that Plaintiff worked.

Plaintiff has established a *prima facie* case of retaliation because the adverse action was among a list of continuous and repeated adverse actions that Defendant began taking against Plaintiff within a month of her protected disclosures.

Defendant asserts a legitimate, non-discriminatory reason for denial of overtime: Plaintiff did not receive advanced approval to work the overtime.  <u>Motion to Dismiss Memorandum at 11-12</u>.  Plaintiff, however, has rebutted Defendant's explanation by establishing all three *Aka* factors:  (1) Plaintiff has established *prima facie* cases of disparate treatment and retaliation; (2) Plaintiff has attacked Defendant's reason by establishing that Mr. Matthews had provided advanced approval to work overtime to Plaintiff; Mr. Matthews told Plaintiff that she did not receive pay because too many people worked those same hours – an explanation that differs from Defendant's reason; and Defendant allowed Plaintiff to work the overtime hours, indicating that she was authorized to do so; and (3) Plaintiff has established additional evidence of discriminatory and retaliatory intent, as demonstrated above. For this reason, Summary Judgment must be denied.

## II.   The Court should Deny Defendant's Requests for Dismissal of Count Three - Retaliation In Violation Of Title VII (Against Defendant DC)  & Count Four - Retaliation in Violation of DC Human Rights Act (Against All Defendants)

To established a prima facie case of retaliation under Title VII, Ms. Martin must show (1) she engaged in statutorily protected expression or activity; (2) Adverse action taken against Plaintiff; (3) Causal connection between protected activity and adverse action; Protected Activity Motivating Factor (4); <u>Broderick v. Donaldson</u>, 437 F.3d 1226, 1233 (D.C. Cir. 2006).

To establish a causal connection for a retaliation claim, the plaintiff must show close temporal proximity between the protected activity and the adverse employment action.  The plaintiff must present evidence that his protected activity preceded the adverse action and that the

person who engaged in the adverse action was aware of his protected activities before taking adverse action in a timely fashion.  <u>Sheffell v. State Farm Mutual Auto Insurance Co</u>., 202 F. Supp.2d (D. Va. 2002)

To establish adverse action in support of a retaliation claim, Plaintiff must demonstrate that the action in question could dissuade a reasonable employee from engaging in protected action.  *Burlington Northern & Santa Fe Railway*, 548 U.S. 53, 57 (2006) (cited by *Saunders*, 842 F. Supp. 2d at 292).  "[T]he proscription against retaliation sweeps more broadly than the proscription against discrimination." *Gaujacq v. EDF, Inc.,* 601 F.3d 565, 577 (D.C.Cir.2010) (citing *Burlington*, 548 U.S. at 66–67).  "Unlike discriminatory actions, retaliatory actions need not be employment related or occur in the workplace, to be prohibited by Title VII, nor must they result in a 'a materially adverse change in the terms or conditions of [one's] employment."' *Saunders*, 842 F. Supp. 2d at 292 (quoting *Burlington Northern*, 548 U.S. at 67, 70).  "Whether an action 'is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."'  *Saunders*, 842 F. Supp. 2d at 292 (quoting *Burlington Northern*, 548 U.S. at 70).

For instance, in *Saunders*, the court held that plaintiff's loss in supervisory responsibilities constituted retaliatory adverse action under Title VII.  842 F. Supp. 2d at 293. The court determined that because plaintiff's diminished responsibilities constituted discriminatory adverse action, plaintiff had also established retaliatory adverse action.  *Id.* at 293. The court determined that "'[a]dverse actions' in the retaliation context encompass a broader sweep of actions than those in a pure discrimination claim."'  *Id.* at 293 (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1192 n. 4 (D.C.Cir.2008)).

14

In this case, Plaintiff has demonstrated retaliatory adverse action.  As in *Saunders*, Defendants' denial of Plaintiff of significant supervisory responsibilities could dissuade a reasonable employee from taking further protected activity.  As in *Saunders*, because denial of supervisory duties constitutes discriminatory adverse action, it also constitutes retaliatory adverse action.  Accordingly, a reasonable jury could determine that Defendants' denial of supervisory responsibility was taken in retaliation to Plaintiff's protected activity pursuant to the First Amendment, WPA, Title VII, and ADEA.

The undisputed facts show that Ms. Martin engaged in protected activities from as early as June 2008 when she participated in the OIG investigations.  Her subsequent complaints to ABRA's EEO officer Ms. Fletcher, then to the OHR were further protected activities. The denial of the supervisor investigator positions and denial of other employment benefits, as outlined above, are closely related in time to Ms. Martin's protected activities.

a. **Defendants Retaliated against Plaintiff Due to Her Participation in the June 2008 OIG Investigation Into Allegations Against Delaney and November 2008 Special Evaluation by the AIG.**

In June 2008 volunteered to give information in an OIC investigation against Delaney.  In November 2008 Plaintiff again volunteer to give information to an AIG special investigation in to alleged illegal practices at ABRA.  Consequently, in June 2008, Plaintiff was denied collateral duties as a relief Supervisor Investigator.  In October, 2008 Plaintiff was denied an interview for a G-13 promotion as a SI.  It is clear that there is casual connection between the time of Plaintiff's protected  activities and the adverse actions taken by Defendants against Plaintiff.

**b.  Defendants Retaliated against Plaintiff Due to Her September 2009 EEO Complaint and her Participation in the OIG Investigation Into Allegations Against Delaney.**

In September 2009, Plaintiff participated in a Special Evaluation of ABRA.   In November 2009 Moosally announce the promotion of Matthews and Stewart for the two SI position.  2009 unfairly gave poor numeric rating causing loss of incentive pay or step increases, unduly delayed resolution of evaluation protest;

**III.    The Court should Deny Defendant's Requests for Dismissal of Count Five - Disability Discrimination In Violation Of The ADA  (Against Defendants) & Count Six Violation Of The Rehabilitation Act (Against Defendants)**

Defendant claims that Plaintiff's failure to accommodate claims fails because Plaintiff does not have a disability within the meaning of the ADA and the fact that Defendants provided Plaintiff with a cassette tape recorder

To prevail on her failure to provide reasonable accommodation claim, Plaintiff must prove: "(1) she had a disability within the meaning of the ADA; (2) her employer had notice of his disability; (3) she could perform the essential functions of the position with reasonable accommodation; and (4) her employer refused to make such accommodation. *See Gordon v. District of Columbia,* 480 F.Supp.2d 112, 115 (D.D.C.2007).   But "[a]n employer is not required to provide an employee that accommodation [she] requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284, 1301 (D.C.Cir.1998), quoting *Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir.1996). The D.C. Circuit has defined a "reasonable accommodation" as one "employing a method of accommodation that is reasonable in the run of cases...." *Barth,* 2 F.3d at 1187 (emphasis omitted); *see also Norden v. Samper,* 503 F.Supp.2d 130, 145 (D.D.C.2007) ("[A]ccommodations are reasonable if they allow the employee to perform the essential functions of the job without imposing undue hardship on the employer.").

16

1. **Plaintiff had a disability with the meaning of the ADA:**

The Plaintiff is able to show that the limitation is substantial.  The Plaintiff must show that the impairment limits an activity that constitutes a major life activity under the ADA. EEOC regulations implementing Title I of the ADA define the term "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i). A regulation promulgated by the Justice Department contains the same definition of the term "major life activities" for purposes of Section 504 of the Rehabilitation Act, see 28 C.F.R. 41.31(b)(2), as does a regulation promulgated by the Department of Labor for purposes of Section 503 of the Rehabilitation Act, see 41 C.F.R. 60-741.2(p).

Plaintiff is a disabled person as intended by the ADA, in that in December 2008, Plaintiff was diagnose bilateral carpal tunnel syndrome, which resulted a physical impairment that substantially limits one or more of Plaintiff's major life activities, including grasping, writing, typing, holding objects, pulling, pushing, lifting, taking care of personal needs and cleaning. Defendant also regards Plaintiff as having such an impairment, as set forth under 42 U.S.C. § 12102(2) (A), (C).

The Plaintiff will be able to prove the EEOC's Title I regulations provide that an impairment "substantially limits" an individual if, as a result of the impairment, the person is (i) "[u]nable to perform a major life activity that the average person in the general population can perform," or (ii) "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or

duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. 1630.2(j) (1).

### 2. Defendant Did Not Provide Plaintiff with reasonable accommodation:

Defendant provided Plaintiff with a cumbersome cassette tape recorder; could not be used in the field; the reports, citations, computer use, involves substantial amount of typing; promise to make reasonable accommodation in from of technology.  The volume or reports, citations, and use of computer work was essential part of Plaintiff's job (Exb#-).  Defendants knew that providing Plaintiff with voice recognitions software Plaintiff could perform this essential function of her job.  Defendant's promise to "research" Plaintiff's request for the technology, which took more than one year.  Defendant had knowledge that the ODR had pilot grant program providing up to $10,000 in funding for adaptive technology to accommodate employees with disabilities, such as carpel tunnel syndrome.

### 3. Defendant Refuse to Provide Plaintiff with reasonable accommodation:

Defendant provided  Plaintiff with a cumbersome cassette tape recorder; that could not be used in the field; the reports, citations, computer use, involves substantial amount of typing; promise to make reasonable accommodation in from of technology Defendants denied Plaintiff from benefiting from the Office of Disability Rights pilot program on reasonable accommodation for disabled employees, using adapative quipents and technology.

### 4. Defendant Treated Plaintiff as A Person with a ADA Disability

Defendant District of Columbia claims that summary judgment should be granted as to Count Five and Six because Plaintiff cannot prevail of these claims.  Count Five relates to

Disability Discrimination in Violation of the ADA and Count Six relates to the Defendant's violation of the Rehabilitation Act.

Under the ADA, a person is disabled (1) If he suffers an impairment; (2) the impairment limits an activity that constitutes a major life activity under the ADA; (3) the limitation is substantial." Haynes v. Williams, 198 F.3d 857 (D.C. Cir. 1999). To be substantially limited in the specific major life activity of performing manual tasks, therefore, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term. *Toyota v. Williams (SCt. No. 00-1089; also see* Haynes v. Williams, 198 F.3d 857 (D.C. Cir. 1999).

**5.  Defendants Treated Similarly Situated Investigators who did Not Have A Disability More Favorably that Plaintiff**

Plaintiff's fellow investigators, both male and females were assigned regular cases and collateral duties.  However, Defendant withheld cases from Plaintiff, and verbally warned Plaintiff against assisting other Investigators which was a usual practice.

**IV.  The Court should Deny Defendant's Requests for Dismissal of Count Seven Negligent Hiring And Retention (Against DC and Moosally)**

a)      In order to establish a claim for negligent hiring or retention, a claimant must prove that: 1) an employment relationship existed between the employer and the offending employee; 2) the employee proximately caused the plaintiff's injury; 3) the employer knew or should have known by the exercised of diligence and reasonable care that the employee was capable of inflicting harm of some type; 4) the employer failed to use proper care in selecting, supervising or retaining the employee; and, 5) the employer's breach of duty likewise proximately caused the plaintiff's injury. (Evans v. Morsell, 284 Md. 160, 395 A.2d 480 (1978)

(See also, Penhollow v. Board of Commissioners, 116 Md. App. 265 (1997); Schultz v. Bank of American, N.A., 413 Md. 15, (2010).      An employer has an obligation to its employees and others who will come in contact with them to provide a safe and productive working environment.

DC, Mr. Brodsky and Mr. Moosally had a duty to use reasonable care in selecting and retaining employees who were competent and fit to perform the duties of a Supervisor.  Upon information and belief, DC, Mr. Brodsky, Mr. Moosally and Mr. Graham had actual knowledge of Jackson's propensity to discriminate against similarly situated employees, as Defendant Jackson has had other complaints of a similar nature filed against him.

## V.      The Court should Deny Defendant's Requests for Dismissal of Count Eight - Violations Of DC Whistleblower's Act (Against Defendants)

### 1.      Plaintiff's D.C. Whistleblower Act Claim is Timely

Defendant claims that Plaintiff's retaliation claim pursuant to the D.C. Whistleblower Act is time-barred, alleging that "[u]nder the statute, a plaintiff is required to file suit within one year of the alleged injury."  Motion to Dismiss  Memorandum at 13.  This is an incorrect reading of the WPA.  D.C. Code § 1-615.54(a)(2) states that "[a] civil action shall be filed within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first."  This Court has determined retaliatory adverse action to be a "violation" under the WPA limitations period.  See Clayton v. Dist. of Columbia, 931 F. Supp. 2d 192, 203-04 (D.D.C. 2013) (holding that reclassification of duties constituted violation).

In this case, the first violation would have been the rejection of Plaintiff for the SI position in November 2008.  In October 2008 Plaintiff asked Defendant Jackson why Plaintiff was not interviewed for the SI position and he replied that Plaintiff did not have one year time in

grade GS-12.   Plaintiff accepted the explanation.   However, one of the SI position remained

open, and in December 2008, and February 2009.   After SI Price was fire in June 2009, two SI

position opened. November 20, 2009 Plaintiff filed a complaint with the EEO officer, because

Complainant believe she was discriminated.   Plaintiff filed a complaint with this Court on June 9,

2011.   Thus all violations that occurred from June 9, 2010 through June 9, 2011 are timely,

including, but not limited to:

- On July 20, 2010, Mr. Steward spoke with Detective Carter without Plaintiff's knowledge, resulting in an alleged "complaint" being filed against Plaintiff;
- On August 14, 2010, Mr. Steward demanded that Plaintiff stop assisting investigators with their caseloads – a task that was part of Plaintiff's duties; and
- On August 19, 2010, Mr. Steward refused to show Plaintiff documentation of Detective Carter's alleged "complaint" against her and threatened to discipline her.

In addition, all adverse actions in this case that occurred prior to June 9, 2010 are timely

under the WPA.   There is a presumption that a plaintiff learns about a violation when the adverse

action occurs.   *See Sharma v. District of Columbia*, 791 F.Supp.2d 207, 214 (D.D.C.2011);

Nonetheless, the plaintiff may argue that she did not learn that the violation was retaliatory until

some later date, and that the statute of limitation starts running at that later date.   *Clayton*, 931 F.

Supp. 2d at 203 (citing *Payne v. District of Columbia*, 808 F.Supp.2d 164, 171 (D.D.C. 2011)).

For instance, in *Clayton*, defendant moved to dismiss, alleging that plaintiff's WPA was

untimely because defendant reclassified her position more than one year before she initiated civil

suit.   *Id.* at 203-04.   The Court denied defendant's motion, holding that plaintiff alleged that she

learned that the action was retaliatory when her termination became effective within the one-year

limitations period.   *Id.* at 204.

In this case, Plaintiff did not learn that adverse actions that occurred before June 9, 2010 were retaliatory until she filed her formal retaliation complaint with OCHR on July 19, 2010. All adverse actions taken against Plaintiff, therefore, fall within the WPA's limitations period.

2. **Plaintiff Has Established that Ms. Delaney, Mr. Steward and Mr. Jackson Were Aware of Her Protected WPA Activity**.

Defendant alleges that Plaintiff has not established a retaliation claim under the WPA, First Amendment, and Title VII because she did not establish that Ms. Delaney, Mr. Steward, and Mr. Jackson knew of her protected disclosures to the OIG and the Board, and thus has not established a causal connection.  Motion to Dismiss Memorandum at 14-15.   However, Plaintiff has established that such individuals were aware of Plaintiff's protected WPA and First Amendment disclosures.  For example:

- On May 15, 2007, Ms. Delaney denied Plaintiff's request to disclose instances of fraud, waste, and abuse to the Board, including illegal conduct by Ms. Delaney;
- On June 20, 2008, Plaintiff notified Ms. Delaney that she intended to disclose information to the OIG inspector.  On June 21, 2008, at 3am, Defendant Delaney forwarded the email to Defendant Jackson with the ominous message "fyi".
- There were no policies, procedures and oversight in place to prevent Defendant's Delaney and Jackson from not accessing the information.  They controlled all the processes and enforcement authorities.

The facts shows that Defendant Delaney and Defendant Jackson were aware of Plaintiff's protected activity and took adverse actions against her as a result.

**VI.    The Court should Deny Defendant's Requests for Dismissal of Count Nine -
Violation Of 42 USC 1983 First Amendment Retaliation Free Speech / Petition
Clauses (Against Defendants)**

      1.    <u>**An Employee Who, Outside of Her Ordinary Course of Duties, Disclosed
Fraud and Abuse of Public Funds and Functions Engaged in Protected
First Amendment Activity**</u>**.**

If an employee speaks in the ordinary course of her duties, then it is not protected under
the First Amendment; however, if that employee spoke as a citizen on a matter of public concern,
then the inquiry turns to whether the relevant government entity had an adequate justification for
treating the employee differently from any other member of the general public.  *Garcetti v.
Ceballos,* 547 U.S. 410 (2006).  In this case, Defendant fails to mount any argument that ABRA
had adequate justification in discriminating against Plaintiff; rather, it relies on the assertion that
Plaintiff's disclosure does not fall under the First Amendment.

Recently, the Supreme Court in *Lane v. Franks*, 134 S.Ct. 2369 (2014) made clear that
protected First Amendment speech may concern the speaker's employment duties.  In *Lane*,
plaintiff sued defendant for First Amendment retaliation under Section 1983 because he was
discharged after testifying in court against a former employee regarding public funds corruption.
*Id.* at 2376.  The trial court granted defendant summary judgment, and the Eleventh Circuit
affirmed, holding that plaintiff did not speak as a citizen on a matter of public concern.  *Id.* at
2376-77.  The Supreme Court reversed in part and remanded, holding that plaintiff engaged in
protected First Amendment speech.  *Id.* at 2377.  The Court rejected the lower court's
determination that the speech was not protected because it related to public employment or
concerned information obtained through public employment.  *Id.* at 2379.  Rather, "[t]he critical
question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an
employee's duties, not whether it merely concerns those duties."  *Id.*   The Court further

23

determined that plaintiff's testimony was protected because there was no official employment

duty compelling him to testify.  *Id.* at 2378.  The Court emphasized the importance of protecting

speech exposing public corruption:

> It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials—speech by public employees regarding information learned through their employment—may never form the basis for a First Amendment retaliation claim. Such a rule would place public employees who witness corruption in an impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs.

*Id.* at 2380.

Acknowledging that *Lane* may expand First Amendment protection, the U.S. Circuit

Court, District of Columbia stated:

> Nonetheless, it is possible that *Winder's* [*v. Erste*, 566 F.3d 209, 215 (D.C.Cir.2009)] broad language, interpreting *Garcetti* as leaving an employee unprotected when he reports conduct that "interferes with his job responsibilities," could be in tension with Lane's holding that an employee's speech is unprotected only when it is within the scope of the employee's "ordinary job responsibilities,", or "ordinary job duties," In particular, the use of the adjective "ordinary"—which the court repeated nine times—could signal a narrowing of the realm of employee speech left unprotected by *Garcetti*. Neither *Garcetti* nor any other previous Supreme Court case had added "ordinary" as a qualifier.

*Mpoy v. Rhee*, 2014 WL 3407531 *at 7 (D.C. Cir. July 15, 2014) (dicta) (affirmed judgment on

pleadings for defendant on other grounds).

In this case, Plaintiff has established that she engaged in protected First Amendment

speech.  As in *Lane*, Plaintiff's spoke out on a matter of public concern regarding abuse of public

funds and resources.  As in *Lane*, Plaintiff spoke as a citizen, outside the ordinary course of her

duties, by voluntarily disclosing protected information to the Board and to the OIG.  Plaintiff had

no ordinary duty to report to the Board – indeed, Ms. Delaney attempted to block her from speaking to the Board.   Nor was it in Plaintiff's ordinary course of duty to speak to the OIG investigator in the course of a special, *ad hoc* investigation.   In June 2008, Plaintiff requested to speak to the OIR regarding their investigation into multiple complaints against Defendant Delaney that she was improperly altering Investigators reports on certain establishments.   *Lane* rejects Defendant's argument that the content of Plaintiff's speech concerned her duties.   In fact, *Lane* emphasized the need to extend First Amendment protection to employees who gather information regarding misuse of public resources in the course of employment and subsequently disclose such information outside the scope of ordinary duties.   Plaintiff's speech clearly falls within such context.   The fact that one Board member, Mr. Brodsky, may have been Plaintiff's supervisor is irrelevant because such disclosure was not within her ordinary duties, and was made to the Board of a public bureau that is designed to act in the public's benefit.   Thus this Court must deny Defendant's request for summary judgment.

### 2.   Defendant Has Failed to Assert a Valid Argument That Plaintiff's Section 1983 Claim Implicating a Municipality is Not Valid.

Defendant asserts that summary judgment must be granted because Plaintiff has not asserted that an implementation of a government policy or custom has injured her.   Motion to Dismiss Memorandum at 16-17.   It is true that, prior to *Lane*, a Section 1983 claim of First Amendment retaliation had to have been supported by a showing that it was in accordance with government policy or custom.   *See, e.g., Tabb v. Dist. of Columbia*, 605 F.Supp.2d 89, 95-96 (D.D.C. 2009) (single act of retaliation by non-final policymaker did not confer liability to municipality).

The holding in *Lane*, however, implies that a plaintiff need not show that a government policy or custom was the moving force behind First Amendment retaliation against speech

concerning public corruption to confer liability onto a municipality.  The Supreme Court in *Lane* held that plaintiff established a valid Section 1983 First Amendment claim without considering whether defendant terminated plaintiff pursuant to government policy or custom.  134 S.Ct. at 2377.  Indeed, the facts in *Lane* suggest that defendant only exercised hiring and firing authority in retaliating against plaintiff.  *See id.* at 2376.  As the Court's analysis made clear, it would be "antithetical" for purposes of public policy to allow speech concerning misuse of public funds to fall outside the scope of the First Amendment when such information is vital to preventing such misuse.  *Id.* at 2380.

Thus conferring liability onto a municipality for First Amendment retaliation, regardless of whether it is pursuant to policy or custom, is consistent with *Lane* because it encourages employees who have access to information regarding corruption to act as concerned citizens and disclose such information without fear of retaliation.  Requiring a plaintiff to demonstrate that such retaliation was pursuant to policy or custom, on the other hand, would chill such disclosures being made because very few, if any, plaintiffs would prevail in such a retaliation claim for two reasons.  First, it is highly unlikely that any municipality policy or custom would cover speech made *outside* a government employee's ordinary course of duties.  Second, a government official or supervisor who is stealing from the public and misusing public resources will likely act outside the bounds of official policy or custom in attempting to suppress and conceal any protected disclosures.  Thus, in light of *Lane*, this Court must deny summary judgment.

Even assuming *arguendo* that Plaintiff in this case is required to demonstrate government policy or custom, Plaintiff has met such burden.  "A person's actions may constitute official municipal policy if the person has final policy making authority [under] state law."  *Banks v. Dist. of Columbia*, 377 F. Supp. 2d 85, 91 (D.D.C. 2005) (internal citations and quotation marks

omitted).   In *Banks*, plaintiff sued defendant for violation of due process and equal protection under Section 1983 because the Director of Dept. of Mental Health terminated her.  *Id.* at 91. The Court denied dismissal and summary judgment, holding that liability conferred to the municipality because the Director had final policy making authority.  *Id.* at 92.  The Court determined that the Director was "responsible for the administration of the Dept. of Mental Health by exercising necessary and appropriate power; making personnel decisions; establishing a system of care for patients; planning the delivery of mental health services; enforcing rules and regulations; and contracting on behalf of the Dept. of Mental Health."  *Id.* at 92.

In this case, Plaintiff has established that Ms. Delaney, who was the Director of ABRA, exercised final policy-making authority in taking adverse actions against Plaintiff.  Like the director in *Banks*, Ms. Delaney was responsible for ABRA's administration, made personnel decisions, established a system of operation for ABRA, planned and implemented the delivery of ABRA's services, and enforced ABRA's rules and regulations.  In exercising such authority, Ms. Delaney reprimanded Plaintiff for talking to the OIG, denied her promotion to SI, and took a number of other retaliatory actions against Plaintiff.  Thus Plaintiff has established a basis to confer liability onto Defendant D.C. supporting a denial of the Defendant's Motion for Summary Judgment.

## VII.   The Court should Deny Defendant's Requests for Dismissal of Count  Ten  Age Discrimination In Violation Of ADE (Against Dc)

### 1.   A Reasonable Jury May Determine That Denial of Supervisory Volunteer Duties Resulting in Wide Age Gap Between Selectees, With No Supporting Legitimate, Non-Discriminatory Reason, Constitutes Age Discrimination.

Although Defendant D.C. fails to clearly state so, Defendant seems to suggest that Plaintiff has not established a valid age discrimination claim because individuals over the age of

40 were selected for volunteer positions. Yet Plaintiff has established material facts demonstrating that of the three employees selected to Training, Fleet, and Special Events Coordinator positions, only one employee was over the age of 40. That employee, Mr. Butler, was 62 years old – approximately *twenty years* older than Plaintiff. The other two selectees were under 40 and significantly younger than Plaintiff. Thus by excluding Plaintiff from these positions, Defendants ensured that no employee in their forties or fifties were selected. Thus a reasonable jury could infer a discriminatory motive based on age.

Even assuming *arguendo* that Defendants selected multiple employees over 40 for similar volunteer positions, Defendant's motion for summary judgment would still fail. In *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 309 (1996), a 56 year-old plaintiff sued defendant for discharge and replacement with a 40 year-old employee in violation of the ADEA. The trial court granted defendant summary judgment, and the Fourth Circuit Court of Appeals affirmed, holding that plaintiff had failed to establish a similarly-situated comparator outside of his protected class. *Id.* at 309. The Supreme Court reversed and remanded, holding that the fact that an ADEA plaintiff is replaced with someone outside of his protected class is not a proper element of a *prima facie* case. *Id.* at 312. The Supreme Court determined that the ADEA prohibited discrimination because of an employee's age, not because of membership in a protected class, and the ADEA's requirement that a plaintiff be 40 years or older is merely a limitation on a protected class. *Id.* at 312. A significant age disparity between a plaintiff and selectee may be probative of discrimination due to age. *See id.* at 312-13 (dicta) (replacement of an employee over 40 with an employee significantly younger is probative of discriminatory intent).

Relying on *O'Conner*, the U.S. Circuit Court, District of Columbia, in *Stella v. Minetta*, 284 F.3d 135, 145-46 (D.C. Cir. 2002) provided guidance on how a plaintiff may establish an inference of discriminatory intent without establishing a similarly-situated comparator.  In *Stella*, Title VII plaintiff sued defendant for discriminatory discharge based on gender.  *Id.* at 138-39.  The U.S. District Court, District of Columbia, granted defendant summary judgment in part, holding that plaintiff did not establish that defendant replaced her with a male employee.  *Id.* at 139.   The Circuit Court reversed and remanded in part, holding that it was unnecessary to establish a similarly-situated comparator to establish a *prima facie* case of discrimination.  *Id.* at 146.  The Circuit Court determined that, in the absence of such showing, "a plaintiff must show that his rejection is not attributable to the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought."  *Id.* at 145 (quoting *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358 n. 44, (1977)) (internal quotation marks and citations omitted).  "Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one."  *Id.* at 145 (quoting *International Brotherhood of Teamsters*, 431 U.S. at 358 n. 44) (internal quotation marks omitted).

In *Czekalski*, the Circuit Court held that plaintiff established a *prima facie* case of gender discrimination because there was no showing that her reassignment and loss of supervisory duties were due to any lack of plaintiff's qualifications or elimination of her position.  475 F.3d at 365-66.  The Court determined that in absence of a similarly-situated comparator, a plaintiff alleging discriminatory reassignment and loss of supervisory duties may establish a *prima facie* case by satisfying the *Stella* factors.  *Id.*

In this case, the criteria under *Stella* have been met.  Plaintiff has established that she was meeting the qualifications of her position as an Investigator when Defendants failed to select her for important volunteer positions and collateral duties.   None of the coordinator positions were eliminated; rather, they were filled with individuals who were significantly older or younger than Plaintiff.  Thus Plaintiff has established a *prima facie* case of age discrimination.

Defendant has failed to articulate any legitimate, non-discriminatory reason to rebut Plaintiff's inference of discrimination.  *See* Motion for Summary Judgment Memorandum at 11. Instead, Defendant states that "it is undisputed that plaintiff was been [sic] selected for other subsequent volunteer positions." *Id.*  Defendant, however, fails to provide any legitimate, non-discriminatory reason why Plaintiff was not selected for the *coordinator* positions to which she applied.  When a defendant fails to rebut a plaintiff's *prima facie* case, a reasonable jury may infer discrimination.  *See Aka*, 156 F.3d at 1292-93 (dicta) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567 (1978)).  Accordingly, a reasonable jury may infer a discriminatory motive from Defendant's action.  Thus summary judgment must be denied.

## VIII.    The Court should Deny Defendant's Requests for Dismissal of Count Eleven Violation of 42 U.S.C. § 1985 (Against Defendants)

a)       A conspiracy; and; remedies only those conspiracies which deny equal protection under the law.     2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws;  3) an act in furtherance of the conspiracy 4)a person is either injured in his person or property, or deprived of any right, or privilege of a US citizen .42 U.S.C.S. § 1985(3) 42 U.S.C.S. § 1985(3),Burnett v. Harma, 511 F. Supp. 2d 136, 2007 , Bush v. Butler, 521 F. Supp. 2d 63, 2007 .

Defendants have conspired for the purpose of depriving plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws by denying plaintiff promotion to supervisory investigator and acting supervisory investigator, denying Plaintiff management training, denying Plaintiff volunteering opportunities, denying Plaintiff work assignments, denying Plaintiff overtime work and overtime pay, and singling out Plaintiff for unusually burdensome work.

## IX.   The Court should Deny Defendants' Requests for Dismissal of Count Twelve - Violation Of 42 U.S.C. § 1986 (Against Defendants)

To establish a violation of Section 1986, Ms. Martin must show that the defendants (1) having knowledge that any of the wrongs conspired to be done, and mentioned in 42 U.S.C.S. § 1985, are about to be committed, having power to prevent or aid in preventing the commission of the same neglects or refuses so to do if such wrongful act be committed. Alexander v. Wash. Gas Light Co., 481 F. Supp. 2d 16, 2006 U.S. Dist. LEXIS 95702 (D.D.C., February 23, 2006, Decided )

Defendants had knowledge at all material times that the wrongs conspired to be done as alleged in the second claim for relief were about to be or were in the process of being committed during the period from early 2008 through the date of this complaint.  Defendants have the power to prevent or aid in preventing the commission of these wrongs; yet, they have neglected and refused to do so.  Defendants could have by reasonable diligence prevented the wrongs alleged in paragraph 217 by promoting Plaintiff to supervisory investigator, selecting Plaintiff for acting supervisory investigator and volunteer positions, approving Plaintiff's overtime pay, approving Plaintiff's request for reasonable accommodation or by granting Plaintiff some other effective remedy to redress the deprivation of her rights.

## X.    CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff  respectfully request that the

Court Deny Defendants' Motion to Dismiss and Motion for Summary Judgment.  Plaintiff

has legal proof of her claims to be put before a jury of her peers.


 Dated: July 30, 2014



Respectfully Submitted,


*/s/ George A. Rose*

George A. Rose, Esq. (Bar No. 26086)
Rose Law Firm, LLC
200 E. Lexington St., Suite 800

Baltimore, MD 21202
Phone: 410-727-7555/Fax: 410-727-7585

Email: grose@roselawfirm.net


*/s/Jessie Lyons Crawford*
Jessie Lyons Crawford (*pro hac vice*)
Law Office of Jessie Lyons Crawford, Esquire
2601 Maryland Avenue
Baltimore, Maryland 21218
(410) 662-1230/Fax: (410) 662-1238
Email: attorneyjlcrawford@verizon.net
*Counsel for Plaintiff*