P000216

THE DISTRICT OF COLUMBIA
OFFICE OF HUMAN RIGHTS

*RECEIVED
2010 MAR 26  PM 4: 48
OFFICE OF HUMAN RIGHTS*

In Re:  Felecia Dantzler              )
                                      )
                Complainant           )
                                      )
        v.                            )  Docket No. 10-235-DC (CN)
                                      )
D.C. Alcoholic Beverage Regulations   )
Administration                        )
                Respondent            )

---

## Request for Information

**1. Give the correct name and address of the facility named in the charge.  Briefly describe the nature of your business.**

The Alcoholic Beverage Regulation Administration (ABRA), is located at 1250 U Street, N.W., Suite 300, Washington, D.C.  20009.  ABRA is an independent agency established to provide professional, technical and administrative staff assistance to applicants for licensure, holders of licenses and members of the public in the performance of its functions.  ABRA carries out its functions under the supervision of the ABC Board.

**2. Supply an organizational chart, statement or documents which describe your structure, indicating, if any, the relationship between it and superior and subordinate establishments within the organization.**

Please see Exhibit No. 1 – ABRA Organizational Chart.

**3. Supply a statement or documents which identify the principal product or service of the named facility.**

Please see response to Question No. 1 above.  The principal service of this Agency is to issue and regulate licenses and licensed establishments pursuant to Chapter 25 of the D.C. Official Code and Title 23 of the D.C. Municipal Regulations.

**4. State the legal status of your organization, i.e., corporation, partnership, tax-exempt non-profit, etc.  If incorporated, identify the state of incorporation.**

The organization is an executive branch agency of the government of the District of Columbia.

P000217

**5. State whether your organization has a contract with any agency of the federal government or is a subcontractor on a project which receives federal funding. Is your organization covered by the provisions of Executive Order 11246? If your answer is yes, has your organization been the subject of a compliance review by the OFCCP at any time during the past two years?**

The Agency does not have a federal contract but it does receive a grant from the Department of Justice for Preventing Underage Drinking in the District of Columbia.

**6. Provide a copy of Charging Party's personnel file.**

Please see Exhibit No. 2 – Hard Copy of the Charging Party's Personnel File Housed at ABRA.

**7. Provide name, address, telephone number, position held, gender, date of birth, disability (if any) and family responsibility of the person who supervised Charging Party.**

Please see Exhibit No. 3 – Excel Worksheet

**8. Provide name, address, telephone number, position held, gender, date of birth, disability (if any) and family responsibility of other persons under the same person who supervised Charging Party.**

Please see Exhibit No. 4 – Excel Worksheet

**9. Submit a written position statement on each of the allegations of the charge, accompanied by documentary evidence and/or written statements where appropriate. Also include any additional information and explanation you deem relevant to the charge.**

ABRA denies the allegations made by the Charging Party in her Charge of Discrimination filed February 4, 2010 that she was discriminated against based upon her sex (female), age (44), disability (carpal tunnel syndrome in right hand) and family responsibility (son) in the terms, conditions and privileges of her employment. The response to each allegation raised by Investigator Dantzler is provided in further detail below:

Please see Exhibit No. 5 – Numerous Emails Supporting the Responses Below.

**A. Background**

ABRA's Enforcement Division consists of the Chief (African American male), two Supervisory Investigators (African American males), 15 investigators (9 African American males; 2 African American females; 1 Hispanic female; 2 Caucasian females; and 1 Asian male); one Auditor (African Male); and one Staff Assistant (Caucasian female). The Enforcement Division is headed by Chief Johnnie E. Jackson Jr. who has adopted a program strategy which focuses on the identification, hiring, training, and retention of professional personnel. These personnel are then responsible for the establishment and utilization of extensive long term relationships with law enforcement agencies, the Office of the Attorney General, entities within the business

P000218

community, regulatory agencies, and community organizations. The Enforcement Division utilizes the resources of these agencies to augment limited ABRA resources through intelligence sharing, working groups, and joint investigations. Intelligence gained from these working groups is analyzed and investigative initiatives are undertaken so that the Enforcement Division is initiating investigative actions verses merely reacting to events. This proactive approach provides the Enforcement Division personnel with an insight on problems affecting the establishments and neighborhoods. This investigative approach has proven to be successful as the Enforcement Division received national recognition in 2009 when it was awarded the National Liquor Law Enforcement Association Most Innovative law Enforcement Program Award in August 2009. ABRA has strived to create a work environment which prohibits discrimination of any type and promotes equal opportunity to all personnel within the agency. Chief Jackson discusses discrimination, sexual harassment, and other prohibited work place behaviors during the regularly scheduled Enforcement Division training days which are scheduled the second Tuesday of each month.

Please see Exhibit 5 - Investigator Training Agendas dated 5/6/2008 and 11/10/2009.

Investigator Dantzler has been involved in child custody issues regarding her son, prior to and during her employment at ABRA. ABRA's Executive Management has been very supportive of Ms. Dantzler's efforts to resolve these issues and has not impeded her attendance at any hearings or other matters regarding her family. (See email from Felicia Dantzler to Jermaine Matthews, captioned "Meeting", and dated 8/25/2008).

**B. Promotion: In July 2008, I applied for the internal Supervisory Investigator Grade 13 positions through the Human Resources website. I was not interviewed for the position, but during my annual evaluation, the Chief advised me that I was not qualified for the position. The Supervisory Investigator Grade 13 position was posted against in September 2009, but I did not apply. On November 10, 2009, the Director made an announcement that two employees (both male; 39, with children) had been selected for the promotion.**

During 2008, Investigator Dantzler was promoted by ABRA to a Grade-12 Investigator position. Subsequently, Investigator Dantzler applied for the Supervisory Investigator Grade-13 position in 2008. Investigator Dantzler was not interviewed by ABRA for the GS-13 Supervisory Investigator position because the DC Department of Human Resources (DCHR) advised ABRA that Investigator Dantzler was not "eligible" for the GS-13 position. This determination was based upon the fact that Investigator Dantzler had accepted the GS-12 promotion in 2008 and therefore did not meet the specific required time-in-grade restrictions regarding promotions. The statement made by Investigator Dantzler regarding ABRA Chief of Enforcement Johnnie E. Jackson Jr. is not correct. Chief Jackson did not state to Investigator Dantzler that she was "not qualified" for the Supervisory Investigator Position. Rather, Chief Jackson stated to Investigator Dantzler that she was not "eligible" for this position based upon DCHR restrictions and instructed Investigator Dantzler to speak with ABRA Personnel Officer Camille Robinson for specific clarification. (See e-mail from Johnnie Jackson to Camille Robinson, captioned "Supervisory Investigator Job Posting", dated 10/27/2008).

Investigator Dantzler correctly notes that she did not apply for the Supervisory Investigator
Posting in September 2009. Chief Jackson kept all employees within the Enforcement Division
advised regarding the status of this posting and the previous Supervisory Investigator posting to
ensure that everyone had adequate notice and time to apply if interested. (See e-mail from
Johnnie Jackson to ABRA Enforcement Division personnel captioned "Enforcement Division
Administrative Matters", dated 9/16/2008; e-mail from Johnnie Jackson to ABRA Enforcement
Division personnel captioned "Supervisory Investigator Postings", dated 9/19/2008; and e-mail
from Johnnie Jackson to ABRA Enforcement Division personnel captioned "Supervisory
Posting", dated 8/31/2009). ABRA Executive Management does not know why Investigator
Dantzler made the decision to not apply for the vacant Supervisor Investigator Position. It
should be noted that one of these Supervisory Investigator vacancies was created as a result of
the retirement of former Supervisory Investigator Sheila Bennett (African American/Female) in
2008. Additionally, the only individuals who were certified by DCHR for the Supervisory
Investigator position were all African American males. The fact that both of the selected
individuals are employees with families and children further supports ABRA's position that it
does not discriminate against employees with children.

**C. Hostile Work Environment: In September 2008, the Chief asked for volunteers for
Relief Supervisors, Training Coordinator, Fleet Coordinator, Special Events Coordinator
and IT Coordinator. I constantly volunteered but was never selected. However, the other
employees (white, younger) were selected to volunteer.**

The above statement made by Investigator Dantzler has no merit. Chief Jackson periodically
sends out inquiries via e-mail to all personnel within the Enforcement Division regarding interest
in serving as a Relief Supervisory Investigator. Investigator Dantzler did not respond to any of
these e-mails indicating her interest. (See e-mail from Johnnie Jackson to ABRA Enforcement
Division personnel captioned "Acting Supervisory Investigator", dated 6/26/2008; and e-mail
from Johnnie Jackson to ABRA Enforcement Division personnel captioned "Relief Supervisors",
dated 9/10/2008).

Each year one of the goals in every investigator's Performance Plan is the requirement that they
enroll and take training classes to improve their professional development. It should be noted
that there are numerous management training classes available by the DC Government for non
supervisory personnel who have indicated an interest in management. ABRA personnel
interested in management training have enrolled in these classes. Investigator Dantzler did not
previously discuss with Chief Jackson prior to filing her compliant her interest in becoming a
manager or submit any training requests that cover management issues to Chief Jackson or her
supervisor. Subsequently, during the preparation of her draft 2010 Performance Plan which was
submitted in March 2010, Investigator Dantzler added in her Performance Plan that she would
now like to take a management training class, which reflects a change from her previous
position. (See Performance and Tracking Form for Felicia Dantzler dated 2/24/2010).

The Enforcement Division has established several Coordinator Positions within the Division.
Each coordinator position is assigned to oversee a specific administrative area such as training,
fleet program, equipment, technology, special activities, or a special investigative area. The
person selected for these positions has expressed an interest in that particular area or has

P000220

previous experience working or addressing matters in the area. If the coordinator is not a supervisor, this serves as an opportunity for the investigator to gain experience with managing a program and developing leadership skills. The coordinator duties and responsibilities are in addition to the regular assignments of the investigator. Currently, of the 21 personnel assigned to the Enforcement Division, 12 individuals (60%) have coordinator duties in addition to their regular duties. (See e-mail from Johnnie Jackson to ABRA Enforcement Division personnel, captioned "Enforcement Division Administrative Matters", and dated 9/19/2008). Investigator Dantzler was assigned as the coordinator for the Unlicensed Establishment Initiative in February 2010. Listed below are the current Coordinator positions and the investigators assigned to each position:

Training Coordinator – responsible for identifying the training needs of the Enforcement Division. (Chief Jackson/African American Male. Investigator Susan Mitchell/Caucasian Female was the former training coordinator).

Fleet Coordinator – responsible for management of ABRA's vehicles (Investigator Donnell Butler/African American Male).

IT/Equipment Coordinator – responsible for identifying equipment needs of Enforcement Division. (Supervisory Investigator Craig Stewart/African American male. Former Investigator Amanda Sheehan/Caucasian Female was assigned the position prior to Supervisory Investigator Stewart).

Special Events Coordinator – responsible for identifying activities to boost the morale of Enforcement Division personnel. (Investigator Ileana Corrales/Hispanic Female).

Compliance Check Coordinator – responsible for coordination and assignment of compliance checks with the National Capitol Coalition to Prevent Underage Drinking (NCPUD) and the Metropolitan Police Department (MPD). (Supervisory Investigator Jermaine Matthews/African American Male).

Regulatory Inspection Coordinator – responsible for coordination, assignment, and tracking of Regulatory Inspections. (Supervisory Investigator Craig Stewart/African American Male).

Noise Task Force – responsible for researching issues related to noise from ABC establishments and noise complaints. (Investigator Jabriel Shakoor/African American Male).

GoGo Initiative – responsible for addressing security matters and investigations involving violent acts in ABC establishments which cater to younger patrons. (Investigator Vincent Parker/African American Male).

DC Double Check 101 – responsible for addressing underage drinking complaints and investigations involving establishments which cater to college students. (Investigator Erin Mathieson/Staff Assistant Jessica Opalski/Caucasian Females).

000220

P000221

MPD Roll Call Training – responsible for development and presentation of training materials to be given to MPD officers during their daily roll call. (Investigator Susan Mitchell/Caucasian Female).

Unlicensed Establishment Initiative – responsible for coordination of investigations with MPD and other agencies involving unlicensed establishments selling alcoholic beverages. (Investigator Felicia Dantzler/African American Female).

Special Events Training – responsible for coordinating Responsible Alcoholic Beverage Service Training for personnel who have obtained temporary licenses for special events. (Investigator Regina Hollis/African American Female).

In a more recent example, during August of 2009, Investigator Dantzler was asked by Chief Jackson to function as a Relief Supervisor while the Supervisory Investigator for her squad was on leave. Investigator Dantzler declined the opportunity to function as the Relief Supervisor and stated to Chief Jackson that she would not respond to any calls for service or answer the ABRA hotline after hours. When Chief Jackson stated to Investigator Dantzler that answering the ABRA hotline was a primary function for an ABRA Supervisory Investigator, Investigator Dantzler stated that she did not care and would not serve as a Relief Supervisor.

**In November 2008, I was diagnosed with carpal tunnel syndrome and after notifying Respondent, I was removed from the Inauguration Committee.**

The above statement made by Investigator Dantzler has no merit. During the summer of 2008, ABRA was a member of the DC Presidential Inauguration Committee (DCPIC). This committee was responsible for the coordination of all activities involving the 2009 Presidential Inauguration. The final authority for all matters including security regarding the inauguration was the United States Secret Service (USSS). Chief Jackson was the ABRA representative on the Inauguration Committee and Supervisory Investigator Gregory Price and Dwyne Shoemaker were the Inauguration Coordinators for ABRA. All personnel within the Enforcement Division were given inauguration assignments. In addition to these assignments, ABRA established a Presidential Detail which was responsible for handling all of the ABRA related assignments at the official Presidential Balls. During November of 2008, the USSS instructed ABRA to report on a specific day and time to get their photos and official credentials. The USSS credentials were needed by any individual working the Inauguration in order to have access to enter the locations which were to be visited by President Barrack Obama during the Inauguration Balls. Individuals without credentials were not allowed at the locations being visited by President Obama. Investigator Dantzler did not show up to get her credentials as instructed and was replaced on the detail for security reasons. Investigator Dantzler was removed from the Committee because she did not receive the official credentials and was not eligible to participate. Ms. Dantzler's removal from the detail had nothing to do with her injury. (See e-mail from Johnnie Jackson to ABRA Enforcement Division personnel captioned "Enforcement Division Administrative Matters", dated 6/21/2008; e-mail from Johnnie Jackson to ABRA Enforcement Division personnel, captioned "2009 Inauguration Activities", dated 9/11/2008; and e-mail from Johnnie Jackson to Felicia Dantzler, captioned "Inauguration", and dated 11/20/2008).

P000222

**In December 2008, the Chief accused me of having a pre-existing condition and dropping the injury on the Charging Party's lap.**

The above statement made by Investigator Dantzler has no merit.  In November 2008, Chief Jackson questioned Investigator Dantzler regarding a claim she had filed regarding carpal tunnel in her hand.  Chief Jackson questioned the origin of the injury because Investigator Dantzler claimed the injury was brought on due to her typing ABRA investigative reports.  The origin of Investigator Dantzlers's injury was never identified. Once Investigator Dantzler made ABRA aware of her injury, Chief Jackson provided her with a dictation machine where she was only required to dictate her cases into the recorder.  This accommodation was made by ABRA so that no further injury would occur to Investigator Dantzler's hand.  Chief Jackson stated to Investigator Dantzler that he would get her cases typed for her even if he had to type them himself.  Investigator Dantzler declined to utilize the machine and instead had ABRA Investigator Demetrius Nickens, who was assigned to her team at that time, type her cases. It should be noted that Investigator Dantzler is a bowler and she could have injured her hand participating in this recreational activity.  Immediately after claiming a workers compensation injury for this injury and taking time off from work, Investigator Dantzler was observed bowling with other ABRA personnel.

**In July 2009, I submitted a memo to the Chief to forward to Legal Counsel regarding my interest in outside employment; however, Legal did not receive my unemployment requested for approximately 65 days later.**

In July 2009, Investigator Dantzler provided notification to ABRA regarding outside employment Ms. Dantzler was working without authorization from the agency.  Her request was forwarded to the Adjudication Division for research to ensure that the request was consistent with District policy.  ABRA determined that the request was permitted under District policy and Ms. Dantzler was given authority by ABRA to work the outside employment with certain restrictions. (E-mail from Felicia Dantzler to Johnnie Jackson, Camille Robinson, and Jermaine Matthews captioned "Outside Employment", dated 7/14/2009; and e-mail from Felicia Dantzler to Johnnie Jackson captioned "Outside Employment" dated 9/17/2009).

**In July 2009, I signed up to work overtime and after working overtime I was advised that I would not get paid.**

The above statement made by Investigator Dantzler is not true.  From time-to-time employees may be required to work over their standard work day or on holidays.  Compensatory (or "comp") is in lieu of paid overtime.  Under ABRA's written policy, Requests for paid or compensatory overtime must be submitted in advance via a "Request for Advance Approval of paid Overtime/Compensatory Time" Form.  This form must list the time periods and hours of the overtime, justification, and be signed by the Supervisory Investigator.  Once the overtime has been completed, the investigator must submit an "Actual Overtime/Compensatory Earned Time" form which documents the actual hours worked by the employee.  This form is signed by both the investigator and Supervisory Investigator and reviewed by the Chief of Enforcement.  The failure of an investigator to follow the above prescribed procedures results in the denial of overtime submitted for approval. This written procedure ensures the integrity of the overtime

461

P000223

program. Investigator Dantzler did not provide a copy of a Request for Advance Approval of Paid Overtime/Compensatory Time Form which documents the approval by a supervisor which is required prior to any overtime being worked (See ABRA Request For Advance Approval of paid Overtime/Compensatory Earned Time Form; and ABRA Actual Overtime/Compensatory Earned Time Form).

**In August 2009, the Chief asked for volunteers for a College initiative Committee and I expressed interested in volunteering; however, I was not selected.**

The above statement made by Investigator Dantzler has no merit. In August 2009, Chief Jackson asked for volunteers to participate in a project (College Initiative) which Chief Jackson had initiated. Several investigators including Investigator Dantzler were selected for the project which had already been started when the request for volunteers was sent out. Investigator Dantzler was notified verbally and by e-mail regarding the kick off meeting for this initiative by Investigator Erin Mathieson, who was assigned to coordinate the initial meeting. Investigator Dantzler told Investigator Mathieson that she did not want to participate in the meeting and wanted to stay in the office and work on her cases. Investigator Dantzler has not participated in any of the activities with this initiative nor has she shown any interest in participating (See e-mail from Johnnie Jackson to ABRA Enforcement Division personnel captioned "Special Project", dated 8/20/2009; and e-mail from Erin Mathieson to ABRA Enforcement Division personnel, with no subject dated 10/8/2009).

**In August 2009, I asked for managerial training and the Chief responded, "Oh no, you won't ever get that. You need to know how to get along with people".**

The above statement made by Investigator Dantzler is not true. ABRA encourages all of its employees to seek professional development through attendance at specialized training conferences and through the completion of specialized courses. Chief Jackson also has included an objective under the Individual Development Plan Section of the Performance Evaluation and Tracking Form each year for each employee to schedule and attend one training class to enhance their professional skills. The DC Department of Human Resources (DCHR) Workforce Development Administration (WDA) provides training, workforce planning and organizational development programs and activities to increase the knowledge, skills, and competencies of District government employees to enable them to provide the highest capacity and most cost-effective services to the District of Columbia. The administration is composed of the following Divisions:  Program Planning and Operations, Special programs and Workforce Planning. DCHR WDA offers a complete course catalog and a summary of the training programs. ABRA employees have been provided with the course outlines and directed to find additional information about the course schedules, individual programs, and registration and training policies on the DCHR web site, www.dchr.dc.gov. It should be noted that there are numerous management training classes available by the DC Government for non supervisory personnel who have indicated an interest in management. ABRA personnel interested in management training have enrolled in these classes. Investigator Dantzler did not previously discuss with Chief Jackson prior to filing her compliant her interest in becoming a manager or submit any training requests that cover management issues to Chief Jackson or her supervisor. Subsequently, during the preparation of her draft 2010 Performance Plan which was submitted in

March 2010, Investigator Dantzler added in her Performance Plan that she would now like to take a management training class, which she was encouraged to do. All training requests are coordinated through the employee's immediate supervisor.

**In September 2009, during a staff meeting, the Chief mentioned the new hires that were coming aboard were older Males, so they could balance out the office.**

The above statement made by Investigator Dantzler is not accurate and the incident cited never occurred. Since 2007, the Enforcement Division has been involved in an aggressive hiring initiative. This successful initiative resulted in the Enforcement Division being able to put more investigators into the field to address investigative matters. The new personnel hired since 2007 are a mixture of former law enforcement investigators and individuals with professional backgrounds. Over 35% of the personnel have college degrees, 15% have Masters Degrees, and 50% have 10 -20 years of law enforcement experience. The individuals hired by ABRA represent a more diverse workforce and have higher levels of experience and education. The recruitment and development of smart, dedicated, and professional employees will ensure that ABRA will function at a high level in future years. In order to be in a position to retain these professionals, a revised career path was implemented which resulted in the creation of additional promotion levels in the career path for investigative and supervisory personnel. Whenever new personnel are scheduled to report to ABRA, the Chief announces to the entire division some information regarding the new personnel. Chief Jackson advised the Enforcement Division personnel that ABRA would be getting four new investigators who had all attended a police academy and would bring additional law enforcement experience to the Enforcement Division. It should be noted that Investigator Dantzler has benefited from this operational philosophy as she has received one of the first promotions for non supervisory investigators to the GS-12 level in 2008. The GS-12 position was created in 2008 by Chief Jackson. Investigator Dantzler has also been named Employee of the Month by ABRA on two occasions since the award was established in 2008.

**In November 2009, during a meeting to discuss my evaluation, I requested my union representative and was denied. Then the Chief stated that he didn't know what was going on with me, I'm not the same person he hired in 2007, adding I don't know who you are, You are fighting with management, no one wants to work with you, In the meetings, everyone is waiting for you...as they say, do your thing," "no one likes you", "What's going on with you?"**

The above statement made by Investigator Dantzler has no merit. Chief Jackson has made several attempts to speak to Investigator Dantzler regarding Enforcement Division matters. During one of these scheduled meetings Ms. Dantzler came into Chief Jackson's office and stated that she was going to bring her union representative into the meeting. Investigator Dantzler stated this to Chief Jackson without prior notice so the meeting was canceled. Chief Jackson has made attempts to discuss issues with Investigator Dantzler but she has stated that she does not wish to discuss anything with Chief Jackson.

**10. Submit a copy of all written rules, policies and procedures relating to the issue(s) raised in the charge. If such does not exist in written form, explain the rules, policies and procedures.**

ABRA strictly adheres to the personnel regulations contained in the District of Columbia Personnel Manual (DPM). The DPM sets forth the privileges, benefits and responsibilities of being a D.C. government employee. On January 12, 2010 ABRA also issued Policy Number 2010-002 to ABRA staff, which reflects that agency personnel and human resource matters are governed by the policies and procedures set forth in the Electronic-District Personnel Manual (E-DPM).

On September 30, 2009 the Agency also issued to ABRA staff the Attached Policy Number 2009-037, which sets forth the Agency's Code of Conduct that employees are expected to follow while working at the Agency. Both of these procedures are also available to employees on the Agency's shared drive. There are no additional internal agency policies or rules related to the discrimination issues raised by the Complainant other than those referenced below.

Please See Exhibit No. 6 – Agency Policy on the Adoption of the DPM and Agency's Policy on Code of Conduct.

**Issue: HARASSMENT**

**1. State whether your organization has adopted any procedure by which an employee may register a complaint of harassment by co-workers or supervisors. If your answer is yes, describe and, if written, submit a copy of such procedures. Explain how these procedures are communicated to employees and supervisory personnel.**

Yes, the Agency has a method by which an employee may register a complaint of harassment by co-workers or supervisors. Mayor's Order 2004-171 on Sexual Harassment outlines under "XII, Filing and Investigating Complaints of Sexual Harassment" that a victim may report the incident to the Agency's EEO Counselor, to any supervisor or manager within the Agency or to any EEO Counselor at any other District of Columbia Agency within 180 days of the time of the alleged incident. Mayoral orders are sent to all employees via email when they are issued from the Mayor's Office.

An additional order, Mayor's Order 2006-151 on Discrimination was issued November 6, 2006 as an amendment to Mayor's Order 2002-175 which outlines the District's "Notice of Non-Discrimination" in accordance with the D.C. Human Rights Act of 1977. ABRA's Standard Operating Procedures are made available to all employees on the Agency's shared drive under the folder "ABRA Operating Procedures. These Mayor's Orders are all posted on ABRA's shared drive. Mayor's Order 2004-171 would also have been issued via email to all employees.

Please see Exhibit No. 7 – Mayor's Order 2004-171

**2. State whether the Charging Party complained to any supervisor or manager regarding the conduct described in the Charge of Discrimination. If your answer is yes, identify the**

P000226

person or persons with whom the complaint was registered and describe each and every action taken by your organization in response to that complaint.  Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

No.  The Charging Party did not lodge a complaint.

**3. State whether any other individual has complained to any supervisor or manager concerning the conduct described in the Charge of Discrimination.  If the answer is yes, please list the following:**
    **a.  name, position**
    **b.  name, position of supervisor or manager, and**
    **c.  any actions taken by your organization in response to the complaint.**
**Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.**

No.  No other employee has lodged a similar complaint.

**4. Identify every individual who, to your knowledge, has information relevant to the allegations.  For each such individual, provide the following:**
    **a.  name, position**
    **b.  whether a present or former employee (if applicable), and**
    **c.  address and telephone number.**

Supervisory Investigator Jermaine Matthews
Current ABRA employee
2541 Keating Street
Temple Hills, Maryland 20745
(202) 329-6346 (C)
(202) 478-5733 (W)

Supervisory Investigator Craig Stewart
Current ABRA employee
1011 Canterbury Lane
LaPlata, Maryland
(202) 329-6355 (C)
(202) 442-4314 (W)

Investigator Regina Hollis
Current ABRA employee
11403 Honeysuckle Court
Upper Marlboro, Maryland 20774
(202) 329-6353 (C)
(202) 727-9534 (W)

Investigator Vincent Parker

Current ABRA employee
7722 Swan Terrace
Hyattsville, Maryland 20785
(202) 329-6342 (C)
(202) 442-4417 (W)

Investigator Donnell Butler
Current ABRA employee
10103 Astill Court
Waldorf, Maryland 20603
(202) 329-6351 (C)
(202) 442-4449 (W)

**5. Identify the other employees who worked with the charging party during the relevant period. Include:**
   **a.  name, position**
   **b.  last known address and telephone**
**Submit copies of daily assignment sheets, time cards, attendance and payroll records for the individuals listed in #5, including the charging party.**

Please see Exhibit No. 8 - Enforcement Division updated assignment sheets for the following dates:

February 26, 2007; August 1, 2007; February 14, 2008; April 7, 2008; April 30, 2008; May 8, 2008; June 6, 2008; June 16, 2008; June 20, 2008; October 15, 2008; July 20, 2009; September 1, 2009; and March 17, 2010.

**Issue: PROMOTION**

**1.  If the charging party sought a promotion, indicate whether he/she received it.  If not promoted, submit documents indicating the reasons why.  Submit a copy of all applications, tests, evaluations, if applicable and all other documents which set forth or contribute to the determination of qualifications.  Additionally, submit copies of the applications/resumes of all applicants for the position for which the Charging Party applied.**

The charging party was promoted by ABRA on June 8, 2008 from a grade 11 to a grade 12. The Charging Party did not apply for any subsequent promotional positions in the Agency. The Charging Party did indicate interest in a position that was advertised as a Supervisory Investigator but was not eligible for the position at that time. This Supervisory Investigator position was advertised by ABRA on September 18, 2008 at a grade 13. The Charging Party was not eligible for this position because a District employee must have one year of experience at the next lower level to be eligible for promotion to the next grade which is also known as time-in-grade requirements.

Please see Exhibit No. 9 – Numerous Emails Regarding Promotion

P000228

**2. State the name of the successful candidates.**

The successful candidate was Mr. Gregory Price.

**3. Explain the duties, responsibilities and qualifications for the position to which the Charging Party sought promotion.**

Please see Exhibit 10 - Position Description for an ABRA Supervisory Investigator.

**4. List all employees currently in the job sought by the charging party.  Identify each name and date of placement in the position.  Submit all documents which describe the qualifications of each individual listed.**

The employee who obtained the position (Mr. Gregory Price) is no longer employed at the Agency.