
Government of the District of Columbia
Adrian M. Fenty, Mayor



**Office of Human Rights**
DISTRICT OF COLUMBIA

# LETTER OF DETERMINATION
## NO CAUSE FINDING

One Judiciary Square
441 4th Street, NW, Suite 570N
Washington, DC 20001
202.727.4559 *tel*
202.727.9589 *fax*
www.ohr.dc.gov

8/26/10
August 19, 2010
*Via Regular and Electronic Mail*

Gustavo Velasquez
Director

Ms. Felicia Dantzler
2637 Mid Way Branch Drive #103
Odenton, MD 21113
*itzyou@msn.com*

RE:  *Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
    Docket No.: 10-235-DC (CN)
    EEOC No.: 10C-2010-00130

Dear Ms. Dantzler:

The Office of Human Rights (OHR) has completed its investigation of the above-captioned complaint. You are referred to as "**COMPLAINANT**." Alcoholic Beverage Regulation Administration (ABRA) is referred to as "**RESPONDENT**." Complainant's complaint raised the following issues, which the OHR investigated.

## ISSUES PRESENTED

Whether Respondent subjected Complainant to disparate treatment based on sex (female), age (44), disability (Carpal Tunnel syndrome), and family responsibilities (son) when, allegedly, Complainant initially applied for a Supervisory Investigator Grade 13 position, but Respondent declined to promote Complainant to this position, first advising Complainant that she was not qualified and later promoting two (2) employees (male, 39, children) to the position.

Whether Respondent subjected Complainant to a hostile work environment based on sex (female), age (44), disability (Carpal Tunnel Syndrome), and family responsibilities (son) when Respondent (or its agent) allegedly: made various comments to Complainant that she regarded as offensive; declined to select Complainant for multiple volunteer opportunities; and removed Complainant from one of Respondent's Committees.

## JURISDICTION

The OHR has jurisdiction over complaints of discrimination filed within one (1) year, or six (6) months for District of Columbia Government employees, of the occurrence of an alleged discriminatory act that occurred in the District of Columbia. 4 DCMR §702.1(a).

Case 1:11-cv-01069-RC   Document 148-2   Filed 05/31/15   Page 2 of 19

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 2 of 19

P000644

The OHR has jurisdiction over Complainant's complaint. First, Complainant timely filed her OHR complaint. Complainant's complaint indicates both that the latest instance of alleged discriminatory conduct occurred on November 10, 2009 and that Complainant filed her complaint with the OHR on February 4, 2010, within the six (6)-month window. Second, the alleged discriminatory conduct occurred in the District of Columbia. Respondent is an independent agency (within the Government of the District of Columbia) that provides professional, technical, and administrative staff assistance to applicants for licensure, holders of licenses and members of the general public. Respondent maintains a presence at 1250 U Street, N.W., Second Floor, Washington, DC 20002. Respondent is not exempt for any known reason from the laws of the District of Columbia prohibiting unlawful discrimination and, thus, is subject to the enforcement jurisdiction of the OHR.

## FINDINGS OF FACT

The OHR obtained its findings of fact from: Complainant's sworn and notarized Charge of Discrimination (i.e., complaint); Respondent's Position Statement, and responses to the OHR's Request for Information; Complainant's Rebuttal; Respondent's policies;[1] OHR interviews or affidavits;[2] and supporting or supplemental documentation.[3] Based on its investigation, the OHR makes the following findings of fact.

---

[1] Respondent furnishes the OHR with its Code of Conduct and Sexual Harassment policies in response to Complainant's claims. See OHR file at Section I. for a complete description of these policies.

[2] The OHR file contains signed, notarized affidavits from various persons who may have knowledge (first-hand or otherwise) of Complainant's allegations; these persons include Respondent's: Respondent's: Supervisory Investigator (male, 38, no disability, two (2) children and sick father); Investigator 1 (female, 38, no disability, husband and five (5) children); Investigator 2 (male, 62, no disability or family responsibility); Investigator 3 (male, 26, no disability, family responsibility); Investigator 4 (male); and Respondent's Chief of Enforcement (Chief). The OHR considered the statements of all of these individuals in its analysis of the issues. See OHR file at Section II. for a complete account of the statements of each of the above individuals, per his or her affidavit.

[3] To support or supplement her complaint or Rebuttal, Complainant submits a(n): E-mail to Respondent's Chief from Complainant Regarding the Prevention of Workplace Harassment; E-mail to Respondent's Chief from Complainant Regarding Interest in Various Positions; E-mail to Respondent's Chief from Complainant Regarding Photograph for the Inauguration; Doctor's Letter Regarding Complainant's Carpal Tunnel Syndrome; E-mail to Respondent's Chief from Complainant Regarding a Pre-Existing Condition; E-mail to Respondent's Supervisory Investigator from Complainant Regarding Why Complainant Has Received No Cases; Memorandum to Respondent's Staff from Respondent's Administrative Officer Regarding Outside Employment; E-mail and Memorandum to Respondent's Management from Complainant Regarding Complainant's Intent to Engage in Outside Employment; Approval Letter from Respondent's Respondent Regarding Request for Outside Employment; and Request for Advance Approval of Paid Overtime/Compensatory Earned Time and Actual Overtime/Compensatory Earned Time Form(s). Conversely, to support or supplement its Position Statement, Respondent proffers a(n): E-mail(s) to Complainant from Respondent's Chief Regarding Nearly Every Exchange Between Respondent's and Chief and Complainant Set Out in Respondent's Position Statement; Approval Letter from Respondent's Respondent Regarding Request for Outside Employment; E-mail(s) to Respondent's Investigative Team(s) from Respondent's Chief Regarding the Supervisory Investigator Vacancy; and E-mail to Respondent's Administrative Officer from Respondent's Chief Regarding Complainant's Interest in the Supervisory Investigator Position. While this list may not be exhaustive, it reflects all relevant documentation that the parties provided to the OHR. As such, the OHR considered all of the above documentation in its analysis

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 3 of 19

**Complainant's Allegations**
Complainant gained employment with Respondent in February 2007, as an Investigator, Grade 11. Recently, Respondent promoted Complainant to an Investigator, Grade 12 (Step 2).

*Disparate Treatment (Failure to Promote)*
In July 2008, Complainant applied for an Internal Supervisory Investigator position, Grade 13, with Respondent, through its Human Resources website. Respondent, however, did not interview Complainant for the position. Nevertheless, during Complainant's annual evaluation, Respondent's Chief advised Complainant that she was not qualified for the position.

Next, in September 2009, Respondent posted the Supervisory Investigator position again; however, Complainant did not reapply for the position. On November 10, 2009, Respondent's Director announced that Respondent had promoted two (2) employees (male, 39, children) to the above position.

*Hostile Work Environment*
From September 2008 through November 2009, Respondent (mostly through its Chief): made various comments to Complainant that she regarded as offensive; declined to select Complainant for multiple volunteer opportunities; and removed Complainant from one of Respondent's Committees.

Respondent declined to select Complainant for multiple volunteer opportunities for which she explicitly volunteered or in which she expressed an interest in volunteering. More specifically, in September 2008, Respondent's Chief asked for volunteer to serve as: Relief Supervisors, Training Coordinator, Fleet Coordinator, Special Events Coordinator, and IT Coordinator. Complainant constantly volunteered, but Respondent never selected Complainant; nevertheless, it selected others (White,[4] younger) to volunteer. In August 2009, Respondent's Chief solicited volunteers for a College Initiative Committee for Respondent. Complainant expressed her interest in volunteering to serve on this Committee, but Respondent did not select her.

Moreover, in November 2008, Respondent removed Complainant from its Inauguration Committee. This event occurred after Complainant notified Complainant that she was diagnosed with Carpal Tunnel syndrome.

Further, Respondent or its Chief made various comments to Complainant (or engaged in other acts) that she regarded as offensive. In particular, in December 2008, Respondent's Chief accused Complainant of having a pre-existing condition and "dropping the injury

---

of the issues. See OHR file at Section III. for a complete account of the contents of all of the above documentation.

[4] The OHR acknowledges that race is not one (1) of the bases of discrimination identified in Complainant's complaint.

Case 1:11-cv-01069-RC Document 148-2 Filed 05/31/15 Page 4 of 19

P000646

*Felicia Dantzler v. Alcoholic ..verage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 4 of 19

on Respondent's lap." In July 2009, Complainant signed-up to work overtime and, after working the overtime, Respondent advised Complainant that she would not get paid. Around the same time, in July 2009, Complainant submitted a memorandum to Respondent's Chief to forward to Respondent's Legal Counsel regarding interest in outside employment; nonetheless, Respondent's Legal Counsel did not receive Complainant's request (i.e., memorandum) until approximately 65 days later.

Furthermore, the offensive comments continued from August 2009 through November 2009. In August 2009, Complainant requested managerial training and Respondent's Chief responded, "[O]h no, you won't ever get that. You need to know how to get along with people." In September 2009, during a staff meeting, Respondent's Chief mentioned that Respondent had recently hired new employees (male, older) to "balance out the office." Finally, in November 2009, during a meeting to discuss Complainant's evaluation, Complainant requested the presence of her Union Representative, but Respondent denied this request. Respondent's Chief additionally responded that

> he didn't know what was going on with you [(referring to Complainant)]. [Complainant] is not the same person...[Respondent's Chief] hired in 2007. I don't know who you are. You are fighting with management. No one wants to work with you. In the meetings, everyone is waiting for you...as they say, do your thing. No one likes you. What's going on with you?"

**Respondent's Position**
Respondent contends the following in its Position Statement. During 2008, Respondent promoted Complainant to her present position, a Grade 12 Investigator.

Later in 2008, Complainant applied for a Supervisory Investigator (Grade 13) position with Respondent. However, Respondent did not interview Complainant for this position because Respondent's agency responsible for evaluating the applicants for this position advised Respondent that Complainant was "not eligible" for the Grade 13 position. This advice was based on Complainant having accepted a promotion to a Grade 12 in 2008 and, therefore, not meeting the time-in-grade requirements for a promotion to a Grade 13 position.[5] Respondent's Chief of Enforcement (Chief) (referred to as such above) never informed Complainant that she was "not qualified" for the Supervisory Investigator position. Rather, Respondent's Chief informed Complainant that she was "not eligible" for the position based on not having met the time-in-grade requirements, further advising Complainant to speak with Respondent's Personnel Officer for specific clarification.

Thereafter, Complainant did not apply for a Supervisory Investigator vacancy in September 2009. Respondent's Chief kept everyone kept all employees within Respondent's Enforcement Division advised regarding the status of this vacancy, and the previous Supervisory Investigator vacancy to ensure that everyone had adequate notice and time to apply, if interested. Thus, Respondent's Executive Management does not

---

[5] Typically, an employee must have spent a minimum of one (1) year (i.e., twelve (12) months) in her current grade before applying for a promotion to the next higher grade.

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 5 of 19

know why Complainant declined to apply for the vacant Supervisory Investigator position.[6] The only persons whom Respondent certified (i.e., found best qualified) for the latter Supervisor Investigator position were African-American males. The selected candidates for both Supervisory Investigator positions also have children. However, Respondent no longer employs the selected candidate for the first vacancy, the vacancy for which Complainant applied.[7]

Next, Complainant did not express interest in participating in any volunteer or training opportunities. Respondent's Chief periodically inquires, via e-mail, whether any of Respondent's personnel is interested in serving as a Relief Supervisory Investigator. However, Complainant did not respond to any of these e-mails. More specifically, in August 2009, Respondent's Chief asked Complainant to function as a Relief Supervisor while Respondent's Supervisory Investigator for her squad was on leave. Nevertheless, Complainant declined to avail herself of this opportunity, further stating that she would not respond to any calls for service or answer Respondent's hotline after hours. Also in August 2009, though Respondent's Chief asked for volunteers to participate in a project, several Investigators, including Complainant, had already been selected to participate in the project. However, when Respondent's Investigator, who was responsible for coordinating the project, notified Complainant (orally and via e-mail) of the specifics of the 'kick-off' event, Complainant stated that she did not want to participate in the meeting, as she wanted to remain in the office and continue working on her cases. Similarly, Complainant initially did not submit any training requests to indicate that she was interested in becoming a manager, or becoming more knowledgeable about management issues. Rather, Complainant did not express such an interest until she submitted her draft 2010 Performance Plan, which indicated that she wanted to participate in a management training class, a change from her previous position on this subject.

Moreover, Respondent has established several Coordinator positions within its Enforcement Division. The main purpose of the Coordinator positions[8] is to oversee a specific administrative area, such as: training, fleet program, equipment technology, special activities, or a special investigative area. The persons selected for these positions have expressed an interest in the areas to which they are assigned or, alternatively, have previous experience working with or addressing matters in these areas. These positions afford non-supervisory Investigators the opportunity to gain experience with managing a program and developing leadership skills. The Coordinators assume their duties and

---

[6] Respondent notes that one of the above Supervisory Investigator vacancies resulted from the retirement of Respondent's former Supervisory Investigator (African-American, female) in 2008.

[7] Besides asserting that it no longer employs the applicant for the first vacancy, Respondent provides no additional information with regard to the credentials for this applicant vis-à-vis those of Complainant, e.g., information related to his qualifications, tenure with Respondent, etc., versus those of Complainant.

[8] According to Respondent, these "positions" are not independent of the formal position or title of Investigator. Rather, if an Investigator has a "Coordinator position," he or she assumes the Coordinator duties in addition to the duties of his or her primary position as an Investigator with Respondent (see, *infra.*).

Case 1:11-cv-01069-RC Document 148-2 Filed 05/31/15 Page 6 of 19
P000648
Felicia Dantzler v. Alcoholic ...verage Regulation Administration (ABRA)
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 6 of 19

assignments of the position in addition to their regular assignments as an Investigator. In February 2010, Respondent placed Complainant in the position of Coordinator for the Unlicensed Establishment Initiative. Currently, of the twenty-one (21) personnel assigned to Respondent's Enforcement Division, twelve (12) individuals (i.e., 60%) (African-American, Caucasian, Hispanic, male, female) have Coordinator duties in addition to their regular duties.

Further, during Summer 2008, Respondent assigned all of its personnel assignments in connection with Respondent's membership in the D.C. Presidential Inauguration Committee (Committee), which was responsible for coordinating a substantial amount of the activities involving the 2009 Presidential Inauguration. Tot his end, Respondent's personnel assisting with this project, including Complainant, were required to obtain security credentials. Nonetheless, Complainant failed to report when another agency disbursed these credentials. Thus, for security reasons, she was replaced and removed from the Committee.

Furthermore, in November 2008, Respondent's Chief questioned Complainant regarding a claim that she had filed regarding carpal tunnel in her hand. Specifically, Respondent's Chief questioned the origin of the injury because Complainant claimed the injury stemmed from typing Respondent's investigative reports; however, the origin was never conclusively identified.[9] Nevertheless, once Complainant apprised Respondent of her injury, it furnished her with a dictation machine, allowing Complainant to dictate her cases into the recorder. Respondent's Chief further assured Complainant that would make certain Complainant's cases would be typed, even if he had to type them himself. However, Complainant declined to utilize the machine, instead requesting another Investigator to type her cases.

In addition, in July 2009, Complainant requested the opportunity to participate in outside employment. Respondent forwarded Complainant's above request to Respondent's Adjudication Division for advice whether granting Complainant's request would not violate Respondent's policies. Respondent determined that under the circumstances, granting Complainant's request would not violate Respondent's policies. Accordingly, Respondent authorized Complainant to engage in outside employment, with certain restrictions.

Also, Complainant did not comply with Respondent's policy regarding requests for advance approval of paid overtime or compensatory time. Respondent's policy with regard to requests for paid overtime provides that such requests must in writing and in advance through submitting a "Request for Advance Approval of Paid Overtime/Compensatory Time" form, which lists the date and time of the work performed, signed by the Investigator and the Supervisory Investigator. Once the

---

[9] Respondent notes that Complainant is an avid recreational bowler. As such, her injury could have stemmed from participating in her bowling activities. Immediately, after claiming worker's compensation, Respondent observed Complainant bowling with some of Respondent's other personnel.

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 7 of 19

overtime has been completed, the Investigator must submit an "Actual Overtime/Compensatory Earned Time" form, which documents actual hours worked, signed by both the Investigator and the Supervisory Investigator, reviewed by Respondent's Chief. The failure of an Investigator to follow the above prescribed procedures will result in the denial of overtime submitted for approval. Complainant failed to comply, as she did not submit a copy of the "Request for Advance Approval of Paid Overtime/Compensatory Time" form, which is required before approval for any overtime actually worked.

Moreover, Complainant's allegation that Respondent's Chief mentioned Respondent was hiring "older males" to "balance out the office" is false. Since 2007, Respondent has engaged in an aggressive hiring initiative, which has resulted in Respondent attracting, and subsequently hiring, a diverse pool of applicants. To retain these professionals, Respondent implemented a revised career path, which resulted in the creation of additional promotion levels in the career path for investigative and supervisory personnel.[10] Whenever new personnel are scheduled to report to Respondent, Respondent's Chief apprises the division of some information regarding such personnel. In this particular instance, Respondent's Chief advised that Respondent hired four (4) new Investigators, all of whom had attended a police academy and, consequently, brought additional law enforcement experience to Respondent's Enforcement Division.

Similarly, Complainant's allegation that Respondent's Chief informed Complainant that "he didn't know...with you?" is false. Respondent's Chief has made several attempts to speak with Complainant regarding Enforcement Division matters. During one of these scheduled meetings, Complainant came into Respondent's Chief's office, stating that her Union Representative would also attend the meeting. Complainant informed Respondent's Chief of this information without prior notice; as a result, the meeting was canceled. Respondent's Chief attempted to discuss issues with Complainant. However, Complainant has stated that she does not want to discuss anything.
Lastly, Complainant never complained about the allegations she makes her in OHR complaint. Likewise, no other employee(s) has lodged a similar complaint.

**Complainant's Rebuttal**
Complainant asserts the following in her Rebuttal. Complainant spoke with Respondent's Chief regarding the need for EEO training for its employees. Complainant memorialized this conversation via an e-mail, dated February 19, 2009, which included attachments regarding training for the prevention of workplace harassment. Complainant inquired about that the status various training opportunities, and Respondent's Chief merely replied "ok."

---

[10] Respondent notes that Complainant has directly benefited from these initiatives, as she was one of the first employees whom Respondent promoted (to the position to Grade 12 Investigator). Respondent further notes that Respondent has also named Complainant "Employee of the Month" on two (2) occasions, since Respondent established the award in 2008.

Case 1:11-cv-01069-RC   Document 148-2   Filed 05/31/15   Page 8 of 19

P000650

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 8 of 19

In April 2008, Complainant attempted to regain custody over her minor child. Complainant ultimately succeeded in this effort, as her child was immediately placed back into her care. As a result, Complainant requested that Respondent, among other things, allow Complainant to alter her shift to ease the transition for her child; however, Respondent did not respond to such a request. In July 2008, Complainant volunteered to assume the position of Acting Supervisor. Nevertheless, Respondent's Chief responded that he would "have to see" based on the situation with Complainant's son.

Subsequently, in October 2008, Complainant had her preliminary evaluation with Respondent's Chief. At this time, Respondent's Chief also conducted an impromptu interview with Complainant for the Supervisory Investigator position for which she previously applied. During the interview, Respondent's Chief questioned the status of Complainant's family situation. Complainant responded that the custody issues had not yet been finalized. At this time, Respondent's Chief also questioned Complainant's ability to lie to employees on his behalf. Complainant responded that she would not lie for Respondent's Chief under any circumstances.

Moreover, Respondent's contention that Complainant failed to qualify for the Supervisory Investigator position because she did not meet the time-in-grade requirement for the position is false. Respondent interviewed another employee (male, family obligations) for the Supervisor position even though he was promoted to a Grade 12 Investigator at the same time as Complainant. This employee declined the offer for this position due to his family obligations. Respondent only employed the applicant (male) who filled the position for six (6) months, as an Investigator.[11] Thus, this applicant also failed to meet the time-in-grade requirement.

Although Complainant applied for the first Supervisory Investigator vacancy (above), she did not apply for the second because Respondent's Chief demeanor suggested that Respondent would not place her in the position. Specifically, when Complainant requested management training, Respondent's Chief replied that Complainant would never "get that" because she did not know how to "get along with people."

Further, while Respondent correctly notes that Respondent's current Supervisory Investigators have children, it fails to note that they are also male. Regardless, their family situations are distinct from Complainant's family situation. More specifically, one supervisor is married, and Respondent gives him wide latitude to adjust his schedule. The other supervisor does not have custody of his children.

Furthermore, Complainant has applied for various "collateral positions"[12] within Respondent, including Acting Supervisory positions.[13] However, Respondent chose

---

[11] Complainant notes that this employee is no longer employed with Respondent, as it terminated this employee's employment for allegedly sexually harassing another employee.

[12] Based upon e-mail correspondence from Respondent's Chief to Respondent's employees, "collateral positions" refers to duties in addition to regular investigative duties, as opposed to separate positions, as Complainant intimates.

045

Case 1:11-cv-01069-RC   Document 148-2   Filed 05/31/15   Page 9 of 19

P000651

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 9 of 19

other employees to fill these positions (male, female, under 40), declining to offer Complainant these positions. One of these employees (male) had displayed poor job performance.

Next, Respondent's Supervisory Investigator informed Complainant that part of the credentialing process for assisting with Inaugural activities involved having a photograph taken for identification purposes. Respondent's Supervisory Investigator further informed Complainant that this event would occur on November 14, 2008. In turn, Complainant apprised Respondent's Supervisory Investigator that she was scheduled to attend a doctor's appointment on that date; Complainant also e-mailed this information to Respondent's Chief. Respondent's Supervisory Investigator told Complainant that although he was unsure whether an alternate date was available, he would contact Complainant to determine if she may, alternatively, take the photograph on November 17, 2008. However, Respondent's Supervisory Investigator never followed up with Complainant on this issue. Respondent, nevertheless, allowed another employee, who is not a member of the Enforcement Division, to take her photograph after November 14, 2008.

In addition, on November 7, 2008, Complainant informed her supervisor (i.e., Respondent's Supervisory Investigator) that Complainant's hand went numb while typing. As a result, Complainant believed that she suffered a work-related injury. On December 2, 2008, Complainant furnished Respondent's Chief with a letter from her doctor, who stated in the letter that some of Complainant's duties should be restricted due to her condition of Median Neuropathy (i.e., Carpal Tunnel).

At this time, Respondent's Chief stated that he believed that Complainant had a pre-existing condition, also intimating that if Complainant received any on-the-job injuries, they occurred while Complainant was employed with her previous employer. Complainant e-mailed Respondent's Chief to confirm that she was not suffering from a pre-existing condition. Complainant denies both that she is an avid bowler and that her alleged participation in any bowling activities caused her injuries. Rather, the bowling activity to which Respondent refers occurred many months several months after Complainant's treatment, and her doctor authorized this activity.

On the same subject, Complainant does not dispute that Respondent provided her with a manual tape recorder to dictate her cases. However, Complainant declined to use the tape recorder because her supervisor volunteered to type Complainant's cases. Respondent's Chief also asked another Investigator to assist with typing Complainant's cases, as he stated that the latter would be taking over all of Complainant's cases. This was because

---

[13] According to the above correspondence, Complainant expressed interest in serving as a Relief Supervisory Investigator, a "collateral position" that Complainant would assume in her present position of Grade 12 Investigator. Thus, the Relief Supervisory Investigator position is not the same as the Grade 13 Supervisory Investigator position.

Case 1:11-cv-01069-RC   Document 148-2   Filed 05/31/15   Page 10 of 19

P000652

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 10 of 19

according to Respondent's Chief, if Complainant could not type, she could not be assigned any investigations.

In January 2009, Complainant e-mailed Respondent's Supervisory Investigator for further clarification as to why Complainant had not been assigned any new cases since reporting her injury. Respondent's Supervisory Investigator called a meeting with Complainant and Respondent's Chief. Respondent's Chief, in turn, informed Complainant that he was not retaliating against Complainant; the issue was just that Respondent had not received many cases. However, another Investigator had just received seven (7) cases.

Moreover, On July 15, 2009, Complainant submitted a memorandum to Respondent's Chief regarding her intent to engage in outside employment as a Process Server. On October 16, 2009, Respondent approved Complainant's outside employment with conditions. However, because Respondent's General Counsel did not receive Complainant's written request until September 2009, Complainant believes that Respondent's Chief purposely delayed forwarding the request to Respondent's General Counsel for approval.

In addition, Complainant fully complied with Respondent's procedures for requesting overtime. Complainant completed and submitted for approval multiple Request for Advance Approval of Paid Overtime/Compensatory Earned Time forms, specifically for overtime, and Respondent's Supervisory Investigator approved these requests, as he signed these forms. Similarly, Complainant completed and submitted for approval multiple Actual Overtime/Compensatory Earned Time forms for overtime actually worked. As evident from his signature on these forms, Respondent's Supervisory Investigator approved the time Complainant actually worked.

Also, Complainant volunteered to spearhead Respondent's College/Underage Drinking Initiative. However, Respondent never informed her, verbally or in writing, that it selected her to participate in this initiative. Because she volunteered, Complainant would have participated in this initiative if Respondent had notified her of such.

Further, most of the new employees Respondent has hired to fill positions in its Enforcement Division have been male. Since December 2006, Respondent has hired fifteen (15) males and nine (9) females. Respondent's Chief only interviewed males to fill the Supervisory Investigator position, for which he discouraged Complainant from applying.

Lastly, Complainant is not required to give advance notice regarding her choice to have a Union representative present during her meeting with Respondent's Chief, who has not made his best efforts to discuss Complainant's concerns with her. Because Complainant is a unionized, she may exercise her right to have a Union representative present with her during a meeting with a manager, i.e., Respondent's Chief. Respondent's Chief did not

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 11 of 19

make his best efforts to meet with Complainant to address the latter's concerns (as expressed above), as he rescheduled meetings with her on two (2) occasions.

## STANDARD OF REVIEW

In this forum, in order for Complainant to prevail, the OHR record must contain credible, probative and substantial evidence from which a reasonable person would conclude that Complainant met the *prima facie* elements of discriminatory or retaliatory behavior, and that a legitimate, nondiscriminatory or non-retaliatory explanation for the behavior does not exist. 4 DCMR § 715.1; 4 DCMR § 108.4. In cases alleging a hostile work environment, the OHR record must contain credible, probative and substantial evidence from which a reasonable person would find that a hostile work environment existed. *Id.*

## LEGAL ANALYSIS

### DISPARATE TREATMENT

The DCHRA makes it unlawful to "...discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age, race, color, religion, sex, disability, personal appearance, family responsibilities or national origin," among other protected categories. D.C. Official Code § 2-1402.11(a)(1) (2001 Edition).

In a case brought under the DCHRA, the same three-part test applicable to Title VII cases applies. *Atlantic Richfield Co. v. District of Columbia Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986). The initial burden is on the employee to prove her *prima facie* case of discrimination. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C. 1993*); see Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Guided by the Supreme Court's analysis in *McDonnell Douglas, Inc. v. Green*, the elements of the *prima facie* case of discrimination are as follows: (1) Complainant is a member of a protected class; (2) Complainant suffered an adverse employment action;[14]

---

[14] An adverse action in a disparate treatment case is one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *See Brown v. Brody*, 339 U.S. App. D.C. 233, 199 F.3d 446, 456 (D.C. Cir. 1999) citing *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1999). In the absence of an action resulting in a diminution of pay or benefits, a Complainant must establish the occurrence of an action with "materially adverse consequences affecting the terms, conditions, or privileges of [his] employment." *Brown*, 199 F.3d at 457. An "employment decision does not rise to the level of an actionable adverse action...unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage." *Walker v. WMATA*, 102 F. Supp. 24, 29 (D.D.C. 2000). An action that the Complainant establishes as undermining his ability to perform his job satisfactorily, or that threatens his future employment prospects, would be an adverse consequence, and create a material employment disadvantage. *See Mack v. Strauss*, 134 F. Supp. 2d 103; 2001 U.S. Dist. LEXIS 2341 (D.D.C. 2001).

Case 1:11-cv-01069-RC   Document 148-2   Filed 05/31/15   Page 12 of 19

P000654

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 12 of 19

and (3) the unfavorable action gives rise to an inference of discrimination.[15] *McDonnell Douglas, Inc. v. Green,* 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993); *Arthur Young,* 631 A.2d at 361; *Mastro v. Potomac Electric Power Company,* 447 F.3d 850 (D.C. Cir. 2006); *Udoh v Trade Center Management Associates,* 479 F. Supp. 2d 60 (D.D.C. 2007).

In proving that the protected classes were substantial factors in the adverse action, a Complainant may introduce evidence that a "similarly situated" person outside Complainant's protected class was treated more favorably. See *Hollins v. Federal National Mortgage Association,* 760 A.2d 563, 578 (2000). A "similarly situated" person is one who is similar to the Complainant in all "relevant aspects." *Id.* Relevant aspects include their respective employment situations and the circumstances generating the allegation of discrimination. *Id.* In short, the Complainant and the other employee must have a comparable employment status, and must have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's response to it. *Id.*

If the employee satisfies her burden, i.e., *prima facie* case, she raises a rebuttable presumption that the employer's conduct is unlawful discrimination. *Arthur Young,* 631 A.2d at 361. After this rebuttable presumption is raised, the employer must then articulate "some legitimate, nondiscriminatory reason for the employment action." *Atlantic Richfield,* 515 A.2d at 1099 (citing *Burdine,* 450 U.S. at 254). The employer can "satisfy its burden by producing admissible evidence from which the trier of fact [can] rationally conclude that the employment action [was not] motivated by discriminatory animus." *Atlantic Richfield,* 515 A.2d at 1099-1100. The employer need not persuade the "[trier of fact] that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254.

If the employer articulates a legitimate, nondiscriminatory reason for the employment action, "the burden shifts back to the employee to prove...that the employer's stated justification for its action 'was not its true reason but was in fact merely a pretext' to disguise discriminatory practice." *Arthur Young,* 631 A.2d at 361 (citation omitted). "This burden merges with the ultimate burden of persuasion on the question of

---

[15] A Complainant may satisfy the third prong of this test by demonstrating that she was treated differently from similarly situated employees who are not part of the protected class, or, in the specific context of a discharge claim, showing that she was not terminated for the two common legitimate reasons for discharge: performance below the employer's legitimate expectations or the elimination of the Complainant's position altogether. Courts have expressly rejected as immaterial a requirement that the Complainant be replaced by an individual outside her protected class. The Complainant need only show that the position continues to exist and was filled--sufficient proof that the position was not simply eliminated. *Mastro v. Potomac Electric Power Company,* 447 F.3d 850 (D.C. Cir. 2006); *Udoh v. Trade Center Management Associates,* 479 F. Supp 2d 60 (D.D.C. 2007). *See also McDonnell Douglas, Inc. v. Green,* 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993); *Arthur Young,* 631 A.2d at 361.

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 13 of 19

intentional discrimination." *Atlantic Richfield*, 515 A.2d at 1100. "[A]lthough the *McDonnell Douglas* presumption shifts the burden of production to the Respondent, 'the ultimate burden of persuading the trier of fact that the Respondent intentionally discriminated against the Complainant remains at all times with the Complainant.'" *St. Mary's Honor Ctr.*, 509 U.S. at 507 (1993) (quoting *Burdine*, 450 U.S. at 253). Thus, once the employer satisfies its burden of producing a nondiscriminatory reason for its action, the employee must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original).

## DISABILITY

Under the DCHRA, it is illegal to discriminate against an employee, or person seeking employment, based wholly or partly on that person having a physical or mental disability. D.C. Official Code § 2-1402.11(a)(1) (2001 Ed.), *American Univ. v. Dist. of Columbia Comm'n on Human Rights*, 598 A.2d 416, 421 (D.C. 1991). This jurisdiction looks to the Americans with Disabilities Act ("ADA"), 4122 U.S.C. § 12102(2), and case law interpreting that statute for guidance on analyzing disability claims under the DCHRA. Under the DCHRA, a Complainant can establish that he has a disability if: (1) the Complainant has a physical impairment that "substantially limits" one or more of the Complainant's "major life activities;" (2) there exists a record of a physical or mental impairment whereby the Complainant has been classified (or misclassified) as having an impairment that "substantially limits" one or more of her "major life activities;"[1] or (3) the Complainant has a physical or mental impairment that the Respondent erroneously believes substantially affects one or more of the Complainant's "major life activities." *See* 42 U.S.C. § 12102(2); *Liff v. Sec'y of Transp.*, 1994 U.S. Dist. LEXIS 20970. The complainant may establish that she suffered from a disability by sufficiently proving any one of the foregoing three (3) elements. *Grant v. May*, 786 A.2d 580, 583 (D.C. 2001); *Cook v. Rhode Island*, 10 F.3d 17, 22-23 (1st Cir. 1993); *Chandler v. Dallas*, 2 F.3d 1385, 1392 (5th Cir. 1993). However, Complainants attempting to establish a qualified disability are held to a "demanding standard" in recognition that the ADA was intended to protect only those persons with impairments that preclude the performance of activities that are of central importance to daily life.

***Complainant Does Not Demonstrate that Respondent Subjected Her To Disparate Treatment Based on Sex (Female), Age (44), Disability (Carpal Tunnel Syndrome), and Family Responsibilities (Son) when, Allegedly, Complainant Initially Applied for a Supervisory Investigator Grade 13 Position, but Respondent Declined to Promote Complainant to this Position, First Advising Complainant that She Was Not Qualified and Later Promoting Two (2) Employees (Male, 39, Children) to the Position.***

Complainant does not meet her *prima facie* case. First, Complainant belongs to a protected class based on her sex (female), age (44), and family responsibilities (son). Further, there exists a record of a physical or mental impairment whereby Complainant

---

[1] The Respondent must be aware of this history.

Case 1:11-cv-01069-RC   Document 148-2   Filed 05/31/15   Page 14 of 19

P000656

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 14 of 19

has been classified (or misclassified) as having an impairment that "substantially limits" one or more of her "major life activities," namely working, as Complainant submits a letter, dated December 2, 2008, in which her physician states that she suffers from "bilateral carpal tunnel syndrome," which "may be work-related." Second, Complainant suffered an adverse employment action when Respondent declined to promote Complainant to a Grade 13 Supervisory Investigator position, as such action constituted a "significant change in [Complainant's] employment status."

Nevertheless, Complainant does not prove that Respondent's action gives rise to an inference of discrimination. Specifically, Complainant proffers insufficient evidence to indicate that Respondent treated a similarly situated employee outside of Complainant's protected class more favorably. On the one hand, Complainant alleges that Respondent not only interviewed another employee (male, family obligations) for the Supervisor position, even though he was promoted to a Grade 12 Investigator at the same time as Complainant,[16] but also that Respondent only employed the applicant (male) who filled the position for six (6) months, as an Investigator. On the other hand, however, Complainant provides no additional information with regard to whether either of these alleged individuals was comparable with her in "all relevant aspects" with respect to employment status and other qualifications, etc. without such differentiating or mitigating circumstances that would have prompted Respondent to offer the Supervisory Investigator position to either of the above applicants, as opposed to Complainant.

Similarly, while Complainant's allegations do not fall within the context of a discharge claim (but failure to promote), she does not prove that Respondent's reason for declining to promote Complainant to the Grade 13 Supervisory Investigator position is false. In particular, Complainant does not prove that she met the time-in-grade requirements for a promotion to the next higher grade. Complainant does not state the specific date when Respondent promoted her to a Grade 12, as she merely alleges that Respondent "recently" promoted her from a Grade 11 to a Grade 12. According to Respondent, it promoted Complainant to from a Grade 11 to a Grade 12 "during 2008." Nonetheless, both parties agree that Complainant applied for the Grade 13 Supervisory Investigator position in 2008, as Complainant alleges that she applied for this position in July 2008 and Respondent asserts that Complainant applied for this position "later" in 2008. Thus, based on Respondent's statement that it did not promote Complainant to a Grade 12 until 2008, and the parties' agreement that Complainant applied for the Grade 13 Supervisory Investigator position in the same year, Complainant does not disprove Respondent's basis for Complainant declining to promote Complainant to the Grade 13 position.

Assuming, *arguendo*, Complainant met her *prima facie* case, Respondent articulates a legitimate, nondiscriminatory reason for its action. Respondent argues that it did not interview Complainant for the Grade 13 Investigator position, for she initially applied, because Respondent's agency responsible for evaluating the applicants for this position

---

[16] Complainant notes above that this employee declined the offer for this position due to his family obligations.

Case 1:11-cv-01069-RC Document 148-2 Filed 05/31/15 Page 15 of 19
P000657

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 15 of 19

advised Respondent that Complainant was "not eligible" for the Grade 13 position. According to Respondent, this advice was based on Complainant having accepted a promotion to a Grade 12 in 2008 and, therefore, not meeting the time-in-grade requirements for a promotion to a Grade 13 position.

Finally, Complainant does not meet her burden of showing "both that...[Respondent's] reason was false, and that discrimination was the real reason." As mentioned above, while Complainant alleges that Respondent treated persons outside of her protected class more favorably, by offering these persons the promotion to the Grade 13 Investigator position, she furnishes the OHR with insufficient evidence indicating either that these persons were comparable with her in every respect or, alternatively, that Respondent's reason for failing to promote her was false. The affidavits similarly do not reveal that Respondent's proffered reason is false, as the persons from whom the OHR (via Respondent or Complainant) obtained affidavits have no knowledge of Respondent discriminating against Complainant in the selection of its Grade 13 Supervisory Investigator. Accordingly, Complainant's disparate treatment case fails.

## HOSTILE WORK ENVIRONMENT

The District of Columbia Human Rights Act ("DCHRA") makes it unlawful to "...discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age, race, color, religion, sex or national origin," among other protected categories. D.C. Official Code § 2-1402.11(a)(1) (2001 Edition). The DCHRA is substantially similar to Title VII. *Howard v. Best*, 484 A.2d 958, 977 (D.C. 1984). "In interpreting [the Human Rights Act, the Court of Appeals has] generally looked to cases from the federal courts involving claims brought under the Civil Rights Act of 1964 for guidance...." *Wallace v. Skadden, Arps, Slate, Meagher & Flom, et al.*, 715 A.2d 873, 889, n.31 (D.C. 1988).

A Complainant may establish a *prima facie* case of hostile work environment if she can demonstrate that: (1) she is a member of a protected class; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on membership in her protected class; (4) the harassment is severe or pervasive enough to affect a term, condition, or privilege of her employment; and (5) the employer knew or should have known of the harassment, but failed to take any action to prevent the harassment.[17] *Pegues v. Mineta, Secretary, U.S. Department of Transportation*, 2006 US Dist LEXIS 59118 (D.C. 2006). Unwelcome harassment is conduct that the employee neither solicited nor invited and that the employee regarded as undesirable or offensive. *Daka, Inc. v. Breiner*, 711 A.2d 86 (D.C. 1998). In determining the degree of severity or pervasiveness of hostility, the test is whether working conditions have been discriminatorily altered. *Id.* at 92 (citing *Howard Univ. v. Best*, 484 A.2d 958, 978 (D.C. 1984) and *Harris v. Forklift Sys.*, 510 U.S. 17 (1993)). "More than a few isolated incidents must have occurred, and genuinely trivial occurrences will not establish a *prima facie* case. However, no specific number of

---

[17] This fifth element applies to non-supervisor harassment and harassment involving coworkers.

Case 1:11-cv-01069-RC  Document 148-2  Filed 05/31/15  Page 16 of 19
P000658

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 16 of 19

incidents, and no specific level of egregiousness need be proved. The trier of fact should consider the amount and nature of the conduct, the Complainant's response to such conduct, and the relationship between the harassing party and the Complainant." *Daka,* 711 A.2d at 93.

When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris,* 510 U.S. at 17, 21. Whether an environment is hostile or abusive is determined by the totality of the circumstances, such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance. The effect on the employee's psychological well-being may be considered, but the employee need not prove psychological injury. *Id.* at 23.

**Supervisor Liability**
In the District of Columbia, an employer may not be held liable for a supervisor's hostile work environment harassment, not resulting in a tangible employment action, if the employer is able to establish that it adopted policies and implemented measures such that the victimized employee either knew or should have known that the employer did not tolerate such conduct and that she knew or should have known that she could report the harassment to the employer without fear of adverse consequences and the employee's conduct in not seeking relief pursuant to the policy was unreasonable. *Faragher v. Boca Raton,* 524 U.S. 775 (1998); *Ellerth,* 524 U.S. at 742; *Gary v. Long,* 59 F.3d 1391, *cert. denied,* 516 U.S. 1011 (D.C. Cir. 1995). Additionally, where Complainant seeks to hold an employer liable for the conduct of an employee, Complainant must also establish *respondeat superior* liability. *Raymond v. U.S. Capitol Police Bd.,* 157 F. Supp. 2d 50, 57-58 (D.D.C. 2001).[18]

---

[18] According to the Equal Employment Opportunity Commission ("EEOC") and related case law, when harassment by a supervisor creates an unlawful hostile environment, but does not result in a tangible employment action, the employer can raise an affirmative defense to liability or damages, which it must prove by a preponderance of the evidence. The defense consists of two (2) necessary elements: (a) The employer exercised reasonable care to prevent and correct promptly any harassment; and (b) The employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 17 of 19

***Complainant Fails to Show that Respondent subjected her to a Hostile Work Environment Based on Sex (Female), Age (44), Disability (Carpal Tunnel Syndrome), And Family Responsibilities (Son) when Respondent (Or Its Agent) Allegedly: Made Various Comments to Complainant that She Regarded as Offensive; Declined to Select Complainant for Multiple Volunteer Opportunities; and Removed Complainant from One of Respondent's Committees.***

Complainant does not satisfy her *prima facie* case. First, Complainant belongs to a protected class based on her sex (female), age (44), and family responsibilities (son). Further, there exists a record of a physical or mental impairment whereby Complainant has been classified (or misclassified) as having an impairment that "substantially limits" one or more of her "major life activities," namely working, because of the above documentation from Complainant's physician indicating that Complainant suffers from "bilateral carpal tunnel syndrome," which "may be work-related." Second, because the burden is not onerous, the OHR finds that Complainant has been subjected to unwelcome harassment when Respondent (or its agent) allegedly: made various comments to Complainant that she regarded as offensive; declined to select Complainant for multiple volunteer opportunities; and removed Complainant from one of Respondent's Committees. Third, Complainant demonstrates that the alleged harassment was based on membership in Complainant's protected class. On the one hand, Complainant does not link Respondent's or its Chief's conduct with membership in her protected class when she alleges that Respondent or its Chief declined to select Complainant for multiple volunteer opportunities; removed Complainant from one of Respondent's Committees (i.e., the Inaugural Committee); advised Complainant that Respondent would not compensate her for overtime; delayed her request to engage in outside employment; commented that Complainant needed to know how to "get along with people;" and denied Complainant request for her Union Representative to be present, further responding that "he didn't know what was going on...." In particular, while Complainant asserts that Respondent selected persons outside of her protected class selected others (White, younger) to volunteer, she does not provide additional evidence to show that Respondent intentionally selected these persons because they did not fall within Complainant's protected class, rather than for another reason, or mere coincidence.

By the same token, Complainant links Respondent's Chief's conduct with membership in her protected class when she alleges that Respondent's Chief accused Complainant of having a pre-existing condition and "dropping the injury on Respondent's lap" and mentioned that Respondent had recently hired new employees (male, older) to "balance out the office." Respondent's Investigator 4 (male) asserts that he witnessed Respondent's Chief make the latter statement. As a result, Complainant establishes the third element.

However, Complainant does not show that the alleged harassment was severe or pervasive enough to affect a term, condition, or privilege of her employment. Specifically, as noted *supra.*, in determining whether an environment is hostile or abusive, the OHR considers the totality of the circumstances including whether the

Case 1:11-cv-01069-RC   Document 148-2   Filed 05/31/15   Page 18 of 19

P000660

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 18 of 19

discriminatory conduct is: frequent; severe; physically threatening or humiliating, or a mere offensive utterance; and sufficiently unreasonable to interfere with the employee's work performance. Specifically, the alleged conduct occurred infrequently, as Complainant cites less than a few (i.e., two (2)) isolated incidents, as discussed in detail above. In addition, the alleged conduct was not sufficiently severe or unreasonable based on the nature of the conduct and its potential to unreasonably interfere with Complainant's work performance, as required under the fourth element. Similarly, the individuals from whom the OHR (via Respondent or Complainant) obtained affidavits do not assert that Respondent subjected Complainant to additional instances of harassment sufficient to meet the fourth element. Thus, Complainant's hostile work environment case fails.

## DETERMINATION

For the foregoing reasons, the OHR finds:

**NO PROBABLE CAUSE** to believe that Respondent subjected Complainant to disparate treatment based on sex (female), age (44), disability (carpal tunnel syndrome), and family responsibilities (son) when, allegedly, Complainant initially applied or a Supervisory Investigator Grade 13 position, but Respondent declined to promote Complainant to this position, first advising Complainant that she was not qualified and later promoting two (2) employees (male, 39, children) to the position.

**NO PROBABLE CAUSE** to believe that Respondent subjected Complainant to a hostile work environment based on sex (female), age (44), disability (carpal tunnel syndrome), and family responsibilities (son) when Respondent (or its agent) allegedly: made various comments to Complainant that she regarded as offensive; declined to select Complainant for multiple volunteer opportunities; and removed Complainant from one of Respondent's Committees.

*IT IS SO ORDERED.*

## RIGHT TO APPLY FOR RECONSIDERATION

Complainant may apply for reconsideration pursuant to 4 DCMR § 719. Such application along with all supporting documentation must be submitted to the Director of the OHR in writing **within fifteen (15) days from the following date 8/26/10**. The grounds for reconsideration are limited to: new evidence, misapplication of laws, or misstatement of material facts. The request must, therefore, be based on one or more of these grounds. If the request is not based on one of these grounds, or not timely filed, it will be subjected to dismissal. **COMPLAINANT MUST INCLUDE ALL SUPPORTING DOCUMENTATION AND REASONS FOR THE APPEAL IN THE ORIGINAL REQUEST FOR RECONSIDERATION.** This OHR will forward a copy of any request for reconsideration along with all supporting documentation to the other party for response. If the Complainant does not file a request for reconsideration

*Felicia Dantzler v. Alcoholic Beverage Regulation Administration (ABRA)*
Docket No.: 10-235-DC (CN)
EEOC No.: 10C-2010-00130
Page 19 of 19

with OHR, this letter constitutes a final decision from OHR. Complainant has **three (3) years from the date of service of this decision** to file a petition for review with the Superior Court of the District of Columbia.

### RIGHT TO SUBSTANTIAL WEIGHT REVIEW

As a Complainant, you have the right to a "Substantial Weight Review" from the U.S. Equal Employment Opportunity Commission (EEOC). To obtain a Substantial Weight Review, you must **within fifteen (15) calendar days**, send your written request to: State and Local Coordinator, EEOC, 131 M Street, N.E., Fourth Floor, Suite 4NWO2F, Washington, DC 20507-0100.

Sincerely,

Gustavo F. Velasquez
Director


cc:     Alcoholic Beverage Regulation Administration (ABRA)
        ATTN.: Fred Moosally, Esq.
        Director
        1250 U Street, N.W.
        Suite 300
        Washington, DC 20009
        *martha.jenkins@dc.gov*

        Alcoholic Beverage Regulation Administration (ABRA)
        ATTN.: Martha Jenkins, Esq.
        1250 U Street, N.W.
        Suite 300
        Washington, DC 20009
        *martha.jenkins@dc.gov*